# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

In re:

    ANDREW BREITER-WU

                Debtor,

**Mark Danko, Plaintiff**

v.

**Andrew Breiter-Wu, Defendant**

CHAPTER 7

CASE NO. 25-11742

ADVERSARY PROCEEDING #25-01162

### DEFENDANT ANDREW BREITER-WU'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

Plaintiff Mark Danko's First Amended Complaint seeks an extraordinary remedy: a

determination that an alleged debt of **$24,500.00**, plus interest and other purported liabilities, is

nondischargeable under **11 U.S.C. § 523(a)(2)(A)**. But even accepting the pleading on its face

and considering the limited documents properly before the Court, the First Amended Complaint

still fails to state a plausible claim against Defendant Andrew Breiter-Wu personally. See First

Am. Compl. at Prayer for Relief.

At bottom, Plaintiff attempts to recast a disputed and incomplete solar project relationship,

together with later settlement enforcement proceedings, into a personal fraud claim in

bankruptcy. The documentary record central to that relationship shows a far more limited and

materially different picture. Plaintiff did not pay $24,500.00 to Andrew Breiter-Wu personally. Rather, Plaintiff made **25 monthly payments totaling $1,620.75** to **Breiter Planet Properties, LLC** through the company's payment processor. See Ex. D. The proposed project itself was not structured as a traditional bank-financed consumer solar transaction; instead, it was to proceed through a company-administered payment arrangement for a proposed residential solar installation, with project funding and all project expenses to be advanced through **Breiter Planet Properties, LLC**, not through Defendant personally. See Ex. D; Ex. E.

The First Amended Complaint also fails to overcome an even more basic problem: the state-court settlement enforcement materials and resulting judgment structure do not establish a debt owed by Andrew Breiter-Wu personally in the manner Plaintiff now alleges. The **Agreement for Judgment** provided that, upon uncured default, judgment would be entered solely against **Breiter Planet Properties, LLC**. See Ex. B. The resulting Malden District Court judgment likewise entered against **Breiter Planet Properties, LLC** upon default of the Settlement Agreement. See Ex. C. Although Plaintiff now attempts to avoid that problem through sweeping alter-ego and commingling allegations, those allegations remain conclusory and do not plausibly transform a corporate obligation into a nondischargeable personal debt under § 523(a)(2)(A).

Nor does the amended pleading plausibly allege fraud with the specificity required by Rule 9(b). What Plaintiff describes is, at most, a failed project relationship involving design work, engineering activity, structural review, permitting efforts, payment disputes, and later settlement enforcement. Indeed, the project-development documents reflect that Breiter Planet Properties, LLC undertook actual work on the proposed installation, including engineering and permitting activity, before the relationship broke down. See Ex. E. That documentary record does not prove

Plaintiff's fraud theory; if anything, it underscores why this adversary proceeding is an improper attempt to convert a disputed business and project history into a nondischargeability claim against the individual debtor.

For these reasons, and as set forth more fully below, the First Amended Complaint should be dismissed in its entirety.

## II.     RELEVANT PROCEDURAL BACKGROUND AND DOCUMENTS PROPERLY BEFORE THE COURT

This adversary proceeding arises from a proposed residential solar photovoltaic installation that Plaintiff Mark Danko sought to obtain through Breiter Planet Properties, LLC ("BPP"), a solar development and construction company. The proposed project involved the design and installation of a rooftop solar system at Plaintiff's residence located at 302 Melrose Street, Melrose, Massachusetts.

### A. The Proposed Solar Project and Financing Structure

On or about October 2020, Plaintiff accepted a proposal from BPP for the design and installation of a residential solar photovoltaic system via an online purchase. The proposal reflected a system price of $18,900. Over a projected 20-year payment term at a 2.9% interest rate, the proposal estimated total payments of approximately $32,844 over the life of the arrangement.

Unlike many residential solar projects that are financed through third-party lenders or solar loan providers, the proposed project here was structured as a company-administered payment arrangement through Breiter Planet Properties, LLC. No outside bank or consumer lender funded the transaction. Instead, the project was to be funded through the business operations of Breiter

Planet Properties, LLC, with Plaintiff making periodic payments toward the project through the company.

Consistent with that structure, Plaintiff made twenty-five (25) monthly payments totaling $1,620.75 to Breiter Planet Properties, LLC through the company's payment processor before discontinuing the agreed monthly payments under the parties' arrangement. These payments were made to BPP—not to Defendant Andrew Breiter-Wu personally—and are reflected in the payment processor records attached as Exhibit D.

## B. Project Development Work and Structural Issues

Following acceptance of the proposal in October 2020, BPP undertook significant development work associated with the proposed solar installation. This work included preparation of engineering design materials, structural review relating to the proposed installation areas, and permitting-related activity necessary for a residential rooftop solar project. Documentation reflecting portions of this development work, including engineering and permitting communications, is attached as Exhibit E.

During the course of engineering and structural review, concerns were identified regarding portions of the roof area proposed for installation. These structural considerations required further evaluation and potential redesign before permit could be issued and the installation of the solar array could proceed.

4

### C. Settlement Agreement and Initial Payment

Disputes later arose between the parties concerning the status of the proposed solar project and the associated payment arrangement. Plaintiff, through counsel, thereafter issued a demand for payment and initiated proceedings in the Malden District Court relating to the dispute between the parties.

Following the initiation of those proceedings, the parties engaged in settlement discussions that resulted in a **Settlement Agreement and Mutual Release dated November 2024**, which is attached as Exhibit A. The settlement agreement consisted of ten monthly installment payments of $500 for a total of $5,000.

As part of the settlement structure, the parties also executed an **Agreement for Judgment**, attached as Exhibit B, which was to be held in escrow. Under that agreement, judgment would enter against **Breiter Planet Properties, LLC** only in the event of an uncured default under the settlement terms following the expiration of the defined cure period.

Pursuant to that agreement, **Breiter Planet Properties, LLC made an initial payment of $500 to Plaintiff via wire transfer on November 27, 2024.** However, due to the company's financial circumstances at the time, Breiter Planet Properties, LLC was subsequently unable to continue making the remaining payments contemplated under the settlement agreement.

### D. Malden District Court Enforcement Proceedings

Following the company's inability to continue making the settlement payments, Plaintiff filed a motion in the Malden District Court seeking enforcement of the settlement agreement and entry of judgment pursuant to the previously executed Agreement for Judgment.

The Malden District Court docket reflects that judgment was thereafter entered **against Breiter Planet Properties, LLC** pursuant to that agreement. The relevant docket entries and judgment records are attached as Exhibit C.

### E. Bankruptcy Filing and Adversary Proceeding

Defendant Andrew Breiter-Wu subsequently commenced bankruptcy proceedings in the United States Bankruptcy Court for the District of Massachusetts. The bankruptcy filing occurred amid mounting legal and financial pressures, including multiple payment obligations arising from unrelated matters, and was undertaken as part of a broader effort to address those obligations through the bankruptcy process rather than in response to any single dispute.

On November 17, 2025, Plaintiff filed the initial adversary complaint in this Court seeking to have an alleged debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A). Defendant filed a motion to dismiss on November 25, 2025. The Court later denied that motion and permitted Plaintiff to file an amended pleading.

Plaintiff thereafter filed the First Amended Complaint, which is the operative pleading addressed by Defendant's Motion to Dismiss.

Despite seeking nondischargeability of $24,500, the documentary record central to the parties' relationship reflects that Plaintiff made only $1,620.75 in payments to Breiter Planet Properties, LLC in connection with the proposed solar project. See Ex. D.

### III. LEGAL STANDARD

A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012. Although the Court must accept well-pleaded factual allegations as true for purposes of a motion to dismiss, it is not required to credit legal conclusions, threadbare recitals of the elements of a cause of action, or conclusory allegations unsupported by factual content.

In resolving a motion to dismiss, the Court may consider the allegations of the operative complaint, documents incorporated by reference therein, documents central to the plaintiff's claim, matters of public record, and matters subject to judicial notice. That principle is especially relevant here, where the First Amended Complaint expressly relies upon prior state-court proceedings, settlement documents, and the parties' prior dealings as part of Plaintiff's nondischargeability theory.

Because Plaintiff seeks relief under 11 U.S.C. § 523(a)(2)(A), the First Amended Complaint must plausibly allege that Defendant obtained money, property, services, or credit by means of false pretenses, a false representation, or actual fraud. To state such a claim, a plaintiff must allege facts supporting, among other things, a materially false representation, knowledge of falsity, intent to deceive, justifiable reliance, and resulting loss. Allegations that describe only breach of contract, nonperformance, financial distress, or a later failure to pay do not, without more, state a nondischargeability claim under § 523(a)(2)(A).

In addition, because Plaintiff's claim alleges fraud, it must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009. Rule 9(b)

requires a plaintiff to plead the circumstances constituting fraud with particularity. At a minimum, that requires factual allegations identifying the specific fraudulent statements or omissions at issue, the speaker, the time and place of the alleged statements, and why the statements were fraudulent when made. Conclusory assertions that a defendant never intended to perform, or that a failed business arrangement must therefore have been fraudulent from inception, are insufficient.

Where, as here, a plaintiff seeks to except a debt from discharge based on allegations of fraud, the complaint must do more than re-label a disputed contractual relationship, project delay or settlement default as "fraud." It must plead a plausible and particularized basis for nondischargeability against the debtor personally. If it does not, dismissal under Rules 12(b)(6) and 9(b) is appropriate.

## IV. ARGUMENT

### A. The First Amended Complaint Fails to Plausibly Allege a Nondischargeable Debt Owed by Andrew Breiter-Wu Personally

Section 523(a) excepts from discharge certain debts of the debtor. Accordingly, before Plaintiff can proceed on a nondischargeability theory under 11 U.S.C. § 523(a)(2)(A), he must plausibly allege that the debt at issue is, in fact, a debt owed by Defendant Andrew Breiter-Wu personally. The First Amended Complaint does not do so.

The documentary record central to Plaintiff's own theory shows that the settlement enforcement mechanism the parties ultimately adopted ran against **Breiter Planet Properties, LLC**, not against Andrew Breiter-Wu individually. As part of the parties' settlement structure, they

8

executed an **Agreement for Judgment** to be held in escrow in the event of an uncured default. Ex. B. That Agreement for Judgment provides that, upon uncured default after expiration of the defined cure period, judgment would enter "for Plaintiff and against Breiter Planet Properties, LLC" in the amount of $25,000, less any payments made. Ex. B. The Malden District Court docket and resulting judgment records likewise reflect that judgment was entered against **Breiter Planet Properties, LLC**. Ex. C.

That matters here. Plaintiff now asks this Court to declare nondischargeable an alleged debt of $24,500.00, plus interest and other liabilities, against Andrew Breiter-Wu personally. But the operative state-court enforcement history reflected in Exhibits B and C does not establish such a personal debt. To the contrary, the record shows that when Plaintiff pursued enforcement of the settlement structure in state court, the judgment mechanism he invoked and the judgment he obtained ran against the company. Exs. B, C.

The First Amended Complaint attempts to avoid that problem through sweeping alter-ego and veil-piercing allegations. See First Am. Compl. ¶¶ 37–44. But those allegations remain conclusory. Plaintiff alleges, in generalized fashion, that Defendant failed to observe corporate formalities, dominated various LLCs, commingled funds, and used company accounts for personal purposes. Id. Yet the complaint does not plead specific facts sufficient to plausibly show that Breiter Planet Properties, LLC should be disregarded here, much less that the corporate judgment Plaintiff already obtained should now be transformed into a personal nondischargeable debt in bankruptcy.

That pleading defect is especially significant because Plaintiff's own allegations and exhibits demonstrate that the underlying project payments were made to **Breiter Planet Properties,**

9

**LLC**, not to Defendant personally. Plaintiff made twenty-five (25) payments totaling $1,620.75 through BPP's payment processor. Ex. D. Those payments were directed to the company, and the subsequent settlement structure likewise contemplated payment by the company, including the initial $500 wire payment made pursuant to the Settlement Agreement. Ex. A. The First Amended Complaint therefore does not plausibly allege that Andrew Breiter-Wu personally obtained the debt Plaintiff now seeks to except from discharge.

At minimum, Plaintiff's amended pleading identifies a disputed corporate project relationship, a later settlement, and a state-court judgment entered against **Breiter Planet Properties, LLC**. That is not enough to state a plausible claim that the same debt is nondischargeable against Andrew Breiter-Wu personally under § 523(a)(2)(A). Because Plaintiff has not plausibly alleged a debt of the debtor as required for nondischargeability, the First Amended Complaint should be dismissed.

### B. The First Amended Complaint Fails to Plead Fraud With Particularity as Required by Rule 9(b)

Even if Plaintiff had plausibly alleged a personal debt of the debtor—which he has not—the First Amended Complaint independently fails because it does not plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b), made applicable by Federal Rule of Bankruptcy Procedure 7009.

Rule 9(b) requires that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." At a minimum, a complaint must identify the specific allegedly fraudulent statement or omission, the speaker, the time and place of the statement, and an explanation of why the statement was false or misleading when made. Conclusory allegations or generalized

10

assertions that a defendant "misrepresented" or "never intended to perform" are insufficient to satisfy this heightened pleading standard.

The First Amended Complaint does not meet that standard. Instead, Plaintiff relies largely on vague and generalized assertions that Defendant misrepresented the status of the solar project and that the project was never intended to be completed. The pleading does not identify with precision the specific statements that were allegedly fraudulent, when they were made, the exact content of those statements, or the factual basis for concluding that the statements were false at the time they were made.

This type of pleading—attempting to transform a disputed contractual relationship into fraud through hindsight—is precisely what Rule 9(b) is designed to prevent. Allegations that a project was delayed, not completed, or later became the subject of a dispute do not, without more, establish that any earlier statement regarding the project was fraudulent when made.

Indeed, the documentary record referenced in Plaintiff's own allegations reflects that the parties were engaged in a typical residential solar development process that included engineering review and project development work. See Ex. E. The existence of engineering review, project development activity, and subsequent structural issues and redesign considerations undermines any plausible inference that the project arrangement was a fraudulent scheme from the outset.

Courts within the First Circuit consistently hold that Rule 9(b) is not satisfied where a plaintiff merely alleges that a defendant failed to perform a contractual obligation and then infers fraudulent intent from the nonperformance itself. A breach of contract, business failure, or project delay—even if accompanied by financial difficulties—does not become fraud simply because the plaintiff later characterizes it as such.

Here, Plaintiff's allegations amount to little more than that: a hindsight attempt to characterize a failed business arrangement and subsequent settlement dispute as "fraud." The First Amended Complaint does not plead the who, what, when, where, and why of any actionable misrepresentation with the particularity required by Rule 9(b).

Because Plaintiff has not pleaded fraud with the specificity required by Rule 9(b), the § 523(a)(2)(A) claim fails as a matter of law and should be dismissed.

### C. Plaintiff's Allegations Concerning the Solar Project Describe, At Most, a Contract Dispute Rather Than Fraud

Section 523(a)(2)(A) does not convert every failed transaction, delayed project, or disputed business relationship into nondischargeable fraud. To the contrary, courts consistently distinguish between actionable fraud and the far more common circumstance in which a project does not proceed as hoped, a business relationship deteriorates, or a contractual arrangement later breaks down. The First Amended Complaint, even when read in the light most favorable to Plaintiff, describes the latter—not the former.

The documentary record reflects that the proposed solar project involved actual development activity by Breiter Planet Properties, LLC. The project was not a fictitious transaction, nor was it an instance in which Plaintiff paid a large lump sum and received nothing in return. Plaintiff accepted a proposal for a residential solar system with a stated system price of $18,900 and projected total payments of approximately $32,844 over a twenty-year term at 2.9% interest. Ex. E. Under that arrangement, however, Plaintiff did not pay $18,900, $24,500, or any comparable amount. Rather, Plaintiff made only twenty-five (25) monthly payments totaling $1,620.75 to Breiter Planet Properties, LLC. Ex. D.

12

Those payments were made to the company through its payment processor, not to Defendant Andrew Breiter-Wu personally. Ex. D. And the documentary record further reflects that BPP undertook actual project-related work during the relationship, including engineering design activity, structural review, and permitting-related efforts. Ex. E. The existence of that documented work is fundamentally inconsistent with Plaintiff's effort to recast the entire relationship as a fraudulent scheme.

The project also encountered legitimate structural and engineering issues during development. As reflected in the project documents, structural review raised concerns regarding at least one of the proposed roof sections, requiring redesign and additional evaluation before installation could proceed. Ex. E. BPP communicated those developments to Plaintiff during the project-development process. Id. Those facts may bear on project timing, scope, or ultimate completion, but they do not plausibly establish that the project was fraudulent from inception.

At most, the First Amended Complaint describes a residential solar project that encountered engineering constraints, design complications, payment disputes, and, ultimately, a failed commercial relationship. That may support a contract claim or a business dispute, and indeed Plaintiff already pursued such relief in state court and has an active default judgment against Breiter Planet Properties, LLC. It does not, however, state a plausible claim that Defendant obtained money by false pretenses, false representation, or actual fraud within the meaning of § 523(a)(2)(A).

That distinction is especially important here because Plaintiff now seeks to except from discharge an alleged debt of $24,500.00 while the documentary record shows that he paid only $1,620.75 in total to Breiter Planet Properties, LLC. Ex. D. Whatever claims Plaintiff may

13

believe he has arising from the project's non-completion, the disparity between the amount actually paid and the amount now asserted as fraud-based debt further underscores the extent to which the First Amended Complaint attempts to transform a disputed project relationship into something it was not.

In short, the amended pleading alleges a breakdown in a business and project relationship—not a plausibly pleaded fraud. For that reason as well, the First Amended Complaint should be dismissed.

### D. The Alter-Ego and Veil-Piercing Allegations Are Conclusory and Insufficient

The First Amended Complaint also attempts to bridge the gap between a corporate project dispute and a personal nondischargeability claim by asserting that Breiter Planet Properties, LLC and other entities should be disregarded and that Andrew Breiter-Wu should be held personally liable under an alter-ego or veil-piercing theory. Those allegations are insufficient.

Under Massachusetts law, disregard of the corporate form is an extraordinary remedy, not a default rule. Courts do not pierce the corporate veil merely because a closely held business experienced financial difficulty, failed to perform a contract, or was operated by a single principal. Rather, veil piercing generally requires a fact-intensive showing of circumstances such as pervasive control, confused intermingling of business activity or assets, thin capitalization coupled with misuse of the entity form, nonobservance of corporate formalities, or use of the corporation to promote fraud or other injustice. Even then, the doctrine is applied sparingly.

14

The First Amended Complaint does not plead facts meeting that standard. Instead, Plaintiff offers only generalized assertions that Defendant failed to observe corporate formalities, exercised complete domination over various LLCs, commingled funds, used company accounts for personal expenses, and undercapitalized the entities. See First Am. Compl. ¶¶ 37–44. Those allegations are formulaic and conclusory. They are not supported by specific factual content identifying when any such conduct occurred, what accounts were allegedly commingled, what transactions supposedly reflected misuse of corporate funds, or how any such conduct relates specifically to the Mark Danko project.

That lack of specificity is particularly important here because the limited documentary record properly before the Court cuts in the opposite direction. Plaintiff's own payment history reflects that his payments were made to **Breiter Planet Properties, LLC** through the company's payment processor, not to Defendant personally. Ex. D. The settlement documents likewise contemplated payment by the company, and the escrowed Agreement for Judgment expressly provided for judgment against **Breiter Planet Properties, LLC** in the event of an uncured default. Ex. B. The Malden docket then reflects that judgment was, in fact, entered against **Breiter Planet Properties, LLC**. Ex. C. Those documents underscore the extent to which Plaintiff's relationship, payments, settlement, and state-court judgment were structured as corporate matters.

A plaintiff cannot transform a corporate judgment into a personal nondischargeability claim merely by reciting the phrases "alter ego," "commingling," or "failure to observe corporate formalities." Yet that is effectively what the First Amended Complaint attempts to do. The pleading offers labels and conclusions, but it does not allege concrete facts sufficient to support veil piercing under Massachusetts law, much less facts sufficient to convert Plaintiff's

15

preexisting corporate dispute into a debt nondischargeable against Andrew Breiter-Wu

personally.

Because the alter-ego and veil-piercing allegations are conclusory and insufficient as a matter of

law, they cannot salvage the First Amended Complaint's failure to plausibly allege a

nondischargeable debt owed by Defendant personally.

### E. Counts IV and V Fail as a Matter of Law

Counts IV and V of the First Amended Complaint should also be dismissed because they do not

state legally cognizable grounds for nondischargeability under 11 U.S.C. § 523(a)(2)(A).

Count IV is styled as a claim for fraud based on an allegedly "unsustainable financing scheme."

Count V is styled as a claim for fraud based on alleged violations of unspecified

"banking/financial laws." But § 523(a)(2)(A) does not except from discharge debts merely

because a plaintiff characterizes a business model as unsustainable, alleges poor financial

management, or invokes generalized wrongdoing untethered to a specific fraudulent

misrepresentation by the debtor.

To state a claim under § 523(a)(2)(A), Plaintiff must plead facts showing that money, property,

services, or credit were obtained by false pretenses, a false representation, or actual fraud. Counts

IV and V do not do that. Instead, they attempt to substitute broad accusations regarding business

operations, capitalization, payment practices, and supposed financial improprieties for the

specific statutory elements required by § 523(a)(2)(A).

Count IV does not identify any particular false statement made to Plaintiff that induced him to

enter the transaction or make payments. Rather, it alleges, in substance, that Breiter Planet

16

Properties, LLC operated in a financially unsustainable manner and that fraudulent intent may therefore be inferred. That theory is legally insufficient. A business model that later proves imprudent, strained, or unsuccessful does not, without more, establish that a debtor obtained money through fraud.

Count V is even more deficient. It alleges that Defendant accepted and used customer payments in violation of unspecified "banking and financial laws," including commingling funds and using new customer payments to satisfy prior obligations. Yet the count does not identify what banking or financial laws were allegedly violated, does not allege facts showing how Plaintiff was defrauded by any specific statutory violation, and does not connect those generalized accusations to a properly pleaded claim under § 523(a)(2)(A). Labels of that kind are not substitutes for factual allegations or statutory elements.

Moreover, both Counts IV and V suffer from the same core defect present elsewhere in the amended pleading: they attempt to convert alleged business difficulties and project-related nonperformance into fraud by inference alone. That is not enough. Section 523(a)(2)(A) is not a catch-all remedy for every failed transaction or distressed business relationship. It requires a plausible and particularized allegation that the debtor obtained money or property from the plaintiff through fraud. Plaintiff has not pleaded such a claim here.

The documentary record underscores the point. Plaintiff made twenty-five (25) payments totaling only $1,620.75 to **Breiter Planet Properties, LLC**. Ex. D. The project documents reflect that BPP undertook actual development work on the proposed solar installation, including engineering, structural review, and permitting activity. Ex. E. Whatever one may say about the success or failure of the project, those facts do not support Counts IV and V as pleaded.

17

Because Counts IV and V do not state valid grounds for nondischargeability under § 523(a)(2)(A), they should be dismissed as a matter of law.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff's First Amended Complaint still fails to state a plausible claim for nondischargeability under **11 U.S.C. § 523(a)(2)(A)** against Defendant Andrew Breiter-Wu personally. The operative documents show that Plaintiff's payments were made to **Breiter Planet Properties, LLC**, not to Defendant personally; that Plaintiff made only **twenty-five (25) payments totaling $1,620.75**; that the parties' settlement structure included an escrowed **Agreement for Judgment** running against **Breiter Planet Properties, LLC**; and that the resulting Malden District Court judgment likewise entered against **Breiter Planet Properties, LLC**. See Exs. A–D.

The First Amended Complaint does not plausibly overcome those facts. Instead, it attempts to repackage a disputed and incomplete solar project relationship, a later settlement dispute, and a corporate judgment into a personal fraud claim in bankruptcy. It does so through conclusory alter-ego allegations, hindsight inferences of fraudulent intent, and legal labels that outpace the factual allegations actually pleaded. That is not sufficient under **Rules 12(b)(6) and 9(b)**, nor is it sufficient to state a claim under **§ 523(a)(2)(A)**.

Moreover, the documentary record reflects that the underlying project involved actual development activity by **Breiter Planet Properties, LLC**, including engineering, structural review, and permitting-related work. See Ex. E. Whatever disputes later arose between the parties, those facts further confirm that this adversary proceeding describes, at most, a failed

18

business and project relationship—not a plausibly pleaded fraud claim against the individual

debtor.

Accordingly, Defendant respectfully requests that this Court **dismiss the First Amended**

**Complaint in its entirety**, and grant such other and further relief as the Court deems just and

proper.

Respectfully submitted,
/s/ Andrew Breiter-Wu
Andrew Breiter-Wu, Pro Se
Debtor
86 Willard Ave
Seekonk, MA 02771
617-334-5785
Legal@breiterplanet.com

Dated: March 16, 2026

---

## CERTIFICATE OF SERVICE

I, **Andrew Breiter-Wu**, hereby certify that on **March 16, 2026**, I caused a true and correct copy
of the foregoing **Memorandum of Law in Support of Motion to Dismiss First Amended
Complaint**, together with all accompanying documents, to be served by electronic mail, upon:

> **Mark Danko**
>  302 Melrose St
>  Melrose, MA 02176
>  mwdanko@gmail.com

Dated: March 16, 2026

**/s/ Andrew Breiter-Wu**
 **Andrew Breiter-Wu**
 Defendant, Pro Se

---

## EXHIBIT INDEX

| Exhibit | Description |
| --- | --- |
| **Exhibit A** | Settlement Agreement and Mutual Release |
| **Exhibit B** | Agreement for Judgment |
| **Exhibit C** | Malden District Court Docket and Judgment Entry |
| **Exhibit D** | Stripe Payment Processor Records Reflecting Payments Made by Plaintiff Mark Danko to Breiter Planet Properties, LLC |
| **Exhibit E** | Project Development, Engineering, Structural Review, and Permitting Documents |

# EXHIBIT A

Docusign Envelope ID: AEBBE040-11B5-49B1-8E1A-B8G3GC34046E

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into as of July 15, 2024 by and between Mark Danko ("Plaintiff") and Breiter Planet Properties, LLC and Andrew Breiter-Wu ("Defendants"). Collectively, Plaintiff and Defendants are referred to as the "Parties."

**WHEREAS**, the Plaintiff has filed a lawsuit against the Defendants, C.A. NO.: 2450CV000042, currently pending in Malden District Court, Middlesex County, Massachusetts (the "Lawsuit");

**WHEREAS**, the Parties desire to resolve all disputes and claims between them, including those asserted in the Lawsuit, without the need for further litigation;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Settlement Payment**: a. Defendants agree to pay Plaintiff a total sum of $5,000 ("Settlement Amount") in ten (10) monthly installments of $500 each, beginning on August 1, 2024, and continuing on the first day of each subsequent month until paid in full. b. Payments will be made via wire transfer to Plaintiff's attorney's IOLTA account. The Plaintiff's attorney will provide the necessary bank details for the wire transfer.

2. **Joint Agreement for Judgment**: a. The Parties will execute a Joint Agreement for Judgment in the amount of $25,000, which will be held in escrow by Plaintiff's attorney. b. The Joint Agreement for Judgment will only be filed with the court if Defendants default on their payment obligations under this Agreement, and such default is not cured

Docusign Envelope ID: AEBBE040-11B5-49B1-8E1A-B8G3GC34046E

within thirty (120) days of written notice of the default. Any payments made prior to the filing of the Joint Agreement for Judgment will be offset against the judgment amount.

3. **Mutual Release**: In consideration for the payment of the Settlement Amount detailed in this agreement, and other good and valuable consideration, Plaintiff on the one hand and Defendants on the other, each acting on behalf of themselves and their respective divisions, affiliates, subsidiaries, parents, predecessors, successors and assigns, employees, insurers, sureties, agents, attorneys, and any party affiliated therewith will, upon Defendants' fulfillment of all payment obligations as set forth in this agreement, remise, release, and forever discharge each of the other parties from any and all debts, demands, actions, causes of action, sums of money, covenants, contracts, controversies, agreements, promises, doings, omissions, damages, and liabilities and any and all other claims and counterclaims of every kind, nature, and description whatsoever, both in law and in equity, that either Plaintiff or Defendants have, had or may have, whether known or unknown, from the beginning of the world through the date of this Agreement, including but not limited to all claims related to the Judgment; provided, however, that Plaintiff's rights under the Judgment shall not be released should Defendants default on their obligations to pay the Settlement Amount in a timely manner. This Release shall not impair, limit, or release any right or obligation created by this Agreement.

4. **Mutual Non-Disparagement**: a. The Parties agree not to make any intentionally disparaging statements about each other, whether written, oral, or otherwise, to any third party. Plaintiff agrees to try to remove any negative online reviews about Defendants upon execution of this Agreement, provided that Defendants timely provide links of all negative reviews,  and agrees not to post any negative reviews in the future.

Docusign Envelope ID: AEBBE040-11B5-49B1-8F1A-B8G3GC34046E

5. **Motion to Stay**: a. Plaintiff agrees to file a Motion to Stay the proceedings in the Lawsuit for a period of twelve (12) months from the date of this Agreement to allow for the completion of the Settlement Amount payments. b. The Parties agree that the case will remain open during this period to facilitate the settlement process, and no further litigation actions will be taken by either party during the stay period.

6. **Consequences of Default**: a. In the event Defendants fail to make any scheduled payment, Plaintiff shall provide written notice of the default to Defendants. Defendants shall have thirty (120) days from the date of the notice to cure the default. b. If the default is not cured within the thirty (120) day period, Plaintiff may file the Joint Agreement for Judgment with the court, offset by any payments made by Defendants prior to the default.

7. **Confidentiality**: a. The terms of this Agreement are not confidential, and the Parties may disclose the terms as they see fit.

8. **Severability**: The provisions of this Agreement are severable, and the other Sections shall remain fully valid and enforceable if any part of the Agreement is found to be unenforceable.

9. **Binding Effect**: This Agreement shall be binding upon and inure to the benefit of the predecessors, heirs, successors, and assigns of the Parties.

10. **Governing Law and Jurisdiction**: This Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts. To the extent an action is necessary to enforce any of the obligations under this Agreement, the Parties agree to submit to jurisdiction in the State Courts in the Commonwealth of Massachusetts.

11. **Entire Agreement**: The Parties acknowledge and agree that this Agreement is a full, final and complete settlement agreement and mutual release. This Agreement contains the entire understanding and agreement between the Parties, and there are no representations, warranties, covenants, promises or undertakings, oral or otherwise, that are not expressly set forth or incorporated by reference herein. All prior discussions and negotiations are merged and integrated into this Agreement.

12. **Voluntary Execution**: This Agreement has been prepared through the combined efforts of the Parties and their respective attorneys. The Parties acknowledge and agree that the terms of this Agreement are fair and reasonable, and clear and unambiguous. The Parties also acknowledge that they have read this Agreement, that they fully understand the contents of this Agreement, and that their execution of this Agreement is voluntary.

13. **Counterparts or Duplicate Agreements**: The Parties acknowledge and agree that facsimile or photocopy signatures shall be deemed to be original signatures for any and all purposes. The Parties also acknowledge and agree that a facsimile or photocopy of the fully executed Agreement shall be deemed to be an original for any and all purposes.

14. **Non-Assignment of Claims**: The Parties each represent and warrant that the rights and claims released pursuant to this Agreement have not in any way been assigned, transferred, hypothecated, or otherwise encumbered, and that they are the sole and absolute owners of such rights and claims.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first

above written.

**For the Plaintiff:**

DocuSigned by:

*Ira Grolman*

4EA2612D366E474...

Ira H. Grolman

Grolman LLP

29 Stanhope Street

Boston, MA 02116

(617) 859-8966

Attorney for Mark Danko

**For the Defendants:**

DocuSigned by:

*Andrew Breiter-Wu*

8131D0629B21440...

Andrew Breiter-Wu

Breiter Planet Properties, LLC

86 Willard Ave

Seekonk, MA 02771

(617) 334-5785

Pro-Se

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

| | | |
|---|---|---|
| Middlesex, ss. | | District Court Department |
| | | Malden District Court |

Mark Danko, )
    Plaintiff, )
)
v. )     Civil Action No. 2450CV000042
)
Andrew Breiter-Wu, and )
Breiter Planet Properties, LLC, )
    Defendants. )

## AGREEMENT FOR JUDGMENT

The Parties in the above-entitled action hereby stipulate and agree as follows:

1. The Parties enter into this Agreement voluntarily as stipulated under the terms of the settlement agreement and mutual release ("Settlement Agreement") executed between the parties.

2. In the case of a default on the settlement agreement and default is not cured by the defendants within 120 days, this Judgment shall enter for Plaintiff, and against Breiter Planet Properties, LLC, in the sum of $25,000 ("Judgment Amount") which shall be offset from payments already made prior to the filing of this agreement for judgment.

3. The full terms surrounding this agreement for judgement are defined in the settlement agreement executed between the parties.

**For the Plaintiff:**

*Ira Grolman*
Ira H. Grolman
Grolman LLP
29 Stanhope Street
Boston, MA 02116
(617) 859-8966
Attorney for Mark Danko

**For the Defendants:**

*Andrew Breiter-Wu*
Andrew Breiter-Wu
Breiter Planet Properties, LLC
86 Willard Ave
Seekonk, MA 02771
Pro-Se

# EXHIBIT C

**2450CV000042 Danko, Mark v. Breiter-Wu, Andrew**

- Case Type:
- Civil
- Case Status:
- Disposed for Statistical Purposes
- File Date
- 01/16/2024
- DCM Track:
-
- Initiating Action:
- Money Action - District Court Filing (c231 §§ 103-104)
- Status Date:
- 10/28/2025
- Case Judge:
-
- Next Event:
-

**All Information**   **Party**   **Judgment**   **Event**   **Docket**   **Disposition**

## Party Information

**Danko, Mark**
- Plaintiff

| **Alias** | **Party Attorney** |
|---|---|
| | - Attorney |
| | - Grolman, Esq., Ira H |
| | - Bar Code |
| | - 556709 |
| | - Address |
| | - Grolman LLP |
| | 29 Stanhope St |
| | Boston, MA  02116 |
| | - Phone Number |
| | - (617)859-8966 |

**More Party Information**

**Breiter-Wu, Andrew**
- Defendant

| **Alias** | **Party Attorney** |
|---|---|

**More Party Information**

**Breiter Planet Properties, Llc**
- Defendant

| **Alias** | **Party Attorney** |
|---|---|

**More Party Information**

## Judgments

| Date | Type | Method | For | Against |
|---|---|---|---|---|
| 10/28/2025 | Judgment for the Plaintiff | , after default and upon assessment of damages | Danko, Mark | Breiter Planet Properties, Llc |

## Events

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 06/12/2024 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Reschedule of Hearing |
| 07/16/2024 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Held |
| 03/26/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Event Cancelled |

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 08/05/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Reschedule of Hearing |
| 09/09/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Held |
| 09/30/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Reschedule of Hearing |
| 10/28/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Held - Motion Allowed |

## Docket Information

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 01/16/2024 | E-File complaint filed. | | | |
| 01/16/2024 | Statement of damages filed by Plaintiff alleging contract action for damages of $25000. or less(Dist./Mun.Cts.Supp.R.Civ.P. 102A) | | | |
| 01/16/2024 | Exparte motion filed. | | 1 | |
| 01/18/2024 | Motion to appoint special process server (Civ.P. 3[c] &4) allowed . | | | |
| 02/02/2024 | Return of service on complaint and summons to Breiter Planet Properties, Llc: Officer service SERVED at last and usual abode (Mass.R.Civ.P. 4(f)). | | 3 | |
| 02/08/2024 | Return of service on complaint and summons to Andrew Breiter-Wu: Officer service SERVED at last and usual abode (Mass.R.Civ.P. 4(f)). | | 2 | |
| 02/15/2024 | Application to clerk-magistrate to enter default against Andrew Breiter-Wu filed by Mark Danko (Mass.R.Civ.P. 55(a) & 77(b)). | | | |
| 02/28/2024 | Default entered against Andrew Breiter-Wu by clerk-magistrate (Mass.R.Civ.P. 55(a) & 77(b)). | | | |
| 04/26/2024 | Motion to assess damages (Mass.R.Civ.P. 55[b][4]) filed by Mark Danko-Plaintiff. | | 4 | |
| 04/30/2024 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 06/12/2024  Time: 11:00 AM<br>Result: Reschedule of Hearing | | | |
| 06/10/2024 | Answer filed.<br><br>Applies To: Breiter-Wu, Andrew (Defendant); Breiter Planet Properties, Llc (Defendant) | | 5 | |
| 06/10/2024 | Motion to dismiss filed<br><br>Applies To: Breiter-Wu, Andrew (Defendant); Breiter Planet Properties, Llc (Defendant) | | 6 | |
| 06/10/2024 | Opposition filed to Defts opposition to plaintiffs motion for assessment of damages and default judgment filed. | | 7 | |
| 06/10/2024 | Motion to Plaintiffs motion to strike defendants motion to remove default filed by Mark Danko-Plaintiff. | | 8 | |
| 06/11/2024 | Opposition filed filed. | | 9 | |
| 06/12/2024 | Motion to Plaintiffs motion to strike defendants and counterclaim allowed allowed . | | | |
| 06/13/2024 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 07/16/2024  Time: 11:00 AM<br>Result: Held | | | |
| 07/16/2024 | Event Resulted:  Motion Hearing (CV) scheduled on:<br>        07/16/2024 11:00 AM<br>Has been: Held<br>Hon. James M Murphy, Presiding | | | |
| 07/16/2024 | Misc Entry:<br><br>1 year NISI Order | | | |
| 02/25/2025 | Motion to restore case to trial list filed by Mark Danko-Plaintiff. | | 10 | |
| 02/26/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 03/26/2025  Time: 11:00 AM<br>Result: Event Cancelled | | | |
| 03/05/2025 | Opposition filed to Enforce settlement and enter judgment filed. | | 11 | |
| 03/06/2025 | Motion to Withdraw motion to return to trial list and enforce settlement filed by Mark Danko-Plaintiff. | | 12 | |

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 03/07/2025 | Event Resulted:  Motion Hearing (CV) scheduled on:<br>        03/26/2025 11:00 AM<br>Has been: Event Cancelled        For the following reason: Brought forward<br>Hon. Emily A Karstetter, Presiding | | | |
| 07/07/2025 | Motion to To enforce settlement judgment and enter final judgment filed by Mark Danko-Plaintiff. | | 13 | |
| 07/08/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 08/05/2025  Time: 11:00 AM<br>Result: Reschedule of Hearing | | | |
| 08/04/2025 | Opposition filed to plaintiff's motion to enforce settlement and enter final judgment filed. | | 14 | |
| 08/04/2025 | Motion for continuance (Mass.R.Civ.P.40[b]) filed by Mark Danko-Plaintiff. | | 15 | |
| 08/05/2025 | Motion for continuance (Mass.R.Civ.P.40[b]) allowed . | | | |
| 08/05/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 09/09/2025  Time: 11:00 AM<br>Result: Held | | | |
| 09/08/2025 | Suggestion of bankruptcy filed (11 U.S.C. §362). | | 16 | |
| 09/09/2025 | Event Resulted:  Motion Hearing (CV) scheduled on:<br>        09/09/2025 11:00 AM<br>Has been: Held        For the following reason: Bankruptcy<br>Comments: Motion stayed as to Defendant Andrew Breiter-Wu because for bankruptcy filing. Cast Continued for company<br>Hon. David E Frank, Presiding | | | |
| 09/09/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 09/30/2025  Time: 11:00 AM<br>Result: Reschedule of Hearing | | | |
| 09/30/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 10/28/2025  Time: 11:00 AM<br>Result: Held - Motion Allowed | | | |
| 10/28/2025 | Motion to enforce settlement agreement and enter final judgment allowed . | | | |
| 10/28/2025 | Judgment Entered:: Judgment for the Plaintiff    , after default and upon assessment of damages    Presiding: Hon. James M Murphy<br><br>        Judgment For:        Mark Danko<br><br>        Judgment Against:   Breiter Planet Properties, Llc<br><br>Terms of Judgment:  Interest Begins: 01/16/2024 Jdgmnt Date: 10/28/2025  Interest Rate: .12 Daily Interest Rate: .000329<br>Damages: Damage Amt: 24500.00 Filing Fees: 195.00 Costs Pd to Court: 5.00<br>        Judgment Total: 29,947.39 | | | |
| 11/13/2025 | Execution Issued:<br>Execution on Money Judgment<br>Judgment Debtor: Breiter Planet Properties, Llc<br>Judgment Creditor: Danko, Mark<br>Terms of Execution:<br>EXON Issuance Date:  11/13/2025<br>Judgment Total:  29,947.39<br>Post Judgment Int. Rate:  .12        Post Judgment Int. Total:  157.64<br>Execution Subtotal:  30,105.03<br>Execution Total:  30,105.03 | | | |

## Case Disposition

| Disposition | Date |
|---|---|
| Pending | |

# **<u>EXHIBIT D</u>**

| Amount | | | Payment method | Description | Customer | Date |
|---|---|---|---|---|---|---|
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 643217556 | mwdanko@gmail.com | Sep 27, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 625502641 | mwdanko@gmail.com | Aug 28, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 607945230 | mwdanko@gmail.com | Jul 29, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 590451641 | mwdanko@gmail.com | Jun 29, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 573007761 | mwdanko@gmail.com | May 30, 2022, 12:07 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 555133034 | mwdanko@gmail.com | Apr 30, 2022, 12:05 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 536891172 | mwdanko@gmail.com | Mar 31, 2022, 12:05 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 519618781 | mwdanko@gmail.com | Mar 1, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 503383106 | mwdanko@gmail.com | Jan 30, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 488286036 | mwdanko@gmail.com | Dec 31, 2021, 12:05 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 471879761 | mwdanko@gmail.com | Dec 1, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 457256724 | mwdanko@gmail.com | Nov 1, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 441841866 | mwdanko@gmail.com | Oct 2, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 427015639 | mwdanko@gmail.com | Sep 2, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 412566693 | mwdanko@gmail.com | Aug 3, 2021, 12:03 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 397822151 | mwdanko@gmail.com | Jul 4, 2021, 12:03 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 383479139 | mwdanko@gmail.com | Jun 4, 2021, 12:03 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 369145978 | mwdanko@gmail.com | May 5, 2021, 12:03 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 355195277 | mwdanko@gmail.com | Apr 5, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 341499426 | mwdanko@gmail.com | Mar 6, 2021, 12:08 AM |

| Amount | | | Payment method | | Description | Customer | Date | |
|---|---|---|---|---|---|---|---|---|
| $64.83 | USD | Succeeded ✓ | VISA | •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 328582019 | mwdanko@gmail.com | Feb 4, 2021, 12:09 AM | ••• |
| $64.83 | USD | Succeeded ✓ | VISA | •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 317023553 | mwdanko@gmail.com | Jan 5, 2021, 12:07 AM | ••• |
| $64.83 | USD | Succeeded ✓ | VISA | •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 304544580 | mwdanko@gmail.com | Dec 6, 2020, 12:07 AM | ••• |
| $64.83 | USD | Succeeded ✓ | VISA | •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 292494149 | mwdanko@gmail.com | Nov 6, 2020, 12:07 AM | ••• |
| $64.83 | USD | Succeeded ✓ | VISA | •••• 9652 | Amount related with shop order Breiter Planet Properties Cart Token: 10de2637935e4d5db83d5f45c61eae35 | mwdanko@gmail.com | Oct 7, 2020, 12:06 PM | ••• |

Viewing 21–25 of 25 results

Previous   Next

# EXHIBIT E

25

6/4/24, 10:27 PM Breiter Planet Properties Mail - Vector Portal Notification: Mark & Astgik Sandy Danko - 302 Melrose (2895793632)

Case 25-01162 Doc 33-1 Filed 08/16/26 Entered 03/17/26 08:37:04 Desc
Memorandum of Law in Support of Page 38 of 69



**Andrew Breiter-Wu <andrew@breiterplanet.com>**

# Vector Portal Notification: Mark & Astgik Sandy Danko - 302 Melrose (2895793632)

1 message

**NoreplyVector** <noreply@vectorse.com>                     Wed, Feb 3, 2021 at 8:06 PM
To: jensen@vectorse.com, lee@vectorse.com, Andrew@breiterplanet.com,
Labbate@breiterplanet.com

**VectorStructuralEngineering**

Hello,

This email is being sent to advise you that a post was made through the Vector Engineering Portal regarding the project listed below.

Project Name: **Mark & Astgik Sandy Danko - 302 Melrose**
Job Id: **2895793632**
Vector Project Number: **U4011.0015.201**
Posted By: **CRS**
Files: **No files.**

Message:

> Andrew, the photos provided don't show that there are any additional supports, so this will need a retrofit. This will require a sister rafter retrofit for the roofs with angles 36.87 degrees and the roof with a 9 degree slope will need a knee wall retrofit. Is this ok with you?

This is coming from an unmonitored email address. If you would like to respond, please create a post via the Vector Portal.
If you have any questions regarding the email. Please feel free to reach out to your contact at Vector Structural Engineering.

© 2021 VectorStructuralEngineering. All rights reserved.

6/4/24, 10:27 PM    Case 25-01162    Breiter Planet Properties Mail - Vector Portal Notification: Mark & Astgik Sandy Danko - 302 Melrose (2895793632)

Memorandum of Law in Support of    Page 39 of 69



**Andrew Breiter-Wu <andrew@breiterplanet.com>**

# Vector Portal Notification: Mark & Astgik Sandy Danko - 302 Melrose (2895793632)

**2 messages**

---

**NoreplyVector** <noreply@vectorse.com>                    Thu, Mar 11, 2021 at 2:28 PM
To: jensen@vectorse.com, lee@vectorse.com, Andrew@breiterplanet.com,
Labbate@breiterplanet.com, jmenges@breiterplanet.com, dbreiter@breiterplanet.com,
Espicher@breiterplanet.com, mrorke@breiterplanet.com

**VectorStructuralEngineering**

Hello,

This email is being sent to advise you that a post was made through the Vector Engineering Portal regarding the project listed below.

Project Name: **Mark & Astgik Sandy Danko - 302 Melrose**
Job Id: **2895793632**
Vector Project Number: **U4011.0015.201**
Posted By: **WIC**
Files: **No files.**

Message:

> Hello, Roof #1 will pass our analysis but we can't pass Roof #2 based on the info we have received. Would you like us to proceed with the analysis of roof #1? If yes, Please send us updated layout with roof 1.

This is coming from an unmonitored email address. If you would like to respond, please create a post via the Vector Portal.
If you have any questions regarding the email. Please feel free to reach out to your contact at Vector Structural Engineering.

© 2021 VectorStructuralEngineering. All rights reserved.

---

**NoreplyVector** <noreply@vectorse.com>                    Thu, Mar 11, 2021 at 2:44 PM
To: jensen@vectorse.com, Andrew@breiterplanet.com, Labbate@breiterplanet.com
Cc: lee@vectorse.com

6/4/24, 10:27 PM   Vector Properties Mail - Vector Portal Notification (Mark & Astgik Sandy Danko - 302 Melrose 2895793632)

Case 25-01162   Doc 33-1   Filed 03/16/26   Entered 03/17/26 08:37:04   Desc
Memorandum of Law in Support of    Page 40 of 69

**VectorStructuralEngineering**

Hello,

This email is being sent to advise you that a post was made through the Vector Engineering Portal regarding the project listed below.

Project Name: **Mark & Astgik Sandy Danko - 302 Melrose**
Job Id: **2895793632**
Vector Project Number: **U4011.0015.201**
Posted By: **LKO**
Files: **No files.**

Message:

> Andrew, to clarify, we are unable to provide a retrofit for Roof 2. A Sr. Engineer reviewed the project and determined that we cannot approve that section. We can approve Roof 1 but cannot approve Roof 2. Please let us know how you would like to proceed. Thanks, Lee

This is coming from an unmonitored email address. If you would like to respond, please create a post via the Vector Portal.
If you have any questions regarding the email. Please feel free to reach out to your contact at Vector Structural Engineering.

© 2021 VectorStructuralEngineering. All rights reserved.



Andrew Breiter-Wu <andrew@breiterplanet.com>

## Solar Project Update

**Julie Menges** <jmenges@breiterplanet.com>                    Wed, Mar 31, 2021 at 10:08 AM
To: mwdanko@gmail.com
Cc: Andrew Breiter-Wu <andrew@breiterplanet.com>

Mr. and Mrs. Danko,

Good morning.  I hope my email finds you well.  First, I would like to thank you for your patience. We are working diligently on your solar project.  I wanted to send a quick status update.

Where we are right now: the structural engineer has rejected putting anything on the west-facing roof.  We are working with them on a quick redesign and will send you the revised site plan as soon as possible.  You will also be notified of the installation date once this correction is made.  As soon as this matter is resolved, we will update the permits and order materials.  We do not anticipate much of a delay in getting this resolved.

We are always here to answer any questions you have or to give you an update.  Please do not hesitate to reach out!

Thank you,

### Julie Menges

*Paralegal & Project Coordinator*
**Breiter Planet Properties**
p:  (443) 683-3026
w:  www.breiterplanet.com   e:  Jmenges@breiterplanet.com



   

In compliance with IRS requirements, we inform you that any U.S. tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties or in connection with marketing or promotional materials.

STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, or the person responsible for delivering the e-mail to the intended recipient, be advised you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify Breiter Planet Properties immediately at either (617) 334-5785 or at Andrew@breiterplanet.com and destroy all copies of this message and any attachments. You will be reimbursed for reasonable costs incurred in notifying us.

# Mark & Astgik Sandy Danko - 302 Melrose St, Melrose, MA 02176 Mark &

Astgik Sandy Danko - 302 Melrose St, Melrose, MA 02176, 302 Melrose St, Melrose, MA 02176

## 🔧 Report

| | |
|---|---|
| Project Name | Mark & Astgik Sandy Danko - 302 Melrose St, Melrose, MA 02176 |
| Project Address | 302 Melrose St, Melrose, MA 02176 |
| Prepared By | Andrew Breiter-Wu andrew@breiterplanet.com |

## 📊 System Metrics

| | |
|---|---|
| Design | Mark & Astgik Sandy Danko - 302 Melrose St, Melrose, MA 02176 |
| Module DC Nameplate | 10.00 kW |
| Inverter AC Nameplate | 7.68 kW Load Ratio: 1.30 |
| Annual Production | 12.18 MWh |
| Performance Ratio | 82.7% |
| kWh/kWp | 1,218.2 |
| Weather Dataset | TMY, 10km grid (42.45,-71.05), NREL (prospector) |
| Simulator Version | 928cd12e53-ccc4c23e03-9f42624657-b86adabece |

## 📍 Project Location



## 📊 Monthly Production



## ◑ Sources of System Loss



## ⚡ Annual Production

| | Description | Output | % Delta |
|---|---|---|---|
| **Irradiance (kWh/m²)** | Annual Global Horizontal Irradiance | 1,412.3 | |
| | POA Irradiance | 1,472.8 | 4.3% |
| | Shaded Irradiance | 1,470.3 | -0.2% |
| | Irradiance after Reflection | 1,423.2 | -3.2% |
| | Irradiance after Soiling | 1,394.7 | -2.0% |
| | **Total Collector Irradiance** | **1,394.7** | **0.0%** |
| **Energy (kWh)** | Nameplate | 13,944.8 | |
| | Output at Irradiance Levels | 13,832.8 | -0.8% |
| | Output at Cell Temperature Derate | 12,997.9 | -6.0% |
| | Output After Mismatch | 12,670.6 | -2.5% |
| | Optimal DC Output | 12,649.0 | -0.2% |
| | Constrained DC Output | 12,622.6 | -0.2% |
| | Inverter Output | 12,243.1 | -3.0% |
| | **Energy to Grid** | **12,181.9** | **-0.5%** |

| Temperature Metrics | | |
|---|---|---|
| Avg. Operating Ambient Temp | | 11.7 °C |
| Avg. Operating Cell Temp | | 26.7 °C |

| Simulation Metrics | | |
|---|---|---|
| Operating Hours | | 4682 |
| Solved Hours | | 4682 |

Annual Production Report    produced by Andrew Breiter-Wu

## ☁ Condition Set

| Description | Condition Set 1 |
|---|---|
| Weather Dataset | TMY, 10km grid (42.45,-71.05), NREL (prospector) |
| Solar Angle Location | Meteo Lat/Lng |
| Transposition Model | Perez Model |
| Temperature Model | Sandia Model |

| Temperature Model Parameters | Rack Type | a | b | Temperature Delta |
|---|---|---|---|---|
| | Fixed Tilt | -3.56 | -0.075 | 3°C |
| | Flush Mount | -2.81 | -0.0455 | 0°C |

| Soiling (%) | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |

| Irradiation Variance | 5% |
|---|---|
| Cell Temperature Spread | 4° C |
| Module Binning Range | -2.5% to 2.5% |
| AC System Derate | 0.50% |

| Module Characterizations | Module | Uploaded By | Characterization |
|---|---|---|---|
| | Q.PEAK DUO L-G7.2 400 (Hanwha) | Folsom Labs | Spec Sheet Characterization, PAN |

| Component Characterizations | Device | Uploaded By | Characterization |
|---|---|---|---|
| | SB7.7-1SP-US-41 240V (SMA) | Folsom Labs | Spec Sheet |

## 🖨 Components

| Component | Name | Count |
|---|---|---|
| Inverters | SB7.7-1SP-US-41 240V (SMA) | 1 (7.68 kW) |
| Strings | 10 AWG (Copper) | 3 (120.2 ft) |
| Module | Hanwha, Q.PEAK DUO L-G7.2 400 (400W) | 25 (10.00 kW) |

## ⛀ Wiring Zones

| Description | Combiner Poles | String Size | Stringing Strategy |
|---|---|---|---|
| Wiring Zone | 12 | 3-11 | Along Racking |

## ▦ Field Segments

| Description | Racking | Orientation | Tilt | Azimuth | Intrarow Spacing | Frame Size | Frames | Modules | Power |
|---|---|---|---|---|---|---|---|---|---|
| Field Segment 1 | Flush Mount | Portrait (Vertical) | 40° | 117.496° | 0.0 ft | 1x1 | 11 | 11 | 4.40 kW |
| Field Segment 2 | Flush Mount | Portrait (Vertical) | 40° | 115.699° | 0.0 ft | 1x1 | 14 | 14 | 5.60 kW |

🌐 Detailed Layout





# PROJECT DESCRIPTION:

25X400 HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
ROOF MOUNTED SOLAR PHOTOVOLTAIC SYSTEM
SYSTEM SIZE: 10.000 KW DC STC

EQUIPMENT SUMMARY
25  HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
01  SOLAREDGE TECHNOLOGIES SE7600H-US INVERTER
25  P400 SOLAREDGE POWER OPTIMIZERS

AHJ NAME: CITY OF MELROSE
APN#:  MELRM:A12P:0000098

GOVERNING CODES
THIS PROJECT SHALL COMPLY  WITH THE
FOLLOWING CODE
2020 NATIONAL ELECTRICAL CODE
2015 INTERNATIONAL RESIDENTIAL CODE
2015 INTERNATIONAL BUILDING CODE
2015 INTERNATIONAL ENERGY CONSERVATION CODE
2015 INTERNATIONAL PLUMBING CODE
2015 INTERNATIONAL MECHANICAL CODE
ALL OTHER ORDINANCES ADOPTED BY THE LOCAL
GOVERNING AGENCIES.

NOTE
1.NUMBER OF STORIES : 2
2.CONSTRUCTION TYPE : V-B
3.OCCUPANCY : R

**LEGEND**
A-STRING-1(13 MODULES)
B-STRING-2(12 MODULES)

SHEET INDEX
PV-1      PLOT PLAN & VICINITY MAP
PV-2      ROOF PLAN & MODULES
PV-2A     STRING LAYOUT
PV-3      ATTACHMENT DETAIL
PV-4      ELECTRICAL LINE DIAGRAM
PV-5      WIRING CALCULATIONS
PV-6      PLACARDS
PV-7+     EQUIPMENT SPECIFICATIONS

MELROSE ST

94"

134"

1510"

2-STORY
HOUSE

EXISTING
WALKWAY

ROOF #2
(10) HANWHA Q-CELLS-Q.PEAK
DUO LG5.2 400 (400W) MODULES

ROOF #1
(15) HANWHA Q-CELLS-Q.PEAK
DUO LG5.2 400 (400W)  MODULES

PROPERTY LINE

629"

EXISTING DRIVEWAY

516"

1094"

373"

602"

(E) UTILITY  METER
(E) MAIN SERVICE PANEL
(N)  MA SMART METER
(N)  PV INVERTER

### 1 | PLOT PLAN WITH ROOF PLAN
PV-1

0   4        16        32 Ft.

BREITER PLANET PROPERTIES

REVISIONS
| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |

Signature with Seal

PROJECT SITE

### 2 | HOUSE PHOTO
PV-1                                SCALE: NTS

302 Melrose St, Melrose, MA 02176, USA

PROJECT SITE

### 3 | VICINITY MAP
PV-1                                SCALE: NTS

302 Melrose St, Melrose, MA 02176, USA

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
PLOT PLAN &
VICINITY MAP

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-1



## MODULE TYPE, DIMENSIONS & WEIGHT

NUMBER OF MODULES = 25 MODULES
MODULE TYPE = HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
WEIGHT = 51.81LBS /23.5 KG
MODULE DIMENSIONS = 79.33" x 39.37" = 21.689 SF
UNIT WEIGHT OF ARRAY = 2.7 PSF

39.37"
79.33"

HANWHA
Q-CELLS-Q.PEAK
DUO LG5.2 400
(400W) MODULES

### ARRAY AREA WITH MODULE ON ROOF AREA

| ROOF | # OF MODULES | ARRAY AREA (Sq. Ft.) | TOTAL ROOF AREA (Sq. Ft.) | ROOF AREA COVERED BY ARRAY (%) |
|------|--------------|----------------------|---------------------------|-------------------------------|
| #1 | 15 | 271.07 | 395.93 | 68.46 |
| #2 | 10 | 180.71 | 92.930 | 194.46 |

### ROOF DESCRIPTION

| ROOF TYPE | | | COMPOSITON SHINGLE ROOF | |
|-----------|-----------|---------|--------|---------|
| ROOF | ROOF TILT | AZIMUTH | RAFTER SIZE | RAFTER SPACING |
| #1 | 9° | 116° | 2"X4" | 24" O.C. |
| #2 | 9° | 296° | 2"X4" | 24" O.C. |

ROOF #2
TILT - 9°
AZIM. - 296°

BACK OF HOUSE

FRONT OF HOUSE

MELROSE ST

(50) PV ATTACHMENT @ 48" O.C.

(N) IRONRIDGE XR100 RACKING SYSTEM (TYP.)

(N) JUNCTION BOX (TYP.)

(E) UTILITY METER
(E) MAIN SERVICE PANEL
(N) MA SMART METER
(N) PV INVERTER

ROOF #1
TILT - 9°
AZIM. - 116°

### BREITER PLANET PROPERTIES

| REVISIONS | | |
|-----------|------|-----|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME

ROOF PLAN & MODULES

SHEET SIZE

ANSI B
11" X 17"

SHEET NUMBER

PV-2

### LEGEND

JB - JUNCTION BOX
UM - UTILITY METER
MSP - MAIN SERVICE PANEL
○ ▢ - VENT, ATTIC FAN (ROOF OBSTRUCTION)
● - ROOF ATTACHMENT
- - - - RAFTERS
- - - - CONDUIT

1 ROOF PLAN & MODULES
PV-2

0 2 8 16 Ft.



STRING #2

STRING #1

MELROSE ST

JB

JB

JB

UM MSP SM INV

**1** STRING LAYOUT

PV-2A

0 2 8 16 Ft.

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY
ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
STRING
LAYOUT

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-2A



**1** ATTACHMENT DETAIL

PV-3   SCALE: NTS

**2** ATTACHMENT DETAIL (ENLARGED SECTION VIEW)

PV-3   SCALE: NTS

(E) COMPOSITE SHINGLE ROOF

(N) SOLAR MODULE

SEE (2/PV-3) FOR ENLARGED VIEW

(N) IRONRIDGE XR 100 RAIL

(E) 2" X 4" RAFTERS @ 24" O.C.

IRONRIDGE UFO GROUNDING CLAMP

(N) IRONRIDGE XR100 RAIL

IRONRIDGE FLASH FOOT2

(E) ROOF SHEATHING

(E) 2" X 4" RAFTERS @ 24" O.C.

5/16"x3" SS LAG BOLT WITH MIN 2½" THREAD EMBEDMENT, SEALED PENETRATION

BREITER PLANET PROPERTIES

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
|  |  |  |
|  |  |  |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST. MELROSE, MA 02176 APN NO. # MELRM:A12P:0000098

SHEET NAME

ATTACHMENT DETAILS

SHEET SIZE

ANSI B 11" X 17"

SHEET NUMBER

PV-3

(25) HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
(1) STRING OF 13 MODULES CONNECTED IN SERIES
(1) STRING OF 12 MODULES CONNECTED IN SERIES

NOTE:
- EXTERIOR CONDUIT MUST BE PAINTED TO MATCH
  COLOR OF THE SURFACE ON WHICH THEY ARE MOUNTED.

Conduit Conductor Schedule (ALL CONDUCTORS MUST BE COPPER)

| Tag # | Description | Wire Gauge | # of Conductors/Color | Conduit Type | Conduit Size |
|---|---|---|---|---|---|
| 1 | PV WIRE | 10 AWG | 4 (L1, L2, G) | N/A-Free Air | N/A-Free Air |
| 1 | Bare Copper Ground (EGC/GEC) | 6 AWG | 1 BARE | N/A-Free Air | N/A-Free Air |
| 2 | THWN-2 | 10 AWG | 4 (1L1, 1L2, 1N) B/R/W | EMT | 3/4" |
| 2 | THWN-2 - Ground | 8 AWG | 1 (GRN) | EMT | 3/4" |
| 3 | THWN-2 | 8 AWG | 3 (1L1, 1L2, 1N) B/R/W | EMT | 3/4" |
| 3 | THWN-2 - Ground | 8 AWG | 1 (GRN) | EMT | 3/4" |



BI-DIRECTIONAL UTILITY METER
1-PHASE, 3-W, 120V/240V

TO UTILITY GRID

(E)MAIN SERVICE PANEL,
200A, RATED, 240V

(E)200A
2P

TO LOADS

40A/2P



(N) HANWHA Q-CELLS-Q.PEAK
DUO LG5.2 400 (400W)
MODULES

OPTIMIZER
(N) (25) P400 SOLAREDGE
POWER OPTIMIZER

JUNCTION BOX
600 V, NEMA 3
UL LISTED

SOLAREDGE TECHNOLOGIES
SE7600H-US(240V) INVERTER

(N)100A MA SMART
METER 120/240V

LINE/
TOP
SIDE

LOAD/
BOTTOM SIDE

MA SMART METER
120/240V

#6 AWG GEC

GEC

INTERCONNECTION
120% RULE - NEC 705.12(D)(2)

| UTILTIY FEED + SOLAR BACKFEED |
|---|
| 200 + 40 = 240A |
| ALLOWABLE BACK FEED |
| 200A x 120% = 240A |

BREITER
PLANET
PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY
ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
ELECTRICAL LINE
DIAGRAM

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-4

1   ELECTRICAL LINE DIAGRAM
PV-4                    SCALE: NTS

| SOLAR MODULE SPECIFICATIONS | |
|---|---|
| MANUFACTURER | HANWHA Q-CELLS |
| MODEL # | Q.PEAK DUO LG5.2 |
| PMAX | 400W |
| VMP | 41.04V |
| IMP | 9.75A |
| VOC | 49.0V |
| ISC | 10.24A |
| MODULE DIMENSION | 79.33"L x 39.37"W x 1.38"D (In Inch) |

| INVERTER  SPECIFICATIONS | |
|---|---|
| MANUFACTURER / MODEL # | SOLAREDGE / SE7600H-US(240V) |
| NOMINAL OUTPUT VOLTAGE | 480V |
| NOMINAL OUTPUT CURRENT | 32 A |

| AMBIENT TEMPERATURE SPECS | |
|---|---|
| RECORD LOW TEMP | -17° |
| AMBIENT TEMP (HIGH TEMP 2%) | 32° |
| CONDUIT HEIGHT | 0.5" |
| ROOF TOP TEMP | 50° |
| CONDUCTOR TEMPERATURE RATE ON ROOF | 90° |
| CONDUCTOR TEMPERATURE RATE OFF ROOF | 75° |
| MODULE TEMPERATURE COEFFICIENT OF Voc | -0.28%/°C |

| PERCENT OF VALUES | NUMBER OF CURRENT CARRYING CONDUCTORS IN EMT |
|---|---|
| .80 | 4-6 |
| .70 | 7-9 |
| .50 | 10-20 |

## DC CONDUCTOR AMPACITY CALCULATIONS:
## FROM ARRAY TO JUNCTION BOX:

| EXPECTED WIRE TEMP (In Celsius) | 32° |
|---|---|
| TEMP. CORRECTION PER NEC TABLE 310.15(B)(2)(a) | 0.96 |
| NO. OF CURRENT CARRYING CONDUCTORS | 2 |
| CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) | 1 |
| CIRCUIT CONDUCTOR SIZE | 10 AWG |
| CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 40A |

| REQUIRED CIRCUIT CONDUCTOR AMPACITY PER NEC 690.8(A&B) | 18.75A |
|---|---|
| 1.25 X OPTIMIZER ISC | |
| DERATED AMPACITY OF CIRCUIT CONDUCTOR | |
| TEMP. CORRECTION PER NEC TABLE 310.15(B)(2)(a) X CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) X CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 38.4A |

Result should be greater than (18.75A) otherwise less the entry for circuit conductor size and ampacity

## DC CONDUCTOR AMPACITY CALCULATIONS:
## FROM JUNCTION BOX TO INVERTER:

| AMBIENT TEMPERATURE ADJUSTMENT FOR EXPOSED CONDUIT PER NEC 310.15(B)(3)(c) | 32° |
|---|---|
| EXPECTED WIRE TEMP (In Celsius) | 32°+22° = 54° |
| TEMP. CORRECTION PER NEC TABLE 310.15(B)(2)(a) | 0.76 |
| NO. OF CURRENT CARRYING CONDUCTORS | 4 |
| CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) | 0.8 |
| CIRCUIT CONDUCTOR SIZE | 10 AWG |
| CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 35A |

| REQUIRED CIRCUIT CONDUCTOR AMPACITY PER NEC 690.8(A&B) | 18.75A |
|---|---|
| 1.25 X OPTIMIZER ISC | |
| DERATED AMPACITY OF CIRCUIT CONDUCTOR | |
| TEMP. CORRECTION PER NEC TABLE 310.15(B)(2)(a) X CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) X CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 21.28A |

Result should be greater than (18.75A) otherwise less the entry for circuit conductor size and ampacity

## AC CONDUCTOR AMPACITY CALCULATIONS:
## FROM AC COMBINER TO MSP:

| No. OF INVERTER | 1 |
|---|---|
| EXPECTED WIRE TEMP (In Celsius) | 32° |
| TEMP. CORRECTION PER TABLE 310.15(B)(2)(a) | 0.94 |
| NO. OF CURRENT CARRYING CONDUCTORS | 3 |
| CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) | 1 |
| CIRCUIT CONDUCTOR SIZE | 8 AWG |
| CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 50A |

| REQUIRED CIRCUIT CONDUCTOR AMPACITY PER NEC 690.8(A&B) | 40.0A |
|---|---|
| 1.25 X MAX INVERTER OUTPUT CURRENT | |
| DERATED AMPACITY OF CIRCUIT CONDUCTOR | |
| TEMP. CORRECTION PER TABLE 310.15(B)(2)(a) X CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) X CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 47.0A |

Result should be greater than (40.0A) otherwise less the entry for circuit conductor size and ampacity



BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
### WIRING CALCULATIONS

SHEET SIZE
### ANSI B
### 11" X 17"

SHEET NUMBER
### PV-5

## ELECTRICAL NOTES
1.) ALL EQUIPMENT TO BE LISTED BY UL OR OTHER NRTL, AND LABELED FOR ITS APPLICATION.
2.) ALL CONDUCTORS SHALL BE COPPER, RATED FOR 600 V AND 90 DEGREE C WET ENVIRONMENT.
3.) WIRING, CONDUIT, AND RACEWAYS MOUNTED ON ROOFTOPS SHALL BE ROUTED DIRECTLY TO, AND LOCATED AS CLOSE AS POSSIBLE TO THE NEAREST RIDGE, HIP, OR VALLEY.
4.) WORKING CLEARANCES AROUND ALL NEW AND EXISTING ELECTRICAL EQUIPMENT SHALL COMPLY WITH NEC 110.26.
5.) DRAWINGS INDICATE THE GENERAL ARRANGEMENT OF SYSTEMS. CONTRACTOR SHALL FURNISH ALL NECESSARY OUTLETS, SUPPORTS, FITTINGS AND ACESSORIES TO FULFILL APPLICABLE CODES AND STANDARDS.
6.) WHERE SIZES OF JUNCTION BOXES, RACEWAYS, AND CONDUITS ARE NOT SPECIFIED, THE CONTRACTOR SHALL SIZE THEM ACCORDINGLY.
7.) ALL WIRE TERMINATIONS SHALL BE APPROPRIATELY LABELED AND READILY VISIBLE.
8.) MODULE GROUNDING CLIPS TO BE INSTALLED BETWEEN MODULE FRAME AND MODULE SUPPORT RAIL, PER THE GROUNDING CLIP MANUFACTURER'S INSTRUCTION.
9.) MODULE SUPPORT RAIL TO BE BONDED TO CONTINUOUS COPPER G.E.C. VIA WEEB LUG OR ILSCO GBL-4DBT LAY-IN LUG.
10.) THE POLARITY OF THE GROUNDED CONDUCTORS IS NEGATIVE

## ⚠ WARNING

### ELECTRIC SHOCK HAZARD

**DO NOT TOUCH TERMINALS**
**TERMINALS ON BOTH LINE AND**
**LOAD SIDES MAY BE ENERGIZED**
**IN THE OPEN POSITION**

LABEL LOCATION:
POINT OF INTERCONNECTION
PER CODE: NEC 690.17(E), CB ⚠1

### WARNING - Electric Shock Hazard

**No user serviceable parts inside**
**Contact authorized service provider for assistance**

LABEL LOCATION:
JUNCTION BOXES (ROOF) ⚠2
(PER CODE: NEC690.13.G.3 & NEC 690.13.G.4)

### WARNING: PHOTOVOLTAIC POWER SOURCE

LABEL LOCATION:
CONDUIT, COMBINER BOX ⚠3
(PER CODE: NEC690.31(G)(3)(4) & NEC 690.13(G)(4)

### CAUTION: SOLAR ELECTRIC SYSTEM CONNECTED

LABEL LOCATION:
WEATHER RESISTANT MATERIAL, DURABLE ADHESIVE, UL969 AS STANDARD TO WEATHER
RATING (UL LISTING OF MARKINGS NOT REQUIRED), MIN ⅜" LETTER HEIGHT ARIAL OR
SIMILAR FONT NON-BOLD, PLACED WITHIN THE MAIN SERVICE DISCONNECT, PLACED ON
THE OUTSIDE OF THE COVER WHEN DISCONNECT IS OPERABLE WITH SERVICE PANEL
CLOSED. (PER CODE: NEC690.15, 690.13(B)) ⚠4

### SOLAR DISCONNECT

LABEL LOCATION:
POINT OF INTERCONNECTION ⚠5
(PER CODE: NEC690.13(B))

### ⚠ WARNING DUAL POWER SOURCE
**SECOND SOURCE IS PHOTOVOLTAIC SYSTEM**

LABEL LOCATION:
POINT OF INTERCONNECTION ⚠6
(PER CODE: NEC 705.12(D)(4))

### PHOTOVOLTAIC SYSTEM AC DISCONNECT

RATED AC OPERATING CURRENT _40_ AMPS
AC NOMINAL OPERATING VOLTAGE _240_ VOLTS

LABEL LOCATION:
POINT OF INTERCONNECTION ⚠7
(PER CODE: NEC690.54)

### WARNING
INVERTER OUTPUT CONNECTION DO NOT RELOCATE THIS OVERCURRENT DEVICE

LABEL LOCATION:
POINT OF INTERCONNECTION ⚠8
(PER CODE: NEC 705.12(D)(7))
[Not required if panelboard is rated not less than sum of ampere ratings
of all overcurrent devices supplying it]

### PHOTOVOLTAIC POWER SOURCE BREAKERS ARE BACKFEEDING 240 VOLTS
| 40.0 | AMPS |

LABEL LOCATION:
BACKFED BREAKER ⚠9
[Inside or front of panel]

### MA SMART METER ⚠10

### ⚠11 SOLAR PV SYSTEM EQUIPPED WITH RAPID SHUTDOWN

TURN BACKFEED
BREAKER
TO THE
"OFF" POSITION TO
SHUT DOWN PV SYSTEM
AND REDUCE
SHOCK HAZARD
IN THE ARRAY



SOLAR ELECTRIC PV PANELS

---

POWER TO THIS BUILDING IS ALSO SUPPLIED FROM THE
FOLLOWING SOURCES WITH DISCONNECTS LOCATED AS SHOWN

AT: ⊠ MAIN SERVICE/
UTILITY METER

SOLAR ARRAY

(E) UTILITY METER
(E) MAIN SERVICE PANEL
(N) MA SMART METER
(N) PV INVERTER

MARKING CONTENT AND FORMAT
- RED BACKGROUND
- WHITE LETTERING
- MINIMUM 3/8" LETTER HEIGHT
- ALL CAPITAL LETTERS
- ARIAL OR SIMILAR FONT, NON-BOLD
- REFLECTIVE WEATHER RESISTANT
  MATERIAL SUITABLE FOR THE
  ENVIRONMENT (DURABLE ADHESIVE
  MATERIALS MUST MEET THIS
  REQUIREMENT)
- TO BE ATTACHED USING POP-RIVETS

ADHESIVE FASTENED SIGNS:
- THE LABEL SHALL BE SUITABLE FOR THE ENVIRONMENT
  WHERE IT IS INSTALLED.
- WHERE REQUIRED ELSEWHERE IN THIS CODE, ALL FIELD
  APPLIED LABELS, WARNINGS, AND MARKINGS SHOULD
  COMPLY WITH ANSI Z535.4 [NEC 110.21(B) FIELD MARKING].
- ADHESIVE FASTENED SIGNS MAY BE ACCEPTABLE IF
  PROPERLY ADHERED. VINYL SIGNS SHALL BE WEATHER
  RESISTANT [IFC 605.11.1.3]

---

### BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

**PROJECT NAME & ADDRESS**

MARK DANKO & SANDY
ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
**PLACARDS**

SHEET SIZE
**ANSI B**
**11" X 17"**

SHEET NUMBER
**PV-6**



## BREITER PLANET PROPERTIES

### REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

---



## Q.PEAK DUO L-G5.2
## 380-400

### AWARD-WINNING HIGH PERFORMANCE



**Photon**
Q.PRO-G2 235
Best polycrystalline
solar module 2014
**Q CELLS**
174 modules tested

CYCLONE TESTING STATION
JAMES COOK UNIVERSITY AUSTRALIA

YIELD SECURITY

**Q CELLS**
- ANTI PID TECHNOLOGY (APT)
- HOT-SPOT PROTECT (HSP)
- TRACEABLE QUALITY (TRA.Q™)
- ANTI LID TECHNOLOGY (ALT)

**LOW ELECTRICITY GENERATION COSTS**
Higher yield per surface area, lower BOS costs, higher power classes, and an efficiency rate of up to 20.1%.

**INNOVATIVE ALL-WEATHER TECHNOLOGY**
Optimal yields, whatever the weather with excellent low-light and temperature behaviour.

**ENDURING HIGH PERFORMANCE**
Long-term yield security with Anti LID Technology, Anti PID Technology[1], Hot-Spot Protect and Traceable Quality Tra.Q™.

**EXTREME WEATHER RATING**
High-tech aluminum alloy frame, tested to the extreme in Australia for Australian Conditions at James Cook University Cyclone Testing Station.

**A RELIABLE INVESTMENT**
Inclusive 12-year product warranty and 25-year linear performance warranty[2].

**STATE OF THE ART MODULE TECHNOLOGY**
Q.ANTUM DUO combines cutting edge cell separation and innovative wiring with Q.ANTUM Technology.

[1] APT test conditions according to IEC/TS 62804-1:2015, method B (−1500V, 168h)
[2] See data sheet on rear for further information.

**THE IDEAL SOLUTION FOR:**
 Rooftop arrays on commercial / industrial buildings
 Ground-mounted solar power plants

Engineered in Germany

**Q CELLS**

---

### MECHANICAL SPECIFICATION

| Format | 2015mm × 1000mm × 35mm (including frame) |
|---|---|
| Weight | 23.5kg |
| Front Cover | 3.2mm thermally pre-stressed glass with anti-reflection technology |
| Back Cover | Composite film |
| Frame | Anodised aluminium |
| Cell | 6 × 24 monocrystalline Q.ANTUM solar half cells |
| Junction box | 70–85mm × 50–70mm × 13–21mm Protection class IP67, with bypass diodes |
| Cable | 4mm² Solar cable; (+) ≥1350mm, (−) ≥1350mm |
| Connector | Stäubli MC4-Evo2; IP67 |

### ELECTRICAL CHARACTERISTICS

| POWER CLASS | | | | 380 | 385 | 390 | 395 | 400 |
|---|---|---|---|---|---|---|---|---|
| **MINIMUM PERFORMANCE AT STANDARD TEST CONDITIONS, STC[1] (POWER TOLERANCE +5W / −0W)** | | | | | | | | |
| Power at MPP[1] | $P_{MPP}$ | [W] | | 380 | 385 | 390 | 395 | 400 |
| Short Circuit Current[1] | $I_{SC}$ | [A] | | 10.05 | 10.10 | 10.14 | 10.19 | 10.24 |
| Open Circuit Voltage[1] | $V_{OC}$ | [V] | | 47.95 | 48.21 | 48.48 | 48.74 | 49.00 |
| Current at MPP | $I_{MPP}$ | [A] | | 9.57 | 9.61 | 9.66 | 9.70 | 9.75 |
| Voltage at MPP | $V_{MPP}$ | [V] | | 39.71 | 40.05 | 40.38 | 40.71 | 41.04 |
| Efficiency[1] | η | [%] | | ≥18.9 | ≥19.1 | ≥19.4 | ≥19.6 | ≥19.9 |
| **MINIMUM PERFORMANCE AT NORMAL OPERATING CONDITIONS, NMOT[2]** | | | | | | | | |
| Power at MPP | $P_{MPP}$ | [W] | | 284.4 | 288.2 | 291.9 | 295.6 | 299.4 |
| Short Circuit Current | $I_{SC}$ | [A] | | 8.10 | 8.14 | 8.17 | 8.21 | 8.25 |
| Open Circuit Voltage | $V_{OC}$ | [V] | | 45.21 | 45.46 | 45.71 | 45.96 | 46.21 |
| Current at MPP | $I_{MPP}$ | [A] | | 7.53 | 7.57 | 7.60 | 7.64 | 7.67 |
| Voltage at MPP | $V_{MPP}$ | [V] | | 37.77 | 38.08 | 38.40 | 38.71 | 39.02 |

[1]Measurement tolerances $P_{MPP}$ ±3%; $I_{SC}$; $V_{OC}$ ±5% at STC: 1000W/m², 25±2°C, AM 1.5G according to IEC 60904-3 · [2]800W/m², NMOT, spectrum AM 1.5G

### Q CELLS PERFORMANCE WARRANTY



At least 98% of nominal power during first year. Thereafter max. 0.54% degradation per year. At least 93.1% of nominal power up to 10 years. At least 85% of nominal power up to 25 years.

All data within measurement tolerances. Full warranties in accordance with the warranty terms of the Q CELLS sales organisation of your respective country.

### PERFORMANCE AT LOW IRRADIANCE



Typical module performance under low irradiance conditions in comparison to STC conditions (25°C, 1000W/m²).

### TEMPERATURE COEFFICIENTS

| Temperature Coefficient of $I_{SC}$ | α | [%/K] | +0.04 | Temperature Coefficient of $V_{OC}$ | β | [%/K] | −0.27 |
|---|---|---|---|---|---|---|---|
| Temperature Coefficient of $P_{MPP}$ | γ | [%/K] | −0.36 | Normal Module Operating Temperature | NMOT | [°C] | 43±3 |

### PROPERTIES FOR SYSTEM DESIGN

| Maximum System Voltage | $V_{SYS}$ | [V] | 1500 (IEC) / 1500 (UL) | Safety Class | | II |
|---|---|---|---|---|---|---|
| Maximum Reverse Current | $I_R$ | [A] | 20 | Fire Rating | | C / TYPE 1 |
| Max. Design Load, Push / Pull | | [Pa] | 3600 / 1600 | Permitted Module Temperature on Continuous Duty | | −40°C - +85°C |
| Max. Test Load, Push / Pull | | [Pa] | 5400 / 2400 | | | |

### QUALIFICATIONS AND CERTIFICATES

IEC 61215:2016; IEC 61730:2016, Application Class II;
This data sheet complies with DIN EN 50380.

 VDE  CE  c CSA us

### PACKAGING INFORMATION

| Number of Modules per Pallet | 29 |
|---|---|
| Number of Pallets per Trailer (24t) | 24 |
| Number of Pallets per 40' HC-Container (26t) | 22 |
| Pallet Dimensions (L × W × H) | 2080 × 1150 × 1190mm |
| Pallet Weight | 742kg |

**Note:** Installation instructions must be followed. See the installation and operating manual or contact our technical service department for further information on approved installation and use of this product.

**Made in Korea**

**Hanwha Q CELLS Australia Pty Ltd**
Suite 1, Level 1, 15 Blue Street, Sydney, NSW 2060, Australia | **TEL** +61 (0)2 9016 3033 | **FAX** +61 (0)2 9016 3032 | **EMAIL** q-cells-australia@q-cells.com | **WEB** www.q-cells.com/au

Specifications subject to technical changes © Q CELLS Q.PEAK DUO L-G5.2_380-400_2019-03_Rev02_AU

Engineered in Germany

**Q CELLS**

---

### PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

### SHEET NAME
EQUIPMENT SPECIFICATION

### SHEET SIZE
ANSI B 11" X 17"

### SHEET NUMBER
PV-7



BREITER PLANET PROPERTIES

## Single Phase Inverter
## with HD-Wave Technology
### for North America
SE3000H-US / SE3800H-US / SE5000H-US / SE6000H-US /
SE7600H-US / SE10000H-US / SE11400H-US



**INVERTERS**

12-25 YEAR WARRANTY


solaredge

### Optimized installation with HD-Wave technology

- Specifically designed to work with power optimizers
- Record-breaking efficiency
- Fixed voltage inverter for longer strings
- Integrated arc fault protection and rapid shutdown for NEC 2014 and 2017, per article 690.11 and 690.12
- UL1741 SA certified, for CPUC Rule 21 grid compliance
- Extremely small
- Built-in module-level monitoring
- Outdoor and indoor installation
- Optional: Revenue grade data, ANSI C12.20 Class 0.5 (0.5% accuracy)

solaredge.com

## / Single Phase Inverter
## with HD-Wave Technology for North America
SE3000H-US / SE3800H-US / SE5000H-US / SE6000H-US/
SE7600H-US / SE10000H-US / SE11400H-US

| | SE3000H-US | SE3800H-US | SE5000H-US | SE6000H-US | SE7600H-US | SE10000H-US | SE11400H-US | |
|---|---|---|---|---|---|---|---|---|
| **OUTPUT** | | | | | | | | |
| Rated AC Power Output | 3000 | 3800 @ 240V 3300 @ 208V | 5000 | 6000 @ 240V 5000 @ 208V | 7600 | 10000 | 11400 @ 240V 10000 @ 208V | VA |
| Maximum AC Power Output | 3000 | 3800 @ 240V 3300 @ 208V | 5000 | 6000 @ 240V 5000 @ 208V | 7600 | 10000 | 11400 @ 240V 10000 @ 208V | VA |
| AC Output Voltage Min.-Nom.-Max. (211 - 240 - 264) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | Vac |
| AC Output Voltage Min.-Nom.-Max. (183 - 208 - 229) | - | ✓ | - | ✓ | - | - | ✓ | Vac |
| AC Frequency (Nominal) | | | | 59.3 - 60 - 60.5[1] | | | | Hz |
| Maximum Continuous Output Current @240V | 12.5 | 16 | 21 | 25 | 32 | 42 | 47.5 | A |
| Maximum Continuous Output Current @208V | - | 16 | - | 24 | - | - | 48.5 | A |
| GFDI Threshold | | | | 1 | | | | A |
| Utility Monitoring, Islanding Protection, Country Configurable Thresholds | | | | Yes | | | | |
| **INPUT** | | | | | | | | |
| Maximum DC Power @240V | 4650 | 5900 | 7750 | 9300 | 11800 | 15500 | 17650 | W |
| Maximum DC Power @208V | - | 5100 | - | 7750 | - | - | 15500 | W |
| Transformer-less, Ungrounded | | | | Yes | | | | |
| Maximum Input Voltage | | | | 480 | | | | Vdc |
| Nominal DC Input Voltage | | | 380 | | | 400 | | Vdc |
| Maximum Input Current @240V[2] | 8.5 | 10.5 | 13.5 | 16.5 | 20 | 27 | 30.5 | Adc |
| Maximum Input Current @208V[2] | - | 9 | - | 13.5 | - | - | 27 | Adc |
| Max. Input Short Circuit Current | | | | 45 | | | | Adc |
| Reverse-Polarity Protection | | | | Yes | | | | |
| Ground-Fault Isolation Detection | | | | 600kΩ Sensitivity | | | | |
| Maximum Inverter Efficiency | 99 | | | 99.2 | | | | % |
| CEC Weighted Efficiency | | | 99 | | | | 99 @ 240V 98.5 @ 208V | % |
| Nighttime Power Consumption | | | | < 2.5 | | | | W |
| **ADDITIONAL FEATURES** | | | | | | | | |
| Supported Communication Interfaces | | | | RS485, Ethernet, ZigBee (optional), Cellular (optional) | | | | |
| Revenue Grade Data, ANSI C12.20 | | | | Optional[3] | | | | |
| Rapid Shutdown - NEC 2014 and 2017 690.12 | | | | Automatic Rapid Shutdown upon AC Grid Disconnect | | | | |
| **STANDARD COMPLIANCE** | | | | | | | | |
| Safety | | | | UL1741, UL1741 SA, UL1699B, CSA C22.2, Canadian AFCI according to T.I.L. M-07 | | | | |
| Grid Connection Standards | | | | IEEE1547, Rule 21, Rule 14 (HI) | | | | |
| Emissions | | | | FCC Part 15 Class B | | | | |
| **INSTALLATION SPECIFICATIONS** | | | | | | | | |
| AC Output Conduit Size / AWG Range | | | 1" Maximum / 14-6 AWG | | | 1" Maximum /14-4 AWG | | |
| DC Input Conduit Size / # of Strings / AWG Range | | | 1" Maximum / 1-2 strings / 14-6 AWG | | | 1" Maximum / 1-3 strings / 14-6 AWG | | |
| Dimensions with Safety Switch (HxWxD) | | | 17.7 x 14.6 x 6.8 / 450 x 370 x 174 | | | 21.3 x 14.6 x 7.3 / 540 x 370 x 185 | | in / mm |
| Weight with Safety Switch | 22 / 10 | | 25.1 / 11.4 | 26.2 / 11.9 | | 38.8 / 17.6 | | lb / kg |
| Noise | | | < 25 | | | <50 | | dBA |
| Cooling | | | | Natural Convection | | | | |
| Operating Temperature Range | | | -13 to +140 / -25 to +60[4] (-40°F / -40°C option)[5] | | | | | °F / °C |
| Protection Rating | | | | NEMA 4X (Inverter with Safety Switch) | | | | |

[1] For other regional settings please contact SolarEdge support
[2] A higher current source may be used; the inverter will limit its input current to the values stated
[3] Revenue grade inverter P/N: SExxxxH-US000NNC2
[4] For power de-rating information refer to: https://www.solaredge.com/sites/default/files/se-temperature-derating-note-na.pdf
[5] -40 version P/N: SExxxxH-US000NNU4

© SolarEdge Technologies, Inc. All rights reserved. SOLAREDGE, the SolarEdge logo, OPTIMIZED BY SOLAREDGE are trademarks or registered trademarks of SolarEdge Technologies, Inc. All other trademarks mentioned herein are trademarks of their respective owners. Date: 03/2019/V01/ENG NAM. Subject to change without notice.

RoHS

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

**PROJECT NAME & ADDRESS**

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

| SHEET NAME |
|---|
| EQUIPMENT SPECIFICATION |

| SHEET SIZE |
|---|
| ANSI B 11" X 17" |

| SHEET NUMBER |
|---|
| PV-8 |

# Power Optimizer

## For North America

### P320 / P340 / P370 / P400 / P401 / P405 / P485 / P505



**25 YEAR WARRANTY**

POWER OPTIMIZER

## PV power optimization at the module-level

- Specifically designed to work with SolarEdge inverters
- Up to 25% more energy
- Superior efficiency (99.5%)
- Mitigates all types of module mismatch losses, from manufacturing tolerance to partial shading
- Flexible system design for maximum space utilization

- Fast installation with a single bolt
- Next generation maintenance with module-level monitoring
- Meets NEC requirements for arc fault protection (AFCI) and Photovoltaic Rapid Shutdown System (PVRSS)
- Module-level voltage shutdown for installer and firefighter safety

solaredge.com



# Power Optimizer
## For North America
### P320 / P340 / P370 / P400 / P401 / P405 / P485 / P505

| Optimizer model (typical module compatibility) | P320 (for 60-cell modules) | P340 (for high-power 60-cell modules) | P370 (for higher-power 60 and 72-cell modules) | P400 (for 72 & 96-cell modules) | P401 (for high power 60 and 72 cell modules) | P405 (for high-voltage modules) | P485 (for high-voltage modules) | P505 (for higher current modules) | |
|---|---|---|---|---|---|---|---|---|---|
| **INPUT** | | | | | | | | | |
| Rated Input DC Power[1] | 320 | 340 | 370 | 400 | | 405 | 485 | 505 | W |
| Absolute Maximum Input Voltage (Voc at lowest temperature) | 48 | | 60 | 80 | 60 | 125[2] | | 83[2] | Vdc |
| MPPT Operating Range | 8 - 48 | | 8 - 60 | 8 - 80 | 8-60 | 12.5 - 105 | | 12.5 - 83 | Vdc |
| Maximum Short Circuit Current (Isc) | 11 | | | 10.1 | 11.75 | 11 | | 14 | Adc |
| Maximum Efficiency | 99.5 | | | | | | | | % |
| Weighted Efficiency | 98.8 | | | | | | | 98.6 | % |
| Overvoltage Category | II | | | | | | | | |
| **OUTPUT DURING OPERATION (POWER OPTIMIZER CONNECTED TO OPERATING SOLAREDGE INVERTER)** | | | | | | | | | |
| Maximum Output Current | 15 | | | | | | | | Adc |
| Maximum Output Voltage | 60 | | | | | 85 | | | Vdc |
| **OUTPUT DURING STANDBY (POWER OPTIMIZER DISCONNECTED FROM SOLAREDGE INVERTER OR SOLAREDGE INVERTER OFF)** | | | | | | | | | |
| Safety Output Voltage per Power Optimizer | 1 ± 0.1 | | | | | | | | Vdc |
| **STANDARD COMPLIANCE** | | | | | | | | | |
| EMC | FCC Part15 Class B, IEC61000-6-2, IEC61000-6-3 | | | | | | | | |
| Safety | IEC62109-1 (class II safety), UL1741 | | | | | | | | |
| Material | UL94 V-0 , UV Resistant | | | | | | | | |
| RoHS | Yes | | | | | | | | |
| **INSTALLATION SPECIFICATIONS** | | | | | | | | | |
| Maximum Allowed System Voltage | 1000 | | | | | | | | Vdc |
| Compatible inverters | All SolarEdge Single Phase and Three Phase inverters | | | | | | | | |
| Dimensions (W x L x H) | 129 x 153 x 27.5 / 5.1 x 6 x 1.1 | | 129 x 153 x 33.5 / 5.1 x 6 x 1.3 | 129 x 153 x 29.5 /5.1 x 6 x 1.16 | 129 x 159 x 49.5 / 5.1 x 6.3 x 1.9 | | 129 x 162 x 59 / 5.1 x 6.4 x 2.3 | | mm / in |
| Weight (including cables) | 630 / 1.4 | | 750 / 1.7 | 655 / 1.5 | 845 / 1.9 | | 1064 / 2.3 | | gr / lb |
| Input Connector | MC4[3] | | | | | Single or dual MC4[3][4] | | MC4[3] | |
| Input Wire Length | 0.16 / 0.52 | | | | | | | | m / ft |
| Output Wire Type / Connector | Double Insulated / MC4 | | | | | | | | |
| Output Wire Length | 0.9 / 2.95 | | | 1.2 / 3.9 | | | | | m / ft |
| Operating Temperature Range[5] | -40 - +85 / -40 - +185 | | | | | | | | °C / °F |
| Protection Rating | IP68 / NEMA6P | | | | | | | | |
| Relative Humidity | 0 - 100 | | | | | | | | % |

(1) Rated power of the module at STC will not exceed the optimizer "Rated Input DC Power". Modules with up to +5% power tolerance are allowed
(2) NEC 2017 requires max input voltage be not more than 80V
(3) For other connector types please contact SolarEdge
(4) For dual version for parallel connection of two modules use P485-4NMDMRM. In the case of an odd number of PV modules in one string, installing one P485 dual version power optimizer connected to one PV module. When connecting a single module seal the unused input connectors with the supplied pair of seals.
(5) For ambient temperature above +85°C / +185°F power de-rating is applied. Refer to Power Optimizers Temperature De-Rating Technical Note for more details.

| PV System Design Using a SolarEdge Inverter[6][7] | | Single Phase HD-Wave | Single phase | Three Phase for 208V grid | Three Phase for 277/480V grid | |
|---|---|---|---|---|---|---|
| Minimum String Length (Power Optimizers) | P320, P340, P370, P400, P401 | 8 | | 10 | 18 | |
| | P405, P485, P505 | 6 | | 8 | 14 | |
| Maximum String Length (Power Optimizers) | | 25 | | 25 | 50[8] | |
| Maximum Power per String | | 5700 (6000 with SE7600-US - SE11400-US) | 5250 | 6000[9] | 12750[10] | W |
| Parallel Strings of Different Lengths or Orientations | | Yes | | | | |

(6) For detailed string sizing information refer to: http://www.solaredge.com/sites/default/files/string_sizing_na.pdf
(7) It is not allowed to mix P405/P485/P505 with P320/P340/P370/P400/P401 in one string
(8) A string with more than 30 optimizers does not meet NEC rapid shutdown requirements; safety voltage will be above the 30V requirement
(9) For 208V grid: it is allowed to install up to 7,200W per string when the maximum power difference between each string is 1,000W
(10) For 277/480V grid: it is allowed to install up to 15,000W per string when the maximum power difference between each string is 2,000W

© SolarEdge Technologies Ltd. All rights reserved. SOLAREDGE, the SolarEdge logo, OPTIMIZED BY SOLAREDGE are trademarks or registered trademarks of SolarEdge Technologies, Inc. All other trademarks mentioned herein are trademarks of their respective owners. Date: 07/2020/V02/ENG NAM. Subject to change without notice.



**RoHS**

---

**BREITER PLANET PROPERTIES**

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-9



**Tech Brief**

# XR Rail Family

## Solar Is Not Always Sunny

Over their lifetime, solar panels experience countless extreme weather events. Not just the worst storms in years, but the worst storms in 40 years. High winds capable of ripping panels from a roof, and snowfalls weighing enough to buckle a panel frame.

XR Rails are the structural backbone preventing these results. They resist uplift, protect against buckling and safely and efficiently transfer loads into the building structure. Their superior spanning capability requires fewer roof attachments, reducing the number of roof penetrations and the amount of installation time.



### Force-Stabilizing Curve
Sloped roofs generate both vertical and lateral forces on mounting rails which can cause them to bend and twist. The curved shape of XR Rails is specially designed to increase strength in both directions while resisting the twisting. This unique feature ensures greater security during extreme weather and a longer system lifetime.

### Compatible with Flat & Pitched Roofs

 XR Rails are compatible with FlashFoot and other pitched roof attachments.

 IronRidge offers a range of tilt leg options for flat roof mounting applications.

### Corrosion-Resistant Materials

All XR Rails are made of marine-grade aluminum alloy, then protected with an anodized finish. Anodizing prevents surface and structural corrosion, while also providing a more attractive appearance.



**Tech Brief**

# XR Rail Family

The XR Rail Family offers the strength of a curved rail in three targeted sizes. Each size supports specific design loads, while minimizing material costs. Depending on your location, there is an XR Rail to match.

   

**XR10**

XR10 is a sleek, low-profile mounting rail, designed for regions with light or no snow. It achieves 6 foot spans, while remaining light and economical.

- 6' spanning capability
- Moderate load capability
- Clear anodized finish
- Internal splices available

**XR100**

XR100 is the ultimate residential mounting rail. It supports a range of wind and snow conditions, while also maximizing spans up to 8 feet.

- 8' spanning capability
- Heavy load capability
- Clear & black anodized finish
- internal splices available

**XR1000**

XR1000 is a heavyweight among solar mounting rails. It's built to handle extreme climates and spans 12 feet or more for commercial applications.

- 12' spanning capability
- Extreme load capability
- Clear anodized finish
- Internal splices available

## Rail Selection

The following table was prepared in compliance with applicable engineering codes and standards. Values are based on the following criteria: ASCE 7-10, Roof Zone 1, Exposure B, Roof Slope of 7 to 27 degrees and Mean Building Height of 30 ft. Visit IronRidge.com for detailed span tables and certifications.

| Load | | Rail Span | | | | | |
|---|---|---|---|---|---|---|---|
| Snow (PSF) | Wind (MPH) | 4' | 5' 4" | 6' | 8' | 10' | 12' |
| None | 100 | | | | | | |
| | 120 | | | | | | |
| | 140 | XR10 | | XR100 | | XR1000 | |
| | 160 | | | | | | |
| 10-20 | 100 | | | | | | |
| | 120 | | | | | | |
| | 140 | | | | | | |
| | 160 | | | | | | |
| 30 | 100 | | | | | | |
| | 160 | | | | | | |
| 40 | 100 | | | | | | |
| | 160 | | | | | | |
| 50-70 | 160 | | | | | | |
| 80-90 | 160 | | | | | | |

© 2014 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information. Version 1.11



### BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
**EQUIPMENT SPECIFICATION**

SHEET SIZE
**ANSI B
11" X 17"**

SHEET NUMBER
**PV-10**




**BREITER PLANET PROPERTIES**



**Tech Brief**

## FlashFoot2

### The Strongest Attachment in Solar

IronRidge FlashFoot2 raises the bar in solar roof protection. The unique water seal design is both elevated and encapsulated, delivering redundant layers of protection against water intrusion. In addition, the twist-on Cap perfectly aligns the rail attachment with the lag bolt to maximize mechanical strength.



**Three-Tier Water Seal**

FlashFoot2's seal architecture utilizes three layers of protection. An elevated platform diverts water away, while a stack of rugged components raises the seal an entire inch. The seal is then fully-encapsulated by the Cap. FlashFoot2 is the first solar attachment to pass the TAS-100 Wind-Driven Rain Test.

**Twist-On Cap**

FlashFoot2's unique Cap design encapsulates the lag bolt and locks into place with a simple twist. The Cap helps FlashFoot2 deliver superior structural strength, by aligning the rail and lag bolt in a concentric load path.



**Single Socket Size**

A custom-design lag bolt allows you to install FlashFoot2 with the same 7/16" socket size used on other Flush Mount System components.



**Water-Shedding Design**

An elevated platform diverts water away from the water seal.

---

## Installation Features



**A Alignment Markers**

Quickly align the flashing with chalk lines to find pilot holes.

**B Rounded Corners**

Makes it easier to handle and insert under the roof shingles.

**C Reinforcement Ribs**

Help to stiffen the flashing and prevent any bending or crinkling during installation.

### Benefits of Concentric Loading

Traditional solar attachments have a horizontal offset between the rail and lag bolt, which introduces leverage on the lag bolt and decreases uplift capacity.

FlashFoot2 is the only product to align the rail and lag bolt. This concentric loading design results in a stronger attachment for the system.



### Testing & Certification

**Structural Certification**

Designed and Certified for Compliance with the International Building Code & ASCE/SEI-7.

**Water Seal Ratings**

Water Sealing Tested to UL 441 Section 27 "Rain Test" and TAS 100-95 "Wind Driven Rain Test" by Intertek. Ratings applicable for composition shingle roofs having slopes between 2:12 and 12:12.

**UL 2703**

Conforms to UL 2703 Mechanical and Bonding Requirements. See Flush Mount Install Manual for full ratings.

---

**REVISIONS**

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

**PROJECT NAME & ADDRESS**

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST. MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

**SHEET NAME**

EQUIPMENT SPECIFICATION

**SHEET SIZE**

ANSI B
11" X 17"

**SHEET NUMBER**

PV-11



Tech Brief

# UFO Family of Components

## Simplified Grounding for Every Application

The UFO family of components eliminates the need for separate grounding hardware by bonding solar modules directly to IronRidge XR Rails. All system types that feature the UFO family—Flush Mount, Tilt Mount and Ground Mount—are fully listed to the UL 2703 standard.

UFO hardware forms secure electrical bonds with both the module and the rail, resulting in many parallel grounding paths throughout the system. This leads to safer and more reliable installations.



**Stopper Sleeve**
The Stopper Sleeve snaps onto the UFO, converting it into a bonded end clamp.

**Universal Fastening Object (UFO)**
The UFO securely bonds solar modules to XR Rails. It comes assembled and lubricated, and can fit a wide range of module heights.

**Bonded Splice**
Each Bonded Splice uses self-drilling screws to form a secure connection. No bonding strap needed.

**Grounding Lug**
A single Grounding Lug connects an entire row of PV modules to the grounding conductor.

**Bonded Attachments**
The bonding bolt attaches and bonds the L-foot to the rail. It is installed with the same socket as the rest of the system.

## UL Certification

The IronRidge Flush Mount, Tilt Mount, and Ground Mount Systems have been listed to UL 2703 by Intertek Group plc.

UL 2703 is the standard for evaluating solar mounting systems. It ensures these devices will maintain strong electrical and mechanical connections over an extended period of time in extreme outdoor environments.

Go to IronRidge.com/UFO

## System Diagram



| ○ UFO | ◖ Stopper Sleeve | ● Grounding Lug | ☐☐ Bonded Splice | ⏚ Ground Wire |
| --- | --- | --- | --- | --- |

⚲ Approved Enphase microinverters can provide equipment grounding of IronRidge systems, eliminating the need for grounding lugs and field installed equipment ground conductors (EGC). A minimum of two microinverters mounted to the same rail and connected to the same Engage cable is required. Refer to installation manuals for additional details.

| Cross-System Compatibility | | | |
| --- | --- | --- | --- |
| **Feature** | **Flush Mount** | **Tilt Mount** | **Ground Mount** |
| XR Rails | ✔ | ✔ | XR1000 Only |
| UFO/Stopper | ✔ | ✔ | ✔ |
| Bonded Splice | ✔ | ✔ | N/A |
| Grounding Lugs | 1 per Row | 1 per Row | 1 per Array |
| Microinverters & Power Optimizers | Enphase - M250-72, M250-60, M215-60, C250-72 Darfon - MIG240, MIG300, G320, G640 SolarEdge - P300, P320, P400, P405, P600, P700, P730 | | |
| Fire Rating | Class A | Class A | N/A |
| Modules | Tested or Evaluated with over 400 Framed Modules Refer to installation manuals for a detailed list. | | |

© 2016 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information. Version 1.10



**BREITER PLANET PROPERTIES**

| REVISIONS | | |
| --- | --- | --- |
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
**PV-12**



Tech Brief



# Integrated Grounding System

Tech Brief

## Simplified Grounding
## For Greater Safety & Lower Cost

Traditionally, solar modules are grounded by attaching lugs, bolts or clips to the module frame, then connecting these to a copper conductor that runs throughout the array. This process adds time and cost to the installation, and often results in improper grounding, creating significant long-term safety risks.

The IronRidge Integrated Grounding System solves these challenges by bonding modules directly to the mounting rails. This approach eliminates separate module grounding hardware, and it creates many parallel grounding paths throughout the array, providing greater safety for system owners.



**Grounding Mid Clamp**

Each Grounding Mid Clamp pierces through the anodized coatings of both the module frame and the mounting rail to form secure electrical bonds, which are repeated throughout the array.



**Grounding Strap**

Grounding Straps are used to bond rail-to-rail connections. They are only required on the rail with the grounding lug.

**Grounding Lug**

A single Grounding Lug connects an entire row of PV modules to the grounding conductor.

## Installation Overview

**1 Install Roof Attachments**

· Install appropriate roof flashing and/or standoff for roof type.

· Attach L-Feet to flashing or standoff.

**2 Prepare Rail Connections**

· Insert splice into first rail, then secure with Grounding Strap and self-drilling screw.

· Slide second rail over splice, then secure with opposite end of Grounding Strap and self-drilling screw.

**3 Mount & Ground Rails**

· Attach rails to L-Feet and level rails.

· Install one Grounding Lug per row of modules.

· Connect Grounding Lug to grounding conductor.

**4 Install Modules & Clamps**

· Install first module using End Clamps and Grounding Mid Clamps.

· Install additional modules using Grounding Mid Clamps.

· Finish row with a second pair of End Clamps.

## Testing & Certification

The IronRidge Integrated Grounding System has been tested and certified to UL 2703 by Intertek Group plc.

UL 2703 is a proposed UL standard for evaluating solar module mounting and clamping devices. It ensures these devices will maintain strong electrical and mechanical connections over an extended period of time in extreme outdoor environments.

The testing process closely mirrors that of UL 1703, the solar module testing standard, including temperature and humidity cycling, electrical and mechanical load testing, and manufacturing quality reviews.

### Module Frame Compatibility

| Dimension | Range |
|---|---|
| A | 31.0mm - 51.0mm |
| B | 5.08mm (minimum) |

Any module frames whose parameters are not listed in the provided table have not been tested for compatibility.

The Grounding Clamp has proven robust in grounding 60-cell and 72-cell solar module frames with box construction and a range of anodization thicknesses.

All solar modules listed to UL 1703 and with frame construction within the parameters stated above are compatible with the IronRidge Integrated Grounding System.

⊕ Go to ironridge.com/ig



© 2013 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information.

---



**BREITER PLANET PROPERTIES**





| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY
ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT
SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
**PV-13**



# IRONRIDGE

Tech Brief

## Class A Fire Rating

## Background

All roofing products are tested and classified for their ability to resist fire.

Recently, these fire resistance standards were expanded to include solar equipment as part of the roof system. Specifically, this requires the modules, mounting hardware and roof covering to be tested together as a system to ensure they achieve the same fire rating as the original roof covering.

These new requirements are being adopted throughout the country in 2016.

## IronRidge Certification

IronRidge was the first company to receive a Class A Fire Rating—the highest possible rating—from Intertek Group plc., a Nationally Recognized Testing Laboratory.

IronRidge Flush Mount and Tilt Mount Systems were tested on sloped and flat roofs in accordance with the new UL 1703 & UL 2703 test standards. The testing evaluated the system's ability to resist flame spread, burning material and structural damage to the roof.

Refer to the table below to determine the requirements for achieving a Class A Fire Rating on your next project.

### Fire Testing Process

**Test Setup**

**Solar Modules**
Solar modules are given a Type classification based on their materials and construction.

**Mounting System**
Mounting is tested as part of a system that includes type-tested modules and fire-rated roof covering.

**Roof Covering**
Roof covering products are given a Fire Class Rating of A, B or C based on their tested fire resistance.

**Burning Brand Test**

A burning wooden block is placed on module as a fan blows at 12 mph. Flame cannot be seen on underside of roof within 90 minutes.

**Spread of Flame Test**

Flame at southern edge of roof is aimed up the roof as a fan blows at 12 mph. The flame cannot spread 6 feet or more in 10 minutes.

| System | Roof Slope | Module | Fire Rating* |
|---|---|---|---|
| Flush Mount | Any Slope | Type 1, 2, & 3 | Class A |
| Tilt Mount | ≤ 6 Degrees | Type 1, 2, & 3 | Class A |

*Class A rated PV systems can be installed on Class A, B, and C roofs.

## Frequently Asked Questions

**What is a "module type"?**

The new UL1703 standard introduces the concept of a PV module type, based on 4 construction parameters and 2 fire performance parameters. The purpose of this classification is to certify mounting systems without needing to test it with every module.

**What roofing materials are covered?**

All fire rated roofing materials are covered within this certification including composition shingle, clay and cement tile, metal, and membrane roofs.

**What if I have a Class C roof, but the jurisdiction now requires Class A or B?**

Generally, older roofs will typically be "grandfathered in", and will not require re-roofing. However, if 50% or more of the roofing material is replaced for the solar installation the code requirement will be enforced.

**Where is the new fire rating requirement code listed?**

*2012 IBC: 1509.7.2 Fire classification. Rooftop mounted photovoltaic systems shall have the same fire classification as the roof assembly required by Section 1505.*

**Where is a Class A Fire Rating required?**

The general requirement for roofing systems in the IBC refers to a Class C fire rating. Class A or B is required for areas such as Wildland Urban Interface areas (WUI) and for very high fire severity areas. Many of these areas are found throughout the western United States. California has the most Class A and B roof fire rating requirements, due to wild fire concerns.

**Are standard mid clamps covered?**

Mid clamps and end clamps are considered part of the PV "system", and are covered in the certification.

**What attachments and flashings are deemed compatible with Class A?**

Attachments and their respective flashings are not constituents of the rating at this time. All code-compliant flashing methods are acceptable from a fire rating standpoint.

**What mounting height is acceptable?**

UL fire testing was performed with a gap of 5", which is considered worst case in the standard. Therefore, the rating is applicable to any module to roof gap.

**Am I required to install skirting to meet the fire code?**

No, IronRidge achieved a Class A fire rating without any additional racking components.

**What determines Fire Classification?**

Fire Classification refers to a fire-resistance rating system for roof covering materials based on their ability to withstand fire exposure.

*Class A - effective against severe fire exposure*
*Class B - effective against moderate fire exposure*
*Class C - effective against light fire exposure*

**What if the roof covering is not Class A rated?**

The IronRidge Class A rating will not diminish the fire rating of the roof, whether Class A, B, or C.

**What tilts is the tilt mount system fire rated for?**

The tilt mount system is rated for 1 degrees and up and any roof to module gap, or mounting height.

### More Resources



**Installation Manuals**
Visit our website for manuals that include UL 2703 Listing and Fire Rating Classification.
Go to IronRidge.com



**Engineering Certification Letters**
We offer complete engineering resources and pre-stamped certification letters.
Go to IronRidge.com

© 2016 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information. Version 1.20

## BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

**PROJECT NAME & ADDRESS**

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

**SHEET NAME**
EQUIPMENT SPECIFICATION

**SHEET SIZE**
ANSI B
11" X 17"

**SHEET NUMBER**
PV-14



28357 Industrial Blvd.
Hayward, CA 94545
1-800-227-9523
IronRidge.com

**Attn:** Corey Geiger, COO, IronRidge Inc.
**Date:** December 31st, 2019

**Re:** Structural Certification and Span Tables for the IronRidge Flush Mount System

This letter addresses the structural performance and code compliance of IronRidge's Flush Mount System.  The contents of the letter shall be read in its entirety before applying to any project design. The Flush Mount System is a proprietary rooftop mounting system used to support photovoltaic (PV) modules installed in portrait or landscape orientation and set parallel to the underlying roof surface.  PV modules are supported by extruded aluminum XR Rails and secured to the rails with IronRidge mounting clamps. The XR Rails are side mounted to a selected roof attachment with 3/8" stainless steel bonding hardware and then attached directly to the roof structure or to a stanchion that is fastened to the underlying roof structure.  Assembly details of a typical Flush Mount installation and its core components are shown in Exhibit EX-0015.

The IronRidge Flush Mount System is designed and certified to the structural requirements of the reference standards listed below, for the load conditions and configurations tabulated in the attached span tables.

- ASCE/SEI 7-16 Minimum Design Loads for Buildings and Other Structures (ASCE 7-16)
- 2018 International Building Code (IBC-2018)
- 2019 California Building Code (CBC-2019)
- 2015 Aluminum Design Manual (ADM-2015)

The tables included in this letter provide the maximum allowable spans of XR Rails in the Flush Mount System for the respective loads and configurations listed, covering wind exposure categories B, C, & D, roof zones provided in ASCE 7-16 for gable & hip roof profiles, and roof slopes of 8° to 45°. The tabulated spans are applicable when the following conditions are met:

1. *Span* is the distance between two adjacent roof attachment points (measured at the center of the attachment fastener).

2. The underlying roof pitch, measured between the roof surface and horizontal plane, is 45° or less.

3. The *mean roof height*, defined as the average of the roof eave height and the roof ridge height measured from grade, does not exceed 30 feet.

4. A clearance from the underside of the array to the roof surface of 2" minimum shall be provided and the height of the array, the distance from the module top surface to the roof surface (defined as $h_2$), shall not exceed 10".

5. Module length and area shall not exceed the maximum values listed on the respective span tables.

6. All Flush Mount components shall be installed in a professional workmanlike manner per IronRidge's *Flush Mount Installation Manual* and other applicable standards for the general roof construction practice.

---



28357 Industrial Blvd.
Hayward, CA 94545
1-800-227-9523
IronRidge.com

The span tables provided in this letter are certified based on the structural performance of IronRidge XR Rails only with no consideration of the structural adequacy of the chosen roof attachments, PV modules, or the underlying roof supporting members. It is the responsibility of the installer or system designer to verify the structural capacity and adequacy of the aforementioned system components in regards to the applied or resultant loads of any chosen array configuration.

Sincerely,



Gang Xuan, SE

Senior Structural Engineer

**Date Sealed:**
**2019.12.31**
**15:21:27**
**-08'00'**

.\References\IronRidge_XR100Flush_Certification_UFO_CA.pdf

---

© 2019 IronRidge, Inc.      CA Flush Mount System Certification Letter - 1

© 2019 IronRidge, Inc.      CA Flush Mount System Certification Letter - 4

**BREITER PLANET PROPERTIES**

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST. MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
**EQUIPMENT SPECIFICATION**

SHEET SIZE
**ANSI B**
**11" X 17"**

SHEET NUMBER
**PV-15**



**Rail: XR100**

### Hip Roof Flush Mount System Span Table (inches) - Portrait or Landscape Installation
Max Module Length: 67.5" (60 cell typ.), Max Module SF: 21 SF
Exposure B

| Wind Speed (mph) | Roof Slope (deg.) | Ground Snow: 0 psf | | | 10 psf | | | 20 psf | | | 30 psf | | | 40 psf | | | 50 psf | | | 60 psf | | | 70 psf | | | 80 psf | | | 90 psf | | | 100 psf | | | 110 psf | | | 120 psf | | | Exposed Mod. | | | Edge Mod. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 | G1 | G2 | G3 |
| 90 mph | 8-20 | 130 | 130 | 130 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 130 | 130 | 128 | 116 | 103 | 99 |
| 90 mph | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 131 | 131 | 131 | 112 | 112 |
| 90 mph | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 128 | 124 | 124 | 104 |
| 95 mph | 8-20 | 130 | 130 | 131 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 130 | 126 | 122 | 108 | 97 | 93 |
| 95 mph | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 131 | 131 | 129 | 106 | 106 |
| 95 mph | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 128 | 117 | 117 | 99 |
| 100 mph | 8-20 | 130 | 130 | 130 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 130 | 121 | 116 | 102 | 92 | 88 |
| 100 mph | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 131 | 131 | 123 | 100 | 100 |
| 100 mph | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 121 | 112 | 111 | 96 |
| 105 mph | 8-20 | 130 | 130 | 130 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 128 | 114 | 108 | 96 | 87 | 83 |
| 105 mph | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 126 | 126 | 117 | 96 | 96 |
| 105 mph | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 114 | 107 | 105 | 89 |
| 110 mph | 8-20 | 130 | 130 | 128 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 122 | 107 | 101 | 91 | 83 | 79 |
| 110 mph | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 118 | 118 | 111 | 91 | 91 |
| 110 mph | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 109 | 101 | 100 | 84 |
| 115 mph | 8-20 | 130 | 128 | 123 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 116 | 101 | 96 | 87 | 79 | 75 |
| 115 mph | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 112 | 112 | 106 | 87 | 87 |
| 115 mph | 28-45 | 128 | 128 | 127 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 125 | 125 | 103 | 97 | 96 | 80 |
| 120 mph | 8-20 | 130 | 123 | 116 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 109 | 96 | 91 | 83 | 75 | 72 |
| 120 mph | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 107 | 107 | 101 | 83 | 83 |
| 120 mph | 28-45 | 128 | 128 | 122 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 120 | 118 | 97 | 93 | 91 | 77 |
| 130 mph | 8-20 | 126 | 111 | 105 | 110 | 110 | 105 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 97 | 87 | 82 | 77 | 69 | 66 |
| 130 mph | 21-27 | 131 | 121 | 121 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 122 | 96 | 96 | 93 | 76 | 76 |
| 130 mph | 28-45 | 128 | 128 | 111 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 109 | 108 | 88 | 86 | 83 | 72 |
| 140 mph | 8-20 | 114 | 101 | 96 | 110 | 101 | 96 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 88 | 79 | 75 | 72 | 64 | 61 |
| 140 mph | 21-27 | 131 | 111 | 111 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 112 | 88 | 88 | 86 | 72 | 72 |
| 140 mph | 28-45 | 124 | 124 | 102 | 103 | 103 | 102 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 100 | 99 | 80 | 79 | 75 | 64 |
| 150 mph | 8-20 | 104 | 92 | 88 | 104 | 92 | 88 | 92 | 91 | 88 | 91 | 91 | 88 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 81 | 73 | 69 | 66 | 59 | 53 |
| 150 mph | 21-27 | 128 | 102 | 102 | 105 | 102 | 102 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 101 | 80 | 80 | 79 | 65 | 65 |
| 150 mph | 28-45 | 115 | 114 | 93 | 103 | 103 | 93 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 92 | 90 | 74 | 72 | 72 | 59 |
| 160 mph | 8-20 | 96 | 85 | 80 | 96 | 85 | 80 | 92 | 85 | 80 | 91 | 85 | 80 | 82 | 82 | 80 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 75 | 66 | 64 | 64 | 50 | 45 |
| 160 mph | 21-27 | 119 | 96 | 96 | 105 | 96 | 96 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 96 | 74 | 74 | 74 | 61 | 61 |
| 160 mph | 28-45 | 107 | 105 | 87 | 103 | 103 | 87 | 88 | 88 | 87 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 86 | 82 | 67 | 66 | 65 | 49 |
| 170 mph | 8-20 | 88 | 79 | 75 | 88 | 79 | 75 | 88 | 79 | 75 | 88 | 79 | 75 | 82 | 79 | 75 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 72 | 64 | 58 | 59 | 44 | 40 |
| 170 mph | 21-27 | 111 | 88 | 88 | 105 | 88 | 88 | 89 | 88 | 88 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 87 | 69 | 69 | 69 | 54 | 54 |
| 170 mph | 28-45 | 100 | 97 | 81 | 100 | 97 | 81 | 88 | 88 | 81 | 87 | 87 | 81 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 75 | 64 | 64 | 65 | 60 | 40 |
| 175 mph | 8-20 | 85 | 76 | 72 | 85 | 76 | 72 | 85 | 76 | 72 | 85 | 76 | 72 | 82 | 76 | 72 | 74 | 74 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 68 | 60 | 53 | 55 | 41 | 38 |
| 175 mph | 21-27 | 107 | 84 | 84 | 105 | 84 | 84 | 89 | 84 | 84 | 87 | 84 | 84 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 84 | 66 | 66 | 67 | 50 | 50 |
| 175 mph | 28-45 | 97 | 93 | 78 | 97 | 93 | 78 | 88 | 88 | 78 | 87 | 87 | 78 | 80 | 80 | 78 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 77 | 73 | 60 | 64 | 58 | 36 |
| 180 mph | 8-20 | 83 | 74 | 72 | 83 | 74 | 72 | 83 | 74 | 72 | 83 | 74 | 72 | 82 | 74 | 72 | 74 | 74 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 66 | 56 | 48 | 52 | 39 | 36 |
| 180 mph | 21-27 | 103 | 82 | 82 | 103 | 82 | 82 | 89 | 82 | 82 | 87 | 82 | 82 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 80 | 64 | 64 | 65 | 48 | 48 |
| 180 mph | 28-45 | 93 | 91 | 75 | 93 | 91 | 75 | 88 | 88 | 75 | 87 | 87 | 75 | 80 | 80 | 75 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 75 | 72 | 57 | 61 | 56 | 33 |

Legend:
- = min 72" span
- = min 64" span
- = min 48" span
- = Shaded cells indicate conditions in which UFO Mid Clamp connection capacity is exceeded. See Note 9 on page 2 for details.

REV 12/12/2019

### Grouping of ASCE 7-16 Roof Zones (Hip)

| Roof Slope | 8° - 20° | | | 21° - 27° | | | 28° - 45° | | |
|---|---|---|---|---|---|---|---|---|---|
| Group | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 |
| ASCE 7-16 Roof Zones | 1 | 2r | 2e 3 | 1 | 2e 2r | 3 | 1 | 2e | 2r 3 |



Figure 3: ASCE Roof Zone Locations for Hip Roofs

**Notation** (Per ASCE 7-16)

**a** = 10% of least horizontal dimension or 0.4h, whichever is smaller, but not less than either 4% of least horizontal dimension or 3 ft (0.9 m). If an overhang exists, the edge distance shall be measured from the outside edge of the overhang. The horizontal dimensions used to compute the edge distance shall not include any overhang distances.

**B** = Horizontal dimension of building measured normal to wind direction, in ft (m).

**h** = Mean roof height, in ft (m).

**θ** = Angle of plane of roof from horizontal, in degrees.

---

**BREITER PLANET PROPERTIES**

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
**EQUIPMENT SPECIFICATION**

SHEET SIZE
**ANSI B 11" X 17"**

SHEET NUMBER
**PV-16**



# PROJECT DESCRIPTION:

25X400 HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
ROOF MOUNTED SOLAR PHOTOVOLTAIC SYSTEM
SYSTEM SIZE: 10.000 KW DC STC

EQUIPMENT SUMMARY
25  HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
01  SOLAREDGE TECHNOLOGIES SE7600H-US INVERTER
25  P400 SOLAREDGE POWER OPTIMIZERS

AHJ NAME: CITY OF MELROSE
APN#:  MELRM:A12P:0000098

GOVERNING CODES
THIS PROJECT SHALL COMPLY WITH THE
FOLLOWING CODE
2020 NATIONAL ELECTRICAL CODE
2015 INTERNATIONAL RESIDENTIAL CODE
2015 INTERNATIONAL BUILDING CODE
2015 INTERNATIONAL ENERGY CONSERVATION CODE
2015 INTERNATIONAL PLUMBING CODE
2015 INTERNATIONAL MECHANICAL CODE
ALL OTHER ORDINANCES ADOPTED BY THE LOCAL
GOVERNING AGENCIES.

NOTE
1.NUMBER OF STORIES : 2
2.CONSTRUCTION TYPE : V-B
3.OCCUPANCY : R

**LEGEND**
A-STRING-1(13 MODULES)
B-STRING-2(12 MODULES)

SHEET INDEX
PV-1      PLOT PLAN & VICINITY MAP
PV-2      ROOF PLAN & MODULES
PV-2A     STRING LAYOUT
PV-3      ATTACHMENT DETAIL
PV-4      ELECTRICAL LINE DIAGRAM
PV-5      WIRING CALCULATIONS
PV-6      PLACARDS
PV-7+     EQUIPMENT SPECIFICATIONS

MELROSE ST

94"
134"
1510"
516"
629"
373"
602"
1094"

2-STORY HOUSE

EXISTING WALKWAY
EXISTING DRIVEWAY
PROPERTY LINE

ROOF #2
(10) HANWHA Q-CELLS-Q.PEAK
DUO LG5.2 400 (400W) MODULES

ROOF #1
(15) HANWHA Q-CELLS-Q.PEAK
DUO LG5.2 400 (400W) MODULES

(E) UTILITY METER
(E) MAIN SERVICE PANEL
(N) MA SMART METER
(N) PV INVERTER

**1  PLOT PLAN WITH ROOF PLAN**
PV-1

0   4        16        32 Ft.

## BREITER PLANET PROPERTIES

PROJECT SITE

**2  HOUSE PHOTO**
PV-1                                    SCALE: NTS

302 Melrose St, Melrose MA 02176, USA

PROJECT SITE

**3  VICINITY MAP**
PV-1                                    SCALE: NTS

302 Melrose St, Melrose, MA 02176, USA

REVISIONS
| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY
ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
PLOT PLAN &
VICINITY MAP

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-1

 **HELLOSIGN**

Audit Trail

TITLE                           Please sign your final solar design--Mark & Astgik Sandy...

FILE NAME                       PV-16.pdf

DOCUMENT ID                     38c8a2d896ac664725c7777ab79e18a546b09d5c

AUDIT TRAIL DATE FORMAT         MM / DD / YYYY

STATUS                          ● Completed

## Document History

| | | |
|---|---|---|
| **SENT** | **12 / 21 / 2020**<br>16:12:50 UTC | Sent for signature to Mark Danko (mwdanko@gmail.com) from<br>projects@breiterplanet.com<br>IP: 66.30.32.27 |
| **VIEWED** | **12 / 24 / 2020**<br>16:52:35 UTC | Viewed by Mark Danko (mwdanko@gmail.com)<br>IP: 73.69.102.196 |
| **SIGNED** | **12 / 28 / 2020**<br>02:25:50 UTC | Signed by Mark Danko (mwdanko@gmail.com)<br>IP: 73.69.102.196 |
| **COMPLETED** | **12 / 28 / 2020**<br>02:25:50 UTC | The document has been completed. |

Powered by **HELLOSIGN**

6/8/24, 10:17 PM  Breiter Planet Properties Mail - CITY OF MELROSE - Your Building Permit Application Requires Additional Information

Case 25-01162  Doc 38-1  Filed 03/16/26 - Entered 03/17/26 08:37:04  Desc
Memorandum of Law in Support of    Page 64 of 69



Andrew Breiter-Wu <andrew@breiterplanet.com>

# CITY OF MELROSE - Your Building Permit Application Requires Additional Information

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org>                Thu, Jan 5, 2023 at 4:17 PM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT requires additional information for your Building Permit Application:

Address: **302 MELROSE ST**
Project Category: **Solar**
Application Number: **BPA-22-1166**
<u>Additional Info Required: 10-27-22 SD</u>
<u>We need a letter from the structural engineer showing that the roof framing is sufficient for the solar installation</u>
<u>for this property</u>

If you are a registered SimpliCITY Permits user you can **Click Here To Provide Requested Additional Information**.

If you are NOT a registered SimpliCITY Permits user, please call or email the CITY OF MELROSE BUILDING DEPARTMENT with the requested additional information. Be sure to reference the application number above with all correspondence.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135


PLEASE DO NOT REPLY TO THIS EMAIL



Andrew Breiter-Wu <andrew@breiterplanet.com>

## CITY OF MELROSE Building Permit Application

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org>                    Fri, Oct 14, 2022 at 12:37 AM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT has received a Building Permit Application for your property:

Application Number: **BPA-22-1166**
Application Date: **10/14/2022**
Address: **302 MELROSE ST**
Project Category: **Solar**

Contractor Name: ANDREW BREITER-WU
Company Name: BREITER PLANET CONSTRUCTION
Contractor Phone: 617-334-5785
Contractor Email: Permitting@breiterplanet.com

Please contact the CITY OF MELROSE BUILDING DEPARTMENT with any questions.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135

PLEASE DO NOT REPLY TO THIS EMAIL



**Andrew Breiter-Wu <andrew@breiterplanet.com>**

## CITY OF MELROSE Electrical Permit Application

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org>                    Fri, Oct 14, 2022 at 12:48 AM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT has received a Electrical Permit Application for your property:

Application Number: **EPA-22-718**
Application Date: **10/14/2022**
Address: **302 MELROSE ST**
Project Category: **Solar**

Contractor Name: ANDREW BREITER-WU
Company Name: BREITER PLANET CONSTRUCTION
Contractor Phone: 617-334-5785
Contractor Email: Permitting@breiterplanet.com

Please contact the CITY OF MELROSE BUILDING DEPARTMENT with any questions.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135

PLEASE DO NOT REPLY TO THIS EMAIL

6/8/24, 10:20 PM  Case 25-01162 Breiter Planet PropertiesMat 0O3/16/26ROSE Enter Building 3/17/26 08:37:04s Been Desmitted

Memorandum of Law in Support of    Page 67 of 69



**Andrew Breiter-Wu <andrew@breiterplanet.com>**

## CITY OF MELROSE - Your Building Permit Application Has Been Submitted

1 message

---

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org>          Fri, Oct 14, 2022 at 12:37 AM
To: Permitting@breiterplanet.com

---

The CITY OF MELROSE BUILDING DEPARTMENT has received your Building Permit Application:

Address: **302 MELROSE ST**
Project Category: **Solar**
Application Number: **BPA-22-1166**

You will be notified via email when payment is required. Your permit card will not be issued until payment
has been made.

Please Click Here to view your applications.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135


PLEASE DO NOT REPLY TO THIS EMAIL



**Andrew Breiter-Wu <andrew@breiterplanet.com>**

## CITY OF MELROSE - Your Electrical Permit Application Has Been Submitted

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org>           Fri, Oct 14, 2022 at 12:48 AM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT has received your Electrical Permit Application:

Address: **302 MELROSE ST**
Project Category: **Solar**
Application Number: **EPA-22-718**

You will be notified via email when payment is required. Your permit card will not be issued until payment has been made.

Please Click Here to view your applications.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135

PLEASE DO NOT REPLY TO THIS EMAIL

# **END OF EXHIBITS**