Case 25-01162 Doc 3-2 Filed 3/26/26 Entered 3/27/26 9:37:04 Desc
Appellant Part 3 Page 1 of 75

**EXHIBIT INDEX**

| **Exhibit** | **Description** |
|---|---|
| **Exhibit A** | Settlement Agreement and Mutual Release |
| **Exhibit B** | Agreement for Judgment |
| **Exhibit C** | Malden District Court Docket and Judgment Entry |
| **Exhibit D** | Stripe Payment Processor Records Reflecting Payments Made by Plaintiff Mark Danko to Breiter Planet Properties, LLC |
| **Exhibit E** | Project Development, Engineering, Structural Review, and Permitting Documents |

Case 25-01162 Doc 38-1 Filed 07/16/26 Entered 07/17/26 09:37:04 Desc
Memorandum of Law in Support Page 21 of 69

# <u>EXHIBIT A</u>

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into as of July 15, 2024 by and between Mark Danko ("Plaintiff") and Breiter Planet Properties, LLC and Andrew Breiter-Wu ("Defendants"). Collectively, Plaintiff and Defendants are referred to as the "Parties."

**WHEREAS**, the Plaintiff has filed a lawsuit against the Defendants, C.A. NO.: 2450CV000042, currently pending in Malden District Court, Middlesex County, Massachusetts (the "Lawsuit");

**WHEREAS**, the Parties desire to resolve all disputes and claims between them, including those asserted in the Lawsuit, without the need for further litigation;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Settlement Payment**: a. Defendants agree to pay Plaintiff a total sum of $5,000 ("Settlement Amount") in ten (10) monthly installments of $500 each, beginning on August 1, 2024, and continuing on the first day of each subsequent month until paid in full. b. Payments will be made via wire transfer to Plaintiff's attorney's IOLTA account. The Plaintiff's attorney will provide the necessary bank details for the wire transfer.
2. **Joint Agreement for Judgment**: a. The Parties will execute a Joint Agreement for Judgment in the amount of $25,000, which will be held in escrow by Plaintiff's attorney. b. The Joint Agreement for Judgment will only be filed with the court if Defendants default on their payment obligations under this Agreement, and such default is not cured

within thirty (120) days of written notice of the default. Any payments made prior to the filing of the Joint Agreement for Judgment will be offset against the judgment amount.

3. **Mutual Release**: In consideration for the payment of the Settlement Amount detailed in this agreement, and other good and valuable consideration, Plaintiff on the one hand and Defendants on the other, each acting on behalf of themselves and their respective divisions, affiliates, subsidiaries, parents, predecessors, successors and assigns, employees, insurers, sureties, agents, attorneys, and any party affiliated therewith will, upon Defendants' fulfillment of all payment obligations as set forth in this agreement, remise, release, and forever discharge each of the other parties from any and all debts, demands, actions, causes of action, sums of money, covenants, contracts, controversies, agreements, promises, doings, omissions, damages, and liabilities and any and all other claims and counterclaims of every kind, nature, and description whatsoever, both in law and in equity, that either Plaintiff or Defendants have, had or may have, whether known or unknown, from the beginning of the world through the date of this Agreement, including but not limited to all claims related to the Judgment; provided, however, that Plaintiff's rights under the Judgment shall not be released should Defendants default on their obligations to pay the Settlement Amount in a timely manner. This Release shall not impair, limit, or release any right or obligation created by this Agreement.

4. **Mutual Non-Disparagement**: a. The Parties agree not to make any intentionally disparaging statements about each other, whether written, oral, or otherwise, to any third party. Plaintiff agrees to try to remove any negative online reviews about Defendants upon execution of this Agreement, provided that Defendants timely provide links of all negative reviews, and agrees not to post any negative reviews in the future.

Case 25-01162 Doc 38-1 Filed 03/26/26 Entered 03/27/26 09:33:54 Desc Appendix Part 3 Page 5 of 75

5. **Motion to Stay**: a. Plaintiff agrees to file a Motion to Stay the proceedings in the Lawsuit for a period of twelve (12) months from the date of this Agreement to allow for the completion of the Settlement Amount payments. b. The Parties agree that the case will remain open during this period to facilitate the settlement process, and no further litigation actions will be taken by either party during the stay period.
6. **Consequences of Default**: a. In the event Defendants fail to make any scheduled payment, Plaintiff shall provide written notice of the default to Defendants. Defendants shall have thirty (120) days from the date of the notice to cure the default. b. If the default is not cured within the thirty (120) day period, Plaintiff may file the Joint Agreement for Judgment with the court, offset by any payments made by Defendants prior to the default.
7. **Confidentiality**: a. The terms of this Agreement are not confidential, and the Parties may disclose the terms as they see fit.
8. **Severability**: The provisions of this Agreement are severable, and the other Sections shall remain fully valid and enforceable if any part of the Agreement is found to be unenforceable.
9. **Binding Effect**: This Agreement shall be binding upon and inure to the benefit of the predecessors, heirs, successors, and assigns of the Parties.
10. **Governing Law and Jurisdiction**: This Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts. To the extent an action is necessary to enforce any of the obligations under this Agreement, the Parties agree to submit to jurisdiction in the State Courts in the Commonwealth of Massachusetts.

11. **Entire Agreement**: The Parties acknowledge and agree that this Agreement is a full, final and complete settlement agreement and mutual release. This Agreement contains the entire understanding and agreement between the Parties, and there are no representations, warranties, covenants, promises or undertakings, oral or otherwise, that are not expressly set forth or incorporated by reference herein. All prior discussions and negotiations are merged and integrated into this Agreement.

12. **Voluntary Execution**: This Agreement has been prepared through the combined efforts of the Parties and their respective attorneys. The Parties acknowledge and agree that the terms of this Agreement are fair and reasonable, and clear and unambiguous. The Parties also acknowledge that they have read this Agreement, that they fully understand the contents of this Agreement, and that their execution of this Agreement is voluntary.

13. **Counterparts or Duplicate Agreements**: The Parties acknowledge and agree that facsimile or photocopy signatures shall be deemed to be original signatures for any and all purposes. The Parties also acknowledge and agree that a facsimile or photocopy of the fully executed Agreement shall be deemed to be an original for any and all purposes.

14. **Non-Assignment of Claims**: The Parties each represent and warrant that the rights and claims released pursuant to this Agreement have not in any way been assigned, transferred, hypothecated, or otherwise encumbered, and that they are the sole and absolute owners of such rights and claims.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first above written.

**For the Plaintiff:**

DocuSigned by:
Ira Grolman
4EA2612D366E474...

Ira H. Grolman
Grolman LLP
29 Stanhope Street
Boston, MA 02116
(617) 859-8966
Attorney for Mark Danko

**For the Defendants:**

DocuSigned by:
Andrew Breiter-Wu
8131D0629B21440...

Andrew Breiter-Wu
Breiter Planet Properties, LLC
86 Willard Ave
Seekonk, MA 02771
(617) 334-5785
Pro-Se

Case 25-01162 Doc 38-2 Filed 07/16/26 Entered 07/17/26 09:33:54 Desc
Appellant Part 3 Page 8 of 75

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| Middlesex, ss. | District Court Department<br>Malden District Court |
| Mark Danko,<br>Plaintiff,<br><br>v.<br><br>Andrew Breiter-Wu, and<br>Breiter Planet Properties, LLC,<br>Defendants. | Civil Action No. 2450CV000042 |

**AGREEMENT FOR JUDGMENT**

The Parties in the above-entitled action hereby stipulate and agree as follows:

1. The Parties enter into this Agreement voluntarily as stipulated under the terms of the settlement agreement and mutual release ("Settlement Agreement") executed between the parties.

2. In the case of a default on the settlement agreement and default is not cured by the defendants within 120 days, this Judgment shall enter for Plaintiff, and against Breiter Planet Properties, LLC, in the sum of $25,000 ("Judgment Amount") which shall be offset from payments already made prior to the filing of this agreement for judgment.

3. The full terms surrounding this agreement for judgement are defined in the settlement agreement executed between the parties.

**For the Plaintiff:**

DocuSigned by:
Ira Grolman
4EA2612D366E474...

Ira H. Grolman
Grolman LLP
29 Stanhope Street
Boston, MA 02116
(617) 859-8966
Attorney for Mark Danko

**For the Defendants:**

DocuSigned by:
Andrew Breiter-Wu
8131D0629B21440...

Andrew Breiter-Wu
Breiter Planet Properties, LLC
86 Willard Ave
Seekonk, MA 02771
Pro-Se

# <u>EXHIBIT C</u>

Case 25-01162 Doc 38-1 Filed 07/16/26 Entered 07/17/26 08:37:04 Desc
Appellant Part 1 Page 30 of 69

# 2450CV000042 Danko, Mark v. Breiter-Wu, Andrew

- Case Type:
- Civil
- Case Status:
- Disposed for Statistical Purposes
- File Date
- 01/16/2024
- DCM Track:
-
- Initiating Action:
- Money Action - District Court Filing (c231 §§ 103-104)
- Status Date:
- 10/28/2025
- Case Judge:
-
- Next Event:
-

All Information | Party | Judgment | Event | Docket | Disposition

## Party Information

**Danko, Mark**
- Plaintiff

**Alias**

**Party Attorney**
- Attorney
- Grolman, Esq., Ira H
- Bar Code
- 556709
- Address
- Grolman LLP
29 Stanhope St
Boston, MA 02116
- Phone Number
- (617)859-8966

More Party Information

**Breiter-Wu, Andrew**
- Defendant

**Alias**

**Party Attorney**

More Party Information

**Breiter Planet Properties, Llc**
- Defendant

**Alias**

**Party Attorney**

More Party Information

## Judgments

| Date | Type | Method | For | Against |
|---|---|---|---|---|
| 10/28/2025 | Judgment for the Plaintiff | , after default and upon assessment of damages | Danko, Mark | Breiter Planet Properties, Llc |

## Events

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 06/12/2024 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Reschedule of Hearing |
| 07/16/2024 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Held |
| 03/26/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Event Cancelled |

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 08/05/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Reschedule of Hearing |
| 09/09/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Held |
| 09/30/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Reschedule of Hearing |
| 10/28/2025 11:00 AM | Virtual Court Session | Https://www.zoomgov.com/j/16164523078 | Motion Hearing (CV) | Held - Motion Allowed |

## Docket Information

| Docket Date | *Docket Text* | Amount Owed | File Ref Nbr. | *Image Avail.* |
|---|---|---|---|---|
| 01/16/2024 | E-File complaint filed. | | | |
| 01/16/2024 | Statement of damages filed by Plaintiff alleging contract action for damages of $25000. or less(Dist./Mun.Cts.Supp.R.Civ.P. 102A) | | | |
| 01/16/2024 | Exparte motion filed. | | 1 | |
| 01/18/2024 | Motion to appoint special process server (Civ.P. 3[c] &4) allowed . | | | |
| 02/02/2024 | Return of service on complaint and summons to Breiter Planet Properties, Llc: Officer service SERVED at last and usual abode (Mass.R.Civ.P. 4(f)). | | 3 | |
| 02/08/2024 | Return of service on complaint and summons to Andrew Breiter-Wu: Officer service SERVED at last and usual abode (Mass.R.Civ.P. 4(f)). | | 2 | |
| 02/15/2024 | Application to clerk-magistrate to enter default against Andrew Breiter-Wu filed by Mark Danko (Mass.R.Civ.P. 55(a) & 77(b)). | | | |
| 02/28/2024 | Default entered against Andrew Breiter-Wu by clerk-magistrate (Mass.R.Civ.P. 55(a) & 77(b)). | | | |
| 04/26/2024 | Motion to assess damages (Mass.R.Civ.P. 55[b][4]) filed by Mark Danko-Plaintiff. | | 4 | |
| 04/30/2024 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 06/12/2024 Time: 11:00 AM<br>Result: Reschedule of Hearing | | | |
| 06/10/2024 | Answer filed.<br><br>Applies To: Breiter-Wu, Andrew (Defendant); Breiter Planet Properties, Llc (Defendant) | | 5 | |
| 06/10/2024 | Motion to dismiss filed<br><br>Applies To: Breiter-Wu, Andrew (Defendant); Breiter Planet Properties, Llc (Defendant) | | 6 | |
| 06/10/2024 | Opposition filed to Defts opposition to plaintiffs motion for assessment of damages and default judgment filed. | | 7 | |
| 06/10/2024 | Motion to Plaintiffs motion to strike defendants motion to remove default filed by Mark Danko-Plaintiff. | | 8 | |
| 06/11/2024 | Opposition filed filed. | | 9 | |
| 06/12/2024 | Motion to Plaintiffs motion to strike defendants and counterclaim allowed allowed . | | | |
| 06/13/2024 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 07/16/2024 Time: 11:00 AM<br>Result: Held | | | |
| 07/16/2024 | Event Resulted: Motion Hearing (CV) scheduled on:<br>07/16/2024 11:00 AM<br>Has been: Held<br>Hon. James M Murphy, Presiding | | | |
| 07/16/2024 | Misc Entry:<br><br>1 year NISI Order | | | |
| 02/25/2025 | Motion to restore case to trial list filed by Mark Danko-Plaintiff. | | 10 | |
| 02/26/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 03/26/2025 Time: 11:00 AM<br>Result: Event Cancelled | | | |
| 03/05/2025 | Opposition filed to Enforce settlement and enter judgment filed. | | 11 | |
| 03/06/2025 | Motion to Withdraw motion to return to trial list and enforce settlement filed by Mark Danko-Plaintiff. | | 12 | |

| Docket Date | Docket Text | Amount Owed | File Ref Nbr. | Image Avail. |
|---|---|---|---|---|
| 03/07/2025 | Event Resulted: Motion Hearing (CV) scheduled on:<br>03/26/2025 11:00 AM<br>Has been: Event Cancelled For the following reason: Brought forward<br>Hon. Emily A Karstetter, Presiding | | | |
| 07/07/2025 | Motion to To enforce settlement judgment and enter final judgment filed by Mark Danko-Plaintiff. | | 13 | |
| 07/08/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 08/05/2025 Time: 11:00 AM<br>Result: Reschedule of Hearing | | | |
| 08/04/2025 | Opposition filed to plaintiff's motion to enforce settlement and enter final judgment filed. | | 14 | |
| 08/04/2025 | Motion for continuance (Mass.R.Civ.P.40[b]) filed by Mark Danko-Plaintiff. | | 15 | |
| 08/05/2025 | Motion for continuance (Mass.R.Civ.P.40[b]) allowed . | | | |
| 08/05/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 09/09/2025 Time: 11:00 AM<br>Result: Held | | | |
| 09/08/2025 | Suggestion of bankruptcy filed (11 U.S.C. §362). | | 16 | |
| 09/09/2025 | Event Resulted: Motion Hearing (CV) scheduled on:<br>09/09/2025 11:00 AM<br>Has been: Held For the following reason: Bankruptcy<br>Comments: Motion stayed as to Defendant Andrew Breiter-Wu because for bankruptcy filing. Cast Continued for company<br>Hon. David E Frank, Presiding | | | |
| 09/09/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 09/30/2025 Time: 11:00 AM<br>Result: Reschedule of Hearing | | | |
| 09/30/2025 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 10/28/2025 Time: 11:00 AM<br>Result: Held - Motion Allowed | | | |
| 10/28/2025 | Motion to enforce settlement agreement and enter final judgment allowed . | | | |
| 10/28/2025 | Judgment Entered:: Judgment for the Plaintiff , after default and upon assessment of damages Presiding: Hon. James M Murphy<br><br>Judgment For: Mark Danko<br><br>Judgment Against: Breiter Planet Properties, Llc<br><br>Terms of Judgment: Interest Begins: 01/16/2024 Jdgmnt Date: 10/28/2025 Interest Rate: .12 Daily Interest Rate: .000329<br>Damages: Damage Amt: 24500.00 Filing Fees: 195.00 Costs Pd to Court: 5.00<br>Judgment Total: 29,947.39 | | | |
| 11/13/2025 | Execution Issued:<br>Execution on Money Judgment<br>Judgment Debtor: Breiter Planet Properties, Llc<br>Judgment Creditor: Danko, Mark<br>Terms of Execution:<br>EXON Issuance Date: 11/13/2025<br>Judgment Total: 29,947.39<br>Post Judgment Int. Rate: .12 Post Judgment Int. Total: 157.64<br>Execution Subtotal: 30,105.03<br>Execution Total: 30,105.03 | | | |

## Case Disposition

| Disposition | Date |
|---|---|
| Pending | |

# <u>EXHIBIT D</u>

| Amount | | | Payment method | Description | Customer | Date |
|---|---|---|---|---|---|---|
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 643217556 | mwdanko@gmail.com | Sep 27, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 625502641 | mwdanko@gmail.com | Aug 28, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 607945230 | mwdanko@gmail.com | Jul 29, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 590451641 | mwdanko@gmail.com | Jun 29, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 573007761 | mwdanko@gmail.com | May 30, 2022, 12:07 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 555133034 | mwdanko@gmail.com | Apr 30, 2022, 12:05 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 536891172 | mwdanko@gmail.com | Mar 31, 2022, 12:05 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 519618781 | mwdanko@gmail.com | Mar 1, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 503383106 | mwdanko@gmail.com | Jan 30, 2022, 12:06 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 488286036 | mwdanko@gmail.com | Dec 31, 2021, 12:05 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 471879761 | mwdanko@gmail.com | Dec 1, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 457256724 | mwdanko@gmail.com | Nov 1, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 441841866 | mwdanko@gmail.com | Oct 2, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 427015639 | mwdanko@gmail.com | Sep 2, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 412566693 | mwdanko@gmail.com | Aug 3, 2021, 12:03 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 397822151 | mwdanko@gmail.com | Jul 4, 2021, 12:03 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 383479139 | mwdanko@gmail.com | Jun 4, 2021, 12:03 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 369145978 | mwdanko@gmail.com | May 5, 2021, 12:03 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 355195277 | mwdanko@gmail.com | Apr 5, 2021, 12:04 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 341499426 | mwdanko@gmail.com | Mar 6, 2021, 12:0[illegible] AM |

| Amount | | | Payment method | Description | Customer | Date |
|---|---|---|---|---|---|---|
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 328582019 | mwdanko@gmail.com | Feb 4, 2021, 12:09 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 317023553 | mwdanko@gmail.com | Jan 5, 2021, 12:07 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 304544580 | mwdanko@gmail.com | Dec 6, 2020, 12:07 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order breiter-planet-properties.myshopify.com Purchase Id: 55122496 Charge Id: 292494149 | mwdanko@gmail.com | Nov 6, 2020, 12:07 AM |
| $64.83 | USD | Succeeded ✓ | VISA •••• 9652 | Amount related with shop order Breiter Planet Properties Cart Token: 10de2637935e4d5db83d5f45c61eae35 | mwdanko@gmail.com | Oct 7, 2020, 12:06 PM |

Viewing 21–25 of 25 results

Previous Next

# EXHIBIT E

BREITER PLANET PROPERTIES

**Andrew Breiter-Wu <andrew@breiterplanet.com>**

# Vector Portal Notification: Mark & Astgik Sandy Danko - 302 Melrose (2895793632)

1 message

**NoreplyVector** <noreply@vectorse.com> Wed, Feb 3, 2021 at 8:06 PM
To: jensen@vectorse.com, lee@vectorse.com, Andrew@breiterplanet.com, Labbate@breiterplanet.com

**VectorStructuralEngineering**

Hello,

This email is being sent to advise you that a post was made through the Vector Engineering Portal regarding the project listed below.

Project Name: **Mark & Astgik Sandy Danko - 302 Melrose**
Job Id: **2895793632**
Vector Project Number: **U4011.0015.201**
Posted By: **CRS**
Files: **No files.**

Message:

> Andrew, the photos provided don't show that there are any additional supports, so this will need a retrofit. This will require a sister rafter retrofit for the roofs with angles 36.87 degrees and the roof with a 9 degree slope will need a knee wall retrofit. Is this ok with you?

This is coming from an unmonitored email address. If you would like to respond, please create a post via the Vector Portal.
If you have any questions regarding the email. Please feel free to reach out to your contact at Vector Structural Engineering.

© 2021 VectorStructuralEngineering. All rights reserved.

BREITER PLANET PROPERTIES

**Andrew Breiter-Wu <andrew@breiterplanet.com>**

# Vector Portal Notification: Mark & Astgik Sandy Danko - 302 Melrose (2895793632)

2 messages

---

**NoreplyVector** <noreply@vectorse.com> Thu, Mar 11, 2021 at 2:28 PM
To: jensen@vectorse.com, lee@vectorse.com, Andrew@breiterplanet.com, Labbate@breiterplanet.com, jmenges@breiterplanet.com, dbreiter@breiterplanet.com, Espicher@breiterplanet.com, mrorke@breiterplanet.com

**VectorStructuralEngineering**

Hello,

This email is being sent to advise you that a post was made through the Vector Engineering Portal regarding the project listed below.

Project Name: **Mark & Astgik Sandy Danko - 302 Melrose**
Job Id: **2895793632**
Vector Project Number: **U4011.0015.201**
Posted By: **WIC**
Files: **No files.**

Message:

> Hello, Roof #1 will pass our analysis but we can't pass Roof #2 based on the info we have received. Would you like us to proceed with the analysis of roof #1? If yes, Please send us updated layout with roof 1.

This is coming from an unmonitored email address. If you would like to respond, please create a post via the Vector Portal.
If you have any questions regarding the email. Please feel free to reach out to your contact at Vector Structural Engineering.

© 2021 VectorStructuralEngineering. All rights reserved.

---

**NoreplyVector** <noreply@vectorse.com> Thu, Mar 11, 2021 at 2:44 PM
To: jensen@vectorse.com, Andrew@breiterplanet.com, Labbate@breiterplanet.com
Cc: lee@vectorse.com

VectorStructuralEngineering

Hello,

This email is being sent to advise you that a post was made through the Vector Engineering Portal regarding the project listed below.

Project Name: **Mark & Astgik Sandy Danko - 302 Melrose**
Job Id: **2895793632**
Vector Project Number: **U4011.0015.201**
Posted By: **LKO**
Files: **No files.**

Message:

Andrew, to clarify, we are unable to provide a retrofit for Roof 2. A Sr. Engineer reviewed the project and determined that we cannot approve that section. We can approve Roof 1 but cannot approve Roof 2. Please let us know how you would like to proceed. Thanks, Lee

This is coming from an unmonitored email address. If you would like to respond, please create a post via the Vector Portal.
If you have any questions regarding the email. Please feel free to reach out to your contact at Vector Structural Engineering.

© 2021 VectorStructuralEngineering. All rights reserved.

Andrew Breiter-Wu <andrew@breiterplanet.com>

## Solar Project Update

**Julie Menges** <jmenges@breiterplanet.com> Wed, Mar 31, 2021 at 10:08 AM
To: mwdanko@gmail.com
Cc: Andrew Breiter-Wu <andrew@breiterplanet.com>

Mr. and Mrs. Danko,

Good morning. I hope my email finds you well. First, I would like to thank you for your patience. We are working diligently on your solar project. I wanted to send a quick status update.

Where we are right now: the structural engineer has rejected putting anything on the west-facing roof. We are working with them on a quick redesign and will send you the revised site plan as soon as possible. You will also be notified of the installation date once this correction is made. As soon as this matter is resolved, we will update the permits and order materials. We do not anticipate much of a delay in getting this resolved.

We are always here to answer any questions you have or to give you an update. Please do not hesitate to reach out!

Thank you,

Julie Menges

*Paralegal & Project Coordinator*
**Breiter Planet Properties**
p: (443) 683-3026
w: www.breiterplanet.com e: Jmenges@breiterplanet.com

In compliance with IRS requirements, we inform you that any U.S. tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of avoiding tax penalties or in connection with marketing or promotional materials.

STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, or the person responsible for delivering the e-mail to the intended recipient, be advised you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify Breiter Planet Properties immediately at either (617) 334-5785 or at Andrew@breiterplanet.com and destroy all copies of this message and any attachments. You will be reimbursed for reasonable costs incurred in notifying us.

BREITER PLANET PROPERTIES

Annual Production Report produced by Andrew Breiter-Wu

# Mark & Astgik Sandy Danko - 302 Melrose St, Melrose, MA 02176 Mark & Astgik Sandy Danko - 302 Melrose St, Melrose, MA 02176, 302 Melrose St, Melrose, MA 02176

## Report

| | |
|---|---|
| Project Name | Mark & Astgik Sandy Danko - 302 Melrose St, Melrose, MA 02176 |
| Project Address | 302 Melrose St, Melrose, MA 02176 |
| Prepared By | Andrew Breiter-Wu andrew@breiterplanet.com |

## System Metrics

| | |
|---|---|
| Design | Mark & Astgik Sandy Danko - 302 Melrose St, Melrose, MA 02176 |
| Module DC Nameplate | 10.00 kW |
| Inverter AC Nameplate | 7.68 kW<br>Load Ratio: 1.30 |
| Annual Production | 12.18 MWh |
| Performance Ratio | 82.7% |
| kWh/kWp | 1,218.2 |
| Weather Dataset | TMY, 10km grid (42.45,-71.05), NREL (prospector) |
| Simulator Version | 928cd12e53-ccc4c23e03-9f42624657-b86adabece |

## Project Location




## Monthly Production




## Sources of System Loss




## Annual Production

| | Description | Output | % Delta |
|---|---|---|---|
| Irradiance (kWh/m²) | Annual Global Horizontal Irradiance | 1,412.3 | |
| | POA Irradiance | 1,472.8 | 4.3% |
| | Shaded Irradiance | 1,470.3 | -0.2% |
| | Irradiance after Reflection | 1,423.2 | -3.2% |
| | Irradiance after Soiling | 1,394.7 | -2.0% |
| | **Total Collector Irradiance** | **1,394.7** | **0.0%** |
| Energy (kWh) | Nameplate | 13,944.8 | |
| | Output at Irradiance Levels | 13,832.8 | -0.8% |
| | Output at Cell Temperature Derate | 12,997.9 | -6.0% |
| | Output After Mismatch | 12,670.6 | -2.5% |
| | Optimal DC Output | 12,649.0 | -0.2% |
| | Constrained DC Output | 12,622.6 | -0.2% |
| | Inverter Output | 12,243.1 | -3.0% |
| | **Energy to Grid** | **12,181.9** | **-0.5%** |
| Temperature Metrics | | | |
| | Avg. Operating Ambient Temp | | 11.7 °C |
| | Avg. Operating Cell Temp | | 26.7 °C |
| Simulation Metrics | | | |
| | | Operating Hours | 4682 |
| | | Solved Hours | 4682 |

## Condition Set

<table>
<tr><td>Description</td><td colspan="12">Condition Set 1</td></tr>
<tr><td>Weather Dataset</td><td colspan="12">TMY, 10km grid (42.45,-71.05), NREL (prospector)</td></tr>
<tr><td>Solar Angle Location</td><td colspan="12">Meteo Lat/Lng</td></tr>
<tr><td>Transposition Model</td><td colspan="12">Perez Model</td></tr>
<tr><td>Temperature Model</td><td colspan="12">Sandia Model</td></tr>
<tr><td rowspan="3">Temperature Model Parameters</td><td colspan="3">Rack Type</td><td colspan="3">a</td><td colspan="3">b</td><td colspan="3">Temperature Delta</td></tr>
<tr><td colspan="3">Fixed Tilt</td><td colspan="3">-3.56</td><td colspan="3">-0.075</td><td colspan="3">3°C</td></tr>
<tr><td colspan="3">Flush Mount</td><td colspan="3">-2.81</td><td colspan="3">-0.0455</td><td colspan="3">0°C</td></tr>
<tr><td rowspan="2">Soiling (%)</td><td>J</td><td>F</td><td>M</td><td>A</td><td>M</td><td>J</td><td>J</td><td>A</td><td>S</td><td>O</td><td>N</td><td>D</td></tr>
<tr><td>2</td><td>2</td><td>2</td><td>2</td><td>2</td><td>2</td><td>2</td><td>2</td><td>2</td><td>2</td><td>2</td><td>2</td></tr>
<tr><td>Irradiation Variance</td><td colspan="12">5%</td></tr>
<tr><td>Cell Temperature Spread</td><td colspan="12">4° C</td></tr>
<tr><td>Module Binning Range</td><td colspan="12">-2.5% to 2.5%</td></tr>
<tr><td>AC System Derate</td><td colspan="12">0.50%</td></tr>
<tr><td rowspan="2">Module Characterizations</td><td colspan="5">Module</td><td colspan="3">Uploaded By</td><td colspan="4">Characterization</td></tr>
<tr><td colspan="5">Q.PEAK DUO L-G7.2 400 (Hanwha)</td><td colspan="3">Folsom Labs</td><td colspan="4">Spec Sheet Characterization, PAN</td></tr>
<tr><td rowspan="2">Component Characterizations</td><td colspan="6">Device</td><td colspan="3">Uploaded By</td><td colspan="3">Characterization</td></tr>
<tr><td colspan="6">SB7.7-1SP-US-41 240V (SMA)</td><td colspan="3">Folsom Labs</td><td colspan="3">Spec Sheet</td></tr>
</table>

## Components

| Component | Name | Count |
|---|---|---|
| Inverters | SB7.7-1SP-US-41 240V (SMA) | 1 (7.68 kW) |
| Strings | 10 AWG (Copper) | 3 (120.2 ft) |
| Module | Hanwha, Q.PEAK DUO L-G7.2 400 (400W) | 25 (10.00 kW) |

## Wiring Zones

| Description | Combiner Poles | String Size | Stringing Strategy |
|---|---|---|---|
| Wiring Zone | 12 | 3-11 | Along Racking |

## Field Segments

| Description | Racking | Orientation | Tilt | Azimuth | Intrarow Spacing | Frame Size | Frames | Modules | Power |
|---|---|---|---|---|---|---|---|---|---|
| Field Segment 1 | Flush Mount | Portrait (Vertical) | 40° | 117.496° | 0.0 ft | 1x1 | 11 | 11 | 4.40 kW |
| Field Segment 2 | Flush Mount | Portrait (Vertical) | 40° | 115.699° | 0.0 ft | 1x1 | 14 | 14 | 5.60 kW |

BREITER PLANET PROPERTIES

**Annual Production Report** produced by Andrew Breiter-Wu

Detailed Layout



# PROJECT DESCRIPTION:

25X400 HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
ROOF MOUNTED SOLAR PHOTOVOLTAIC SYSTEM
SYSTEM SIZE: 10.000 KW DC STC

EQUIPMENT SUMMARY
25 HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
01 SOLAREDGE TECHNOLOGIES SE7600H-US INVERTER
25 P400 SOLAREDGE POWER OPTIMIZERS

AHJ NAME: CITY OF MELROSE
APN#: MELRM:A12P:0000098

GOVERNING CODES
THIS PROJECT SHALL COMPLY WITH THE FOLLOWING CODE
2020 NATIONAL ELECTRICAL CODE
2015 INTERNATIONAL RESIDENTIAL CODE
2015 INTERNATIONAL BUILDING CODE
2015 INTERNATIONAL ENERGY CONSERVATION CODE
2015 INTERNATIONAL PLUMBING CODE
2015 INTERNATIONAL MECHANICAL CODE
ALL OTHER ORDINANCES ADOPTED BY THE LOCAL GOVERNING AGENCIES.

NOTE
1.NUMBER OF STORIES : 2
2.CONSTRUCTION TYPE : V-B
3.OCCUPANCY : R

**LEGEND**
A-STRING-1(13 MODULES)
B-STRING-2(12 MODULES)

SHEET INDEX

| | |
|---|---|
| PV-1 | PLOT PLAN & VICINITY MAP |
| PV-2 | ROOF PLAN & MODULES |
| PV-2A | STRING LAYOUT |
| PV-3 | ATTACHMENT DETAIL |
| PV-4 | ELECTRICAL LINE DIAGRAM |
| PV-5 | WIRING CALCULATIONS |
| PV-6 | PLACARDS |
| PV-7+ | EQUIPMENT SPECIFICATIONS |




ROOF #2
(10) HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES

ROOF #1
(15) HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES

(E) UTILITY METER
(E) MAIN SERVICE PANEL
(N) MA SMART METER
(N) PV INVERTER

1 PLOT PLAN WITH ROOF PLAN
PV-1

0 4 16 32 Ft.

PROJECT SITE




2 HOUSE PHOTO
PV-1
SCALE: NTS

PROJECT SITE







3 VICINITY MAP
PV-1
SCALE: NTS

BREITER PLANET PROPERTIES

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
PLOT PLAN & VICINITY MAP

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-1

## MODULE TYPE, DIMENSIONS & WEIGHT

NUMBER OF MODULES = 25 MODULES
MODULE TYPE = HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
WEIGHT = 51.81LBS /23.5 KG
MODULE DIMENSIONS = 79.33" x 39.37" = 21.689 SF
UNIT WEIGHT OF ARRAY = 2.7 PSF




HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES

### ARRAY [illegible] ROOF AREA

| ROOF | # OF MODULES | ARRAY AREA (Sq. Ft.) | TOTAL ROOF AREA (Sq. Ft.) | ROOF AREA COVERED BY ARRAY (%) |
|---|---|---|---|---|
| #1 | 15 | 271.07 | 395.93 | 68.46 |
| #2 | 10 | 180.71 | 92.930 | 194.46 |

### ROOF DESCRIPTION

| ROOF TYPE | | | COMPOSITON SHINGLE ROOF | |
|---|---|---|---|---|
| ROOF | ROOF TILT | AZIMUTH | RAFTER SIZE | RAFTER SPACING |
| #1 | 9° | 116° | 2"X4" | 24" O.C. |
| #2 | 9° | 296° | 2"X4" | 24" O.C. |




## LEGEND

- JB - JUNCTION BOX
- UM - UTILITY METER
- MSP - MAIN SERVICE PANEL
- VENT, ATTIC FAN (ROOF OBSTRUCTION)
- ROOF ATTACHMENT
- RAFTERS
- CONDUIT




1 ROOF PLAN & MODULES
PV-2

0 2 8 16 Ft.

BREITER PLANET PROPERTIES

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
ROOF PLAN & MODULES

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-2







1 STRING LAYOUT
PV-2A
0 2 8 16 Ft.

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
STRING LAYOUT

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-2A




1 | ATTACHMENT DETAIL
PV-3 | SCALE: NTS




2 | ATTACHMENT DETAIL (ENLARGED SECTION VIEW)
PV-3 | SCALE: NTS

BREITER PLANET PROPERTIES

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
ATTACHMENT DETAILS

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-3

(25) HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
(1) STRING OF 13 MODULES CONNECTED IN SERIES
(1) STRING OF 12 MODULES CONNECTED IN SERIES

NOTE:
- EXTERIOR CONDUIT MUST BE PAINTED TO MATCH COLOR OF THE SURFACE ON WHICH THEY ARE MOUNTED.

Conduit Conductor Schedule (ALL CONDUCTORS MUST BE COPPER)

| Tag # | Description | Wire Gauge | # of Conductors/Color | Conduit Type | Conduit Size |
|---|---|---|---|---|---|
| 1 | PV WIRE | 10 AWG | 4 (L1, L2, G) | N/A-Free Air | N/A-Free Air |
| | Bare Copper Ground (EGC/GEC) | 6 AWG | 1 BARE | N/A-Free Air | N/A-Free Air |
| 2 | THWN-2 | 10 AWG | 4 (1L1, 1L2, 1N) B/R/W | EMT | 3/4" |
| | THWN-2 - Ground | 8 AWG | 1 (GRN) | EMT | 3/4" |
| 3 | THWN-2 | 8 AWG | 3 (1L1, 1L2, 1N) B/R/W | EMT | 3/4" |
| | THWN-2 - Ground | 8 AWG | 1 (GRN) | EMT | 3/4" |




INTERCONNECTION
120% RULE - NEC 705.12(D)(2)

UTILTIY FEED + SOLAR BACKFEED
200 + 40 = 240A

ALLOWABLE BACK FEED
200A x 120% = 240A

1 ELECTRICAL LINE DIAGRAM
PV-4 SCALE: NTS

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
ELECTRICAL LINE DIAGRAM

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-4

| SOLAR MODULE SPECIFICATIONS | |
|---|---|
| MANUFACTURER | HANWHA Q-CELLS |
| MODEL # | Q.PEAK DUO LG5.2 |
| PMAX | 400W |
| VMP | 41.04V |
| IMP | 9.75A |
| VOC | 49.0V |
| ISC | 10.24A |
| MODULE DIMENSION | 79.33"L x 39.37"W x 1.38"D (In Inch) |

| INVERTER SPECIFICATIONS | |
|---|---|
| MANUFACTURER / MODEL # | SOLAREDGE / SE7600H-US(240V) |
| NOMINAL OUTPUT VOLTAGE | 480V |
| NOMINAL OUTPUT CURRENT | 32 A |

| AMBIENT TEMPERATURE SPECS | |
|---|---|
| RECORD LOW TEMP | -17° |
| AMBIENT TEMP (HIGH TEMP 2%) | 32° |
| CONDUIT HEIGHT | 0.5" |
| ROOF TOP TEMP | 50° |
| CONDUCTOR TEMPERATURE RATE ON ROOF | 90° |
| CONDUCTOR TEMPERATURE RATE OFF ROOF | 75° |
| MODULE TEMPERATURE COEFFICIENT OF Voc | -0.28%/°C |

| PERCENT OF VALUES | NUMBER OF CURRENT CARRYING CONDUCTORS IN EMT |
|---|---|
| .80 | 4-6 |
| .70 | 7-9 |
| .50 | 10-20 |

## DC CONDUCTOR AMPACITY CALCULATIONS: FROM ARRAY TO JUNCTION BOX:

| | |
|---|---|
| EXPECTED WIRE TEMP (In Celsius) | 32° |
| TEMP. CORRECTION PER NEC TABLE 310.15(B)(2)(a) | 0.96 |
| NO. OF CURRENT CARRYING CONDUCTORS | 2 |
| CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) | 1 |
| CIRCUIT CONDUCTOR SIZE | 10 AWG |
| CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 40A |

| | |
|---|---|
| REQUIRED CIRCUIT CONDUCTOR AMPACITY PER NEC 690.8(A&B)<br>1.25 X OPTIMIZER ISC | 18.75A |
| DERATED AMPACITY OF CIRCUIT CONDUCTOR<br>TEMP. CORRECTION PER NEC TABLE 310.15(B)(2)(a) X<br>CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) X<br>CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 38.4A |
| Result should be greater than (18.75A) otherwise less the entry for circuit conductor size and ampacity | |

## DC CONDUCTOR AMPACITY CALCULATIONS: FROM JUNCTION BOX TO INVERTER:

| | |
|---|---|
| AMBIENT TEMPERATURE ADJUSTMENT FOR EXPOSED CONDUIT PER NEC 310.15(B)(3)(c) | 32° |
| EXPECTED WIRE TEMP (In Celsius) | 32°+22° = 54° |
| TEMP. CORRECTION PER NEC TABLE 310.15(B)(2)(a) | 0.76 |
| NO. OF CURRENT CARRYING CONDUCTORS | 4 |
| CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) | 0.8 |
| CIRCUIT CONDUCTOR SIZE | 10 AWG |
| CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 35A |

| | |
|---|---|
| REQUIRED CIRCUIT CONDUCTOR AMPACITY PER NEC 690.8(A&B)<br>1.25 X OPTIMIZER ISC | 18.75A |
| DERATED AMPACITY OF CIRCUIT CONDUCTOR<br>TEMP. CORRECTION PER NEC TABLE 310.15(B)(2)(a) X<br>CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) X<br>CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 21.28A |
| Result should be greater than (18.75A) otherwise less the entry for circuit conductor size and ampacity | |

## AC CONDUCTOR AMPACITY CALCULATIONS: FROM AC COMBINER TO MSP:

| | |
|---|---|
| No. OF INVERTER | 1 |
| EXPECTED WIRE TEMP (In Celsius) | 32° |
| TEMP. CORRECTION PER TABLE 310.15(B)(2)(a) | 0.94 |
| NO. OF CURRENT CARRYING CONDUCTORS | 3 |
| CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) | 1 |
| CIRCUIT CONDUCTOR SIZE | 8 AWG |
| CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 50A |

| | |
|---|---|
| REQUIRED CIRCUIT CONDUCTOR AMPACITY PER NEC 690.8(A&B)<br>1.25 X MAX INVERTER OUTPUT CURRENT | 40.0A |
| DERATED AMPACITY OF CIRCUIT CONDUCTOR<br>TEMP. CORRECTION PER TABLE 310.15(B)(2)(a) X<br>CONDUIT FILL CORRECTION PER NEC 310.15(B)(3)(a) X<br>CIRCUIT CONDUCTOR AMPACITY PER NEC TABLE 310.15(B)(16) | 47.0A |
| Result should be greater than (40.0A) otherwise less the entry for circuit conductor size and ampacity | |

## ELECTRICAL NOTES

1.) ALL EQUIPMENT TO BE LISTED BY UL OR OTHER NRTL, AND LABELED FOR ITS APPLICATION.
2.) ALL CONDUCTORS SHALL BE COPPER, RATED FOR 600 V AND 90 DEGREE C WET ENVIRONMENT.
3.) WIRING, CONDUIT, AND RACEWAYS MOUNTED ON ROOFTOPS SHALL BE ROUTED DIRECTLY TO, AND LOCATED AS CLOSE AS POSSIBLE TO THE NEAREST RIDGE, HIP, OR VALLEY.
4.) WORKING CLEARANCES AROUND ALL NEW AND EXISTING ELECTRICAL EQUIPMENT SHALL COMPLY WITH NEC 110.26.
5.) DRAWINGS INDICATE THE GENERAL ARRANGEMENT OF SYSTEMS. CONTRACTOR SHALL FURNISH ALL NECESSARY OUTLETS, SUPPORTS, FITTINGS AND ACESSORIES TO FULFILL APPLICABLE CODES AND STANDARDS.
6.) WHERE SIZES OF JUNCTION BOXES, RACEWAYS, AND CONDUITS ARE NOT SPECIFIED, THE CONTRACTOR SHALL SIZE THEM ACCORDINGLY.
7.) ALL WIRE TERMINATIONS SHALL BE APPROPRIATELY LABELED AND READILY VISIBLE.
8.) MODULE GROUNDING CLIPS TO BE INSTALLED BETWEEN MODULE FRAME AND MODULE SUPPORT RAIL, PER THE GROUNDING CLIP MANUFACTURER'S INSTRUCTION.
9.) MODULE SUPPORT RAIL TO BE BONDED TO CONTINUOUS COPPER G.E.C. VIA WEEB LUG OR ILSCO GBL-4DBT LAY-IN LUG.
10.) THE POLARITY OF THE GROUNDED CONDUCTORS IS NEGATIVE

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
WIRING CALCULATIONS

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-5

**⚠ WARNING**
**ELECTRIC SHOCK HAZARD**
**DO NOT TOUCH TERMINALS**
**TERMINALS ON BOTH LINE AND**
**LOAD SIDES MAY BE ENERGIZED**
**IN THE OPEN POSITION**

LABEL LOCATION: 1
POINT OF INTERCONNECTION
PER CODE: NEC 690.17(E), CB

**PHOTOVOLTAIC SYSTEM AC DISCONNECT**
RATED AC OPERATING CURRENT 40 AMPS
AC NOMINAL OPERATING VOLTAGE 240 VOLTS

LABEL LOCATION: 7
POINT OF INTERCONNECTION
(PER CODE: NEC690.54)

11

**SOLAR PV SYSTEM EQUIPPED WITH RAPID SHUTDOWN**

TURN BACKFEED BREAKER TO THE "OFF" POSITION TO SHUT DOWN PV SYSTEM AND REDUCE SHOCK HAZARD IN THE ARRAY




**WARNING - Electric Shock Hazard**
No user serviceable parts inside
Contact authorized service provider for assistance

LABEL LOCATION: 2
JUNCTION BOXES (ROOF)
(PER CODE: NEC690.13.G.3 & NEC 690.13.G.4)

**WARNING**
INVERTER OUTPUT CONNECTION DO NOT RELOCATE THIS OVERCURRENT DEVICE

LABEL LOCATION: 8
POINT OF INTERCONNECTION
(PER CODE: NEC 705.12(D)(7))
[Not required if panelboard is rated not less than sum of ampere ratings of all overcurrent devices supplying it]

**WARNING: PHOTOVOLTAIC POWER SOURCE**

LABEL LOCATION: 3
CONDUIT, COMBINER BOX
(PER CODE: NEC690.31(G)(3)(4) & NEC 690.13(G)(4))

**CAUTION: SOLAR ELECTRIC SYSTEM CONNECTED**

LABEL LOCATION: 4
WEATHER RESISTANT MATERIAL, DURABLE ADHESIVE, UL969 AS STANDARD TO WEATHER RATING (UL LISTING OF MARKINGS NOT REQUIRED), MIN 3/8" LETTER HEIGHT ARIAL OR SIMILAR FONT NON-BOLD, PLACED WITHIN THE MAIN SERVICE DISCONNECT, PLACED ON THE OUTSIDE OF THE COVER WHEN DISCONNECT IS OPERABLE WITH SERVICE PANEL CLOSED. (PER CODE: NEC690.15, 690.13(B))

PHOTOVOLTAIC POWER SOURCE BREAKERS ARE BACKFEEDING 240 VOLTS 40.0 AMPS

LABEL LOCATION: 9
BACKFED BREAKER
[Inside or front of panel]

**SOLAR DISCONNECT**

LABEL LOCATION: 5
POINT OF INTERCONNECTION
(PER CODE: NEC690.13(B))

**MA SMART METER**

10

**⚠ WARNING DUAL POWER SOURCE**
**SECOND SOURCE IS PHOTOVOLTAIC SYSTEM**

LABEL LOCATION: 6
POINT OF INTERCONNECTION
(PER CODE: NEC 705.12(D)(4))

POWER TO THIS BUILDING IS ALSO SUPPLIED FROM THE FOLLOWING SOURCES WITH DISCONNECTS LOCATED AS SHOWN




ADHESIVE FASTENED SIGNS:
- THE LABEL SHALL BE SUITABLE FOR THE ENVIRONMENT WHERE IT IS INSTALLED.
- WHERE REQUIRED ELSEWHERE IN THIS CODE, ALL FIELD APPLIED LABELS, WARNINGS, AND MARKINGS SHOULD COMPLY WITH ANSI Z535.4 [NEC 110.21(B) FIELD MARKING].
- ADHESIVE FASTENED SIGNS MAY BE ACCEPTABLE IF PROPERLY ADHERED. VINYL SIGNS SHALL BE WEATHER RESISTANT [IFC 605.11.1.3]

MARKING CONTENT AND FORMAT
- RED BACKGROUND
- WHITE LETTERING
- MINIMUM 3/8" LETTER HEIGHT
- ALL CAPITAL LETTERS
- ARIAL OR SIMILAR FONT, NON-BOLD
- REFLECTIVE WEATHER RESISTANT MATERIAL SUITABLE FOR THE ENVIRONMENT (DURABLE ADHESIVE MATERIALS MUST MEET THIS REQUIREMENT)
- TO BE ATTACHED USING POP-RIVETS

BREITER PLANET PROPERTIES

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS
MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
PLACARDS

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-6

powered by Q.ANTUM DUO

# Q.PEAK DUO L-G5.2

## 380-400

AWARD-WINNING
HIGH PERFORMANCE






**LOW ELECTRICITY GENERATION COSTS**
Higher yield per surface area, lower BOS costs, higher power classes, and an efficiency rate of up to 20.1%.

**INNOVATIVE ALL-WEATHER TECHNOLOGY**
Optimal yields, whatever the weather with excellent low-light and temperature behaviour.

**ENDURING HIGH PERFORMANCE**
Long-term yield security with Anti LID Technology, Anti PID Technology[1], Hot-Spot Protect and Traceable Quality Tra.Q™.

**EXTREME WEATHER RATING**
High-tech aluminum alloy frame, tested to the extreme in Australia for Australian Conditions at James Cook University Cyclone Testing Station.

**A RELIABLE INVESTMENT**
Inclusive 12-year product warranty and 25-year linear performance warranty[2].

**STATE OF THE ART MODULE TECHNOLOGY**
Q.ANTUM DUO combines cutting edge cell separation and innovative wiring with Q.ANTUM Technology.

[1] APT test conditions according to IEC/TS 62804-1:2015, method B (−1500V, 168h)
[2] See data sheet on rear for further information.

**THE IDEAL SOLUTION FOR:**

- Rooftop arrays on commercial/industrial buildings
- Ground-mounted solar power plants

Engineered in Germany

Q CELLS

## MECHANICAL SPECIFICATION

| | |
|---|---|
| Format | 2015 mm × 1000 mm × 35 mm (including frame) |
| Weight | 23.5 kg |
| Front Cover | 3.2 mm thermally pre-stressed glass with anti-reflection technology |
| Back Cover | Composite film |
| Frame | Anodised aluminium |
| Cell | 6 × 24 monocrystalline Q.ANTUM solar half cells |
| Junction box | 70-85 mm × 50-70 mm × 13-21 mm<br>Protection class IP67, with bypass diodes |
| Cable | 4 mm² Solar cable; (+) ≥1350 mm, (–) ≥1350 mm |
| Connector | Stäubli MC4-Evo2; IP67 |




## ELECTRICAL CHARACTERISTICS

| POWER CLASS | | | 380 | 385 | 390 | 395 | 400 |
|---|---|---|---|---|---|---|---|
| MINIMUM PERFORMANCE AT STANDARD TEST CONDITIONS, STC[1] (POWER TOLERANCE +5 W / −0 W) | | | | | | | |
| Minimum: Power at MPP[1] | $P_{MPP}$ | [W] | 380 | 385 | 390 | 395 | 400 |
| Minimum: Short Circuit Current[1] | $I_{SC}$ | [A] | 10.05 | 10.10 | 10.14 | 10.19 | 10.24 |
| Minimum: Open Circuit Voltage[1] | $V_{OC}$ | [V] | 47.95 | 48.21 | 48.48 | 48.74 | 49.00 |
| Minimum: Current at MPP | $I_{MPP}$ | [A] | 9.57 | 9.61 | 9.66 | 9.70 | 9.75 |
| Minimum: Voltage at MPP | $V_{MPP}$ | [V] | 39.71 | 40.05 | 40.38 | 40.71 | 41.04 |
| Minimum: Efficiency[1] | $\eta$ | [%] | ≥18.9 | ≥19.1 | ≥19.4 | ≥19.6 | ≥19.9 |
| MINIMUM PERFORMANCE AT NORMAL OPERATING CONDITIONS, NMOT[2] | | | | | | | |
| Minimum: Power at MPP | $P_{MPP}$ | [W] | 284.4 | 288.2 | 291.9 | 295.6 | 299.4 |
| Minimum: Short Circuit Current | $I_{SC}$ | [A] | 8.10 | 8.14 | 8.17 | 8.21 | 8.25 |
| Minimum: Open Circuit Voltage | $V_{OC}$ | [V] | 45.21 | 45.46 | 45.71 | 45.96 | 46.21 |
| Minimum: Current at MPP | $I_{MPP}$ | [A] | 7.53 | 7.57 | 7.60 | 7.64 | 7.67 |
| Minimum: Voltage at MPP | $V_{MPP}$ | [V] | 37.77 | 38.08 | 38.40 | 38.71 | 39.02 |

[1]Measurement tolerances $P_{MPP}$ ±3%; $I_{SC}$; $V_{OC}$ ±5% at STC: 1000 W/m², 25±2 °C, AM 1.5G according to IEC 60904-3 • [2]800 W/m², NMOT, spectrum AM 1.5G

### Q CELLS PERFORMANCE WARRANTY




At least 98% of nominal power during first year. Thereafter max. 0.54% degradation per year. At least 93.1% of nominal power up to 10 years. At least 85% of nominal power up to 25 years.

All data within measurement tolerances. Full warranties in accordance with the warranty terms of the Q CELLS sales organisation of your respective country.

### PERFORMANCE AT LOW IRRADIANCE




Typical module performance under low irradiance conditions in comparison to STC conditions (25 °C, 1000 W/m²).

### TEMPERATURE COEFFICIENTS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Temperature Coefficient of $I_{SC}$ | $\alpha$ | [% / K] | +0.04 | Temperature Coefficient of $V_{OC}$ | $\beta$ | [% / K] | −0.27 |
| Temperature Coefficient of $P_{MPP}$ | $\gamma$ | [% / K] | −0.36 | Normal Module Operating Temperature | NMOT | [°C] | 43±3 |

## PROPERTIES FOR SYSTEM DESIGN

| | | | | | |
|---|---|---|---|---|---|
| Maximum System Voltage | $V_{SYS}$ | [V] | 1500 (IEC) / 1500 (UL) | Safety Class | II |
| Maximum Reverse Current | $I_R$ | [A] | 20 | Fire Rating | C / TYPE 1 |
| Max. Design Load, Push / Pull | | [Pa] | 3600 / 1600 | Permitted Module Temperature on Continuous Duty | −40 °C - +85 °C |
| Max. Test Load, Push / Pull | | [Pa] | 5400 / 2400 | | |

## QUALIFICATIONS AND CERTIFICATES

IEC 61215:2016; IEC 61730:2016, Application Class II;
This data sheet complies with DIN EN 50380.

C US Certified UL 1703 (254141)

## PACKAGING INFORMATION

| | |
|---|---|
| Number of Modules per Pallet | 29 |
| Number of Pallets per Trailer (24 t) | 24 |
| Number of Pallets per 40' HC-Container (26 t) | 22 |
| Pallet Dimensions (L × W × H) | 2080 × 1150 × 1190 mm |
| Pallet Weight | 742 kg |

**Note:** Installation instructions must be followed. See the installation and operating manual or contact our technical service department for further information on approved installation and use of this product.

**Made in Korea**

**Hanwha Q CELLS Australia Pty Ltd**
Suite 1, Level 1, 15 Blue Street, Sydney, NSW 2060, Australia | **TEL** +61 (0)2 9016 3033 | **FAX** +61 (0)2 9016 3032 | **EMAIL** q-cells-australia@q-cells.com | **WEB** www.q-cells.com/au

Specifications subject to technical changes © **Q CELLS** Q.PEAK DUO L-G5.2_380-400_2019-03_Rev02_AU

Engineered in Germany

Q CELLS

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-7

# Single Phase Inverter with HD-Wave Technology

## for North America

SE3000H-US / SE3800H-US / SE5000H-US / SE6000H-US / SE7600H-US / SE10000H-US / SE11400H-US

INVERTERS

12-25 YEAR WARRANTY




### Optimized installation with HD-Wave technology

- Specifically designed to work with power optimizers
- Record-breaking efficiency
- Fixed voltage inverter for longer strings
- Integrated arc fault protection and rapid shutdown for NEC 2014 and 2017, per article 690.11 and 690.12
- UL1741 SA certified, for CPUC Rule 21 grid compliance
- Extremely small
- Built-in module-level monitoring
- Outdoor and indoor installation
- Optional: Revenue grade data, ANSI C12.20 Class 0.5 (0.5% accuracy)

solaredge.com

solaredge

# Single Phase Inverter with HD-Wave Technology for North America

SE3000H-US / SE3800H-US / SE5000H-US / SE6000H-US/
SE7600H-US / SE10000H-US / SE11400H-US

| | SE3000H-US | SE3800H-US | SE5000H-US | SE6000H-US | SE7600H-US | SE10000H-US | SE11400H-US | |
|---|---|---|---|---|---|---|---|---|
| **OUTPUT** | | | | | | | | |
| Rated AC Power Output | 3000 | 3800 @ 240V<br>3300 @ 208V | 5000 | 6000 @ 240V<br>5000 @ 208V | 7600 | 10000 | 11400 @ 240V<br>10000 @ 208V | VA |
| Maximum AC Power Output | 3000 | 3800 @ 240V<br>3300 @ 208V | 5000 | 6000 @ 240V<br>5000 @ 208V | 7600 | 10000 | 11400 @ 240V<br>10000 @ 208V | VA |
| AC Output Voltage Min.-Nom.-Max. (211 - 240 - 264) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | Vac |
| AC Output Voltage Min.-Nom.-Max. (183 - 208 - 229) | - | ✓ | - | ✓ | - | - | ✓ | Vac |
| AC Frequency (Nominal) | 59.3 - 60 - 60.5(1) | | | | | | | Hz |
| Maximum Continuous Output Current @240V | 12.5 | 16 | 21 | 25 | 32 | 42 | 47.5 | A |
| Maximum Continuous Output Current @208V | - | 16 | - | 24 | - | - | 48.5 | A |
| GFDI Threshold | 1 | | | | | | | A |
| Utility Monitoring, Islanding Protection, Country Configurable Thresholds | Yes | | | | | | | |
| **INPUT** | | | | | | | | |
| Maximum DC Power @240V | 4650 | 5900 | 7750 | 9300 | 11800 | 15500 | 17650 | W |
| Maximum DC Power @208V | - | 5100 | - | 7750 | - | - | 15500 | W |
| Transformer-less, Ungrounded | Yes | | | | | | | |
| Maximum Input Voltage | 480 | | | | | | | Vdc |
| Nominal DC Input Voltage | 380 | | | | 400 | | | Vdc |
| Maximum Input Current @240V(2) | 8.5 | 10.5 | 13.5 | 16.5 | 20 | 27 | 30.5 | Adc |
| Maximum Input Current @208V(2) | - | 9 | - | 13.5 | - | - | 27 | Adc |
| Max. Input Short Circuit Current | 45 | | | | | | | Adc |
| Reverse-Polarity Protection | Yes | | | | | | | |
| Ground-Fault Isolation Detection | 600kΩ Sensitivity | | | | | | | |
| Maximum Inverter Efficiency | 99 | 99.2 | | | | | | % |
| CEC Weighted Efficiency | 99 | | | | | | 99 @ 240V<br>98.5 @ 208V | % |
| Nighttime Power Consumption | < 2.5 | | | | | | | W |
| **ADDITIONAL FEATURES** | | | | | | | | |
| Supported Communication Interfaces | RS485, Ethernet, ZigBee (optional), Cellular (optional) | | | | | | | |
| Revenue Grade Data, ANSI C12.20 | Optional(3) | | | | | | | |
| Rapid Shutdown - NEC 2014 and 2017 690.12 | Automatic Rapid Shutdown upon AC Grid Disconnect | | | | | | | |
| **STANDARD COMPLIANCE** | | | | | | | | |
| Safety | UL1741, UL1741 SA, UL1699B, CSA C22.2, Canadian AFCI according to T.I.L. M-07 | | | | | | | |
| Grid Connection Standards | IEEE1547, Rule 21, Rule 14 (HI) | | | | | | | |
| Emissions | FCC Part 15 Class B | | | | | | | |
| **INSTALLATION SPECIFICATIONS** | | | | | | | | |
| AC Output Conduit Size / AWG Range | 1" Maximum / 14-6 AWG | | | | | 1" Maximum /14-4 AWG | | |
| DC Input Conduit Size / # of Strings / AWG Range | 1" Maximum / 1-2 strings / 14-6 AWG | | | | | 1" Maximum / 1-3 strings / 14-6 AWG | | |
| Dimensions with Safety Switch (HxWxD) | 17.7 x 14.6 x 6.8 / 450 x 370 x 174 | | | | | 21.3 x 14.6 x 7.3 / 540 x 370 x 185 | | in / mm |
| Weight with Safety Switch | 22 / 10 | | 25.1 / 11.4 | 26.2 / 11.9 | | 38.8 / 17.6 | | lb / kg |
| Noise | < 25 | | | | <50 | | | dBA |
| Cooling | Natural Convection | | | | | | | |
| Operating Temperature Range | -13 to +140 / -25 to +60(4) (-40˚F / -40˚C option)(5) | | | | | | | ˚F / ˚C |
| Protection Rating | NEMA 4X (Inverter with Safety Switch) | | | | | | | |

(1) For other regional settings please contact SolarEdge support
(2) A higher current source may be used; the inverter will limit its input current to the values stated
(3) Revenue grade inverter P/N: SExxxxH-US000NNC2
(4) For power de-rating information refer to: https://www.solaredge.com/sites/default/files/se-temperature-derating-note-na.pdf
(5) -40 version P/N: SExxxxH-US000NNU4

© SolarEdge Technologies, Inc. All rights reserved. SOLAREDGE, the SolarEdge logo, OPTIMIZED BY SOLAREDGE are trademarks or registered trademarks of SolarEdge Technologies, Inc. All other trademarks mentioned herein are trademarks of their respective owners. Date: 03/2019/V01/ENG NAM. Subject to change without notice.

RoHS

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-8

# Power Optimizer

## For North America

P320 / P340 / P370 / P400 / P401 / P405 / P485 / P505




POWER OPTIMIZER

## PV power optimization at the module-level

- Specifically designed to work with SolarEdge inverters
- Up to 25% more energy
- Superior efficiency (99.5%)
- Mitigates all types of module mismatch losses, from manufacturing tolerance to partial shading
- Flexible system design for maximum space utilization
- Fast installation with a single bolt
- Next generation maintenance with module-level monitoring
- Meets NEC requirements for arc fault protection (AFCI) and Photovoltaic Rapid Shutdown System (PVRSS)
- Module-level voltage shutdown for installer and firefighter safety

solaredge.com

solaredge

# Power Optimizer

## For North America

P320 / P340 / P370 / P400 / P401 / P405 / P485 / P505

| Optimizer model (typical module compatibility) | P320 (for 60-cell modules) | P340 (for high-power 60-cell modules) | P370 (for higher-power 60 and 72-cell modules) | P400 (for 72 & 96-cell modules) | P401 (for high power 60 and 72 cell modules) | P405 (for high-voltage modules) | P485 (for high-voltage modules) | P505 (for higher current modules) | |
|---|---|---|---|---|---|---|---|---|---|
| **INPUT** | | | | | | | | | |
| Rated Input DC Power[1] | 320 | 340 | 370 | 400 | | 405 | 485 | 505 | W |
| Absolute Maximum Input Voltage (Voc at lowest temperature) | 48 | | 60 | 80 | 60 | 125[2] | | 83[2] | Vdc |
| MPPT Operating Range | 8 - 48 | | 8 - 60 | 8 - 80 | 8-60 | 12.5 - 105 | | 12.5 - 83 | Vdc |
| Maximum Short Circuit Current (Isc) | 11 | | | 10.1 | 11.75 | 11 | | 14 | Adc |
| Maximum Efficiency | 99.5 | | | | | | | | % |
| Weighted Efficiency | 98.8 | | | | | | | 98.6 | % |
| Overvoltage Category | II | | | | | | | | |
| **OUTPUT DURING OPERATION (POWER OPTIMIZER CONNECTED TO OPERATING SOLAREDGE INVERTER)** | | | | | | | | | |
| Maximum Output Current | 15 | | | | | | | | Adc |
| Maximum Output Voltage | 60 | | | | | 85 | | | Vdc |
| **OUTPUT DURING STANDBY (POWER OPTIMIZER DISCONNECTED FROM SOLAREDGE INVERTER OR SOLAREDGE INVERTER OFF)** | | | | | | | | | |
| Safety Output Voltage per Power Optimizer | 1 ± 0.1 | | | | | | | | Vdc |
| **STANDARD COMPLIANCE** | | | | | | | | | |
| EMC | FCC Part15 Class B, IEC61000-6-2, IEC61000-6-3 | | | | | | | | |
| Safety | IEC62109-1 (class II safety), UL1741 | | | | | | | | |
| Material | UL94 V-0 , UV Resistant | | | | | | | | |
| RoHS | Yes | | | | | | | | |
| **INSTALLATION SPECIFICATIONS** | | | | | | | | | |
| Maximum Allowed System Voltage | 1000 | | | | | | | | Vdc |
| Compatible inverters | All SolarEdge Single Phase and Three Phase inverters | | | | | | | | |
| Dimensions (W x L x H) | 129 x 153 x 27.5 / 5.1 x 6 x 1.1 | | | 129 x 153 x 33.5 / 5.1 x 6 x 1.3 | 129 x 153 x 29.5 /5.1 x 6 x 1.16 | 129 x 159 x 49.5 / 5.1 x 6.3 x 1.9 | | 129 x 162 x 59 / 5.1 x 6.4 x 2.3 | mm / in |
| Weight (including cables) | 630 / 1.4 | | | 750 / 1.7 | 655 / 1.5 | 845 / 1.9 | | 1064 / 2.3 | gr / lb |
| Input Connector | MC4[3] | | | | | | Single or dual MC4[3][4] | MC4[3] | |
| Input Wire Length | 0.16 / 0.52 | | | | | | | | m / ft |
| Output Wire Type / Connector | Double Insulated / MC4 | | | | | | | | |
| Output Wire Length | 0.9 / 2.95 | | 1.2 / 3.9 | | | | | | m / ft |
| Operating Temperature Range[5] | -40 - +85 / -40 - +185 | | | | | | | | ˚C / ˚F |
| Protection Rating | IP68 / NEMA6P | | | | | | | | |
| Relative Humidity | 0 - 100 | | | | | | | | % |

(1) Rated power of the module at STC will not exceed the optimizer "Rated Input DC Power". Modules with up to +5% power tolerance are allowed
(2) NEC 2017 requires max input voltage be not more than 80V
(3) For other connector types please contact SolarEdge
(4) For dual version for parallel connection of two modules use P485-4NMDMRM. In the case of an odd number of PV modules in one string, installing one P485 dual version power optimizer connected to one PV module. When connecting a single module seal the unused input connectors with the supplied pair of seals.
(5) For ambient temperature above +85°C / +185°F power de-rating is applied. Refer to Power Optimizers Temperature De-Rating Technical Note for more details.

| PV System Design Using a SolarEdge Inverter[6][7] | | Single Phase HD-Wave | Single phase | Three Phase for 208V grid | Three Phase for 277/480V grid | |
|---|---|---|---|---|---|---|
| Minimum String Length (Power Optimizers) | P320, P340, P370, P400, P401 | 8 | | 10 | 18 | |
| | P405, P485, P505 | 6 | | 8 | 14 | |
| Maximum String Length (Power Optimizers) | | 25 | | 25 | 50[8] | |
| Maximum Power per String | | 5700 (6000 with SE7600-US - SE11400-US) | 5250 | 6000[9] | 12750[10] | W |
| Parallel Strings of Different Lengths or Orientations | | Yes | | | | |

(6) For detailed string sizing information refer to: http://www.solaredge.com/sites/default/files/string_sizing_na.pdf
(7) It is not allowed to mix P405/P485/P505 with P320/P340/P370/P400/P401 in one string
(8) A string with more than 30 optimizers does not meet NEC rapid shutdown requirements; safety voltage will be above the 30V requirement
(9) For 208V grid: it is allowed to install up to 7,200W per string when the maximum power difference between each string is 1,000W
(10) For 277/480V grid: it is allowed to install up to 15,000W per string when the maximum power difference between each string is 2,000W

© SolarEdge Technologies Ltd. All rights reserved. SOLAREDGE, the SolarEdge logo, OPTIMIZED BY SOLAREDGE are trademarks or registered trademarks of SolarEdge Technologies, Inc. All other trademarks mentioned herein are trademarks of their respective owners. Date: 07/2020/V02/ENG NAM. Subject to change without notice.

Intertek RoHS

BREITER PLANET PROPERTIES

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-9

Tech Brief

IRONRIDGE

# XR Rail Family

## Solar Is Not Always Sunny

Over their lifetime, solar panels experience countless extreme weather events. Not just the worst storms in years, but the worst storms in 40 years. High winds capable of ripping panels from a roof, and snowfalls weighing enough to buckle a panel frame.

XR Rails are the structural backbone preventing these results. They resist uplift, protect against buckling and safely and efficiently transfer loads into the building structure. Their superior spanning capability requires fewer roof attachments, reducing the number of roof penetrations and the amount of installation time.



**Force-Stabilizing Curve**

Sloped roofs generate both vertical and lateral forces on mounting rails which can cause them to bend and twist. The curved shape of XR Rails is specially designed to increase strength in both directions while resisting the twisting. This unique feature ensures greater security during extreme weather and a longer system lifetime.

**Compatible with Flat & Pitched Roofs**

XR Rails are compatible with FlashFoot and other pitched roof attachments.

IronRidge offers a range of tilt leg options for flat roof mounting applications.

**Corrosion-Resistant Materials**

All XR Rails are made of marine-grade aluminum alloy, then protected with an anodized finish. Anodizing prevents surface and structural corrosion, while also providing a more attractive appearance.



Tech Brief

## XR Rail Family

The XR Rail Family offers the strength of a curved rail in three targeted sizes. Each size supports specific design loads, while minimizing material costs. Depending on your location, there is an XR Rail to match.



**XR10**

XR10 is a sleek, low-profile mounting rail, designed for regions with light or no snow. It achieves 6 foot spans, while remaining light and economical.

- 6' spanning capability
- Moderate load capability
- Clear anodized finish
- Internal splices available



**XR100**

XR100 is the ultimate residential mounting rail. It supports a range of wind and snow conditions, while also maximizing spans up to 8 feet.

- 8' spanning capability
- Heavy load capability
- Clear & black anodized finish
- Internal splices available



**XR1000**

XR1000 is a heavyweight among solar mounting rails. It's built to handle extreme climates and spans 12 feet or more for commercial applications.

- 12' spanning capability
- Extreme load capability
- Clear anodized finish
- Internal splices available

## Rail Selection

The following table was prepared in compliance with applicable engineering codes and standards. Values are based on the following criteria: ASCE 7-10, Roof Zone 1, Exposure B, Roof Slope of 7 to 27 degrees and Mean Building Height of 30 ft. Visit IronRidge.com for detailed span tables and certifications.

| Load | | Rail Span | | | | | |
|---|---|---|---|---|---|---|---|
| Snow (PSF) | Wind (MPH) | 4' | 5' 4" | 6' | 8' | 10' | 12' |
| None | 100 | | | | | | |
| | 120 | | | | | | |
| | 140 | XR10 | | XR100 | | XR1000 | |
| | 160 | | | | | | |
| 10-20 | 100 | | | | | | |
| | 120 | | | | | | |
| | 140 | | | | | | |
| | 160 | | | | | | |
| 30 | 100 | | | | | | |
| | 160 | | | | | | |
| 40 | 100 | | | | | | |
| | 160 | | | | | | |
| 50-70 | 160 | | | | | | |
| 80-90 | 160 | | | | | | |

© 2014 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information. Version 1.11

BREITER PLANET PROPERTIES

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-10

Tech Brief

IRONRIDGE

FlashFoot2

## The Strongest Attachment in Solar

IronRidge FlashFoot2 raises the bar in solar roof protection. The unique water seal design is both elevated and encapsulated, delivering redundant layers of protection against water intrusion. In addition, the twist-on Cap perfectly aligns the rail attachment with the lag bolt to maximize mechanical strength.




Tech Brief

## Installation Features




**(A) Alignment Markers**

Quickly align the flashing with chalk lines to find pilot holes.

**(B) Rounded Corners**

Makes it easier to handle and insert under the roof shingles.

**(C) Reinforcement Ribs**

Help to stiffen the flashing and prevent any bending or crinkling during installation.

## Benefits of Concentric Loading

Traditional solar attachments have a horizontal offset between the rail and lag bolt, which introduces leverage on the lag bolt and decreases uplift capacity.

FlashFoot2 is the only product to align the rail and lag bolt. This concentric loading design results in a stronger attachment for the system.




## Testing & Certification

**Structural Certification**

Designed and Certified for Compliance with the International Building Code & ASCE/SEI-7.

**Water Seal Ratings**

Water Sealing Tested to UL 441 Section 27 "Rain Test" and TAS 100-95 "Wind Driven Rain Test" by Intertek. Ratings applicable for composition shingle roofs having slopes between 2:12 and 12:12.

**UL 2703**

Conforms to UL 2703 Mechanical and Bonding Requirements. See Flush Mount Install Manual for full ratings.

© 2016 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information. Version 1.0

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-11

Tech Brief

IRONRIDGE

# UFO Family of Components

## Simplified Grounding for Every Application

The UFO family of components eliminates the need for separate grounding hardware by bonding solar modules directly to IronRidge XR Rails. All system types that feature the UFO family—Flush Mount, Tilt Mount and Ground Mount—are fully listed to the UL 2703 standard.

UFO hardware forms secure electrical bonds with both the module and the rail, resulting in many parallel grounding paths throughout the system. This leads to safer and more reliable installations.






Tech Brief

## System Diagram




Approved Enphase microinverters can provide equipment grounding of IronRidge systems, eliminating the need for grounding lugs and field installed equipment ground conductors (EGC). A minimum of two microinverters mounted to the same rail and connected to the same Engage cable is required. Refer to installation manuals for additional details.

## UL Certification

The IronRidge Flush Mount, Tilt Mount, and Ground Mount Systems have been listed to UL 2703 by Intertek Group plc.

UL 2703 is the standard for evaluating solar mounting systems. It ensures these devices will maintain strong electrical and mechanical connections over an extended period of time in extreme outdoor environments.

Go to IronRidge.com/UFO

| Cross-System Compatibility | | | |
|---|---|---|---|
| **Feature** | **Flush Mount** | **Tilt Mount** | **Ground Mount** |
| XR Rails | ✔ | ✔ | XR1000 Only |
| UFO/Stopper | ✔ | ✔ | ✔ |
| Bonded Splice | ✔ | ✔ | N/A |
| Grounding Lugs | 1 per Row | 1 per Row | 1 per Array |
| Microinverters & Power Optimizers | Enphase - M250-72, M250-60, M215-60, C250-72<br>Darfon - MIG240, MIG300, G320, G640<br>SolarEdge - P300, P320, P400, P405, P600, P700, P730 | | |
| Fire Rating | Class A | Class A | N/A |
| Modules | Tested or Evaluated with over 400 Framed Modules<br>Refer to installation manuals for a detailed list. | | |

© 2016 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information. Version 1.10

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-12

Tech Brief

IRONRIDGE

# Integrated Grounding System

## Simplified Grounding

### For Greater Safety & Lower Cost

Traditionally, solar modules are grounded by attaching lugs, bolts or clips to the module frame, then connecting these to a copper conductor that runs throughout the array. This process adds time and cost to the installation, and often results in improper grounding, creating significant long-term safety risks.

The IronRidge Integrated Grounding System solves these challenges by bonding modules directly to the mounting rails. This approach eliminates separate module grounding hardware, and it creates many parallel grounding paths throughout the array, providing greater safety for system owners.




**Grounding Mid Clamp**
Each Grounding Mid Clamp pierces through the anodized coatings of both the module frame and the mounting rail to form secure electrical bonds, which are repeated throughout the array.

**Grounding Strap**
Grounding Straps are used to bond rail-to-rail connections. They are only required on the rail with the grounding lug.

**Grounding Lug**
A single Grounding Lug connects an entire row of PV modules to the grounding conductor.

Tech Brief

## Installation Overview

**1 Install Roof Attachments**

- Install appropriate roof flashing and/or standoff for roof type.
- Attach L-Feet to flashing or standoff.



**2 Prepare Rail Connections**

- Insert splice into first rail, then secure with Grounding Strap and self-drilling screw.
- Slide second rail over splice, then secure with opposite end of Grounding Strap and self-drilling screw.



**3 Mount & Ground Rails**

- Attach rails to L-Feet and level rails.
- Install one Grounding Lug per row of modules.
- Connect Grounding Lug to grounding conductor.



**4 Install Modules & Clamps**

- Install first module using End Clamps and Grounding Mid Clamps.
- Install additional modules using Grounding Mid Clamps.
- Finish row with a second pair of End Clamps.



## Testing & Certification

The IronRidge Integrated Grounding System has been tested and certified to UL 2703 by Intertek Group plc.

UL 2703 is a proposed UL standard for evaluating solar module mounting and clamping devices. It ensures these devices will maintain strong electrical and mechanical connections over an extended period of time in extreme outdoor environments.

The testing process closely mirrors that of UL 1703, the solar module testing standard, including temperature and humidity cycling, electrical and mechanical load testing, and manufacturing quality reviews.

### Module Frame Compatibility




| Dimension | Range |
|---|---|
| A | 31.0mm - 51.0mm |
| B | 5.08mm (minimum) |

Any module frames whose parameters are not listed in the provided table have not been tested for compatibility.

The Grounding Clamp has proven robust in grounding 60-cell and 72-cell solar module frames with box construction and a range of anodization thicknesses.

All solar modules listed to UL 1703 and with frame construction within the parameters stated above are compatible with the IronRidge Integrated Grounding System.

Go to ironridge.com/ig

© 2013 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information.

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-13

Tech Brief

IRONRIDGE

# Class A Fire Rating

## Background

All roofing products are tested and classified for their ability to resist fire.

Recently, these fire resistance standards were expanded to include solar equipment as part of the roof system. Specifically, this requires the modules, mounting hardware and roof covering to be tested together as a system to ensure they achieve the same fire rating as the original roof covering.

These new requirements are being adopted throughout the country in 2016.

## IronRidge Certification

IronRidge was the first company to receive a Class A Fire Rating—the highest possible rating—from Intertek Group plc., a Nationally Recognized Testing Laboratory.

IronRidge Flush Mount and Tilt Mount Systems were tested on sloped and flat roofs in accordance with the new UL 1703 & UL 2703 test standards. The testing evaluated the system's ability to resist flame spread, burning material and structural damage to the roof.

Refer to the table below to determine the requirements for achieving a Class A Fire Rating on your next project.

## Fire Testing Process

### Test Setup

**Solar Modules**
Solar modules are given a Type classification based on their materials and construction.

**Mounting System**
Mounting is tested as part of a system that includes type-tested modules and fire-rated roof covering.

**Roof Covering**
Roof covering products are given a Fire Class Rating of A, B or C based on their tested fire resistance.



### Burning Brand Test



A burning wooden block is placed on module as a fan blows at 12 mph. Flame cannot be seen on underside of roof within 90 minutes.

### Spread of Flame Test



Flame at southern edge of roof is aimed up the roof as a fan blows at 12 mph. The flame cannot spread 6 feet or more in 10 minutes.

| System | Roof Slope | Module | Fire Rating* |
|---|---|---|---|
| Flush Mount | Any Slope | Type 1, 2, & 3 | Class A |
| Tilt Mount | ≤ 6 Degrees | Type 1, 2, & 3 | Class A |

*Class A rated PV systems can be installed on Class A, B, and C roofs.

Tech Brief

## Frequently Asked Questions

**What is a "module type"?**

The new UL1703 standard introduces the concept of a PV module type, based on 4 construction parameters and 2 fire performance parameters. The purpose of this classification is to certify mounting systems without needing to test it with every module.

**What roofing materials are covered?**

All fire rated roofing materials are covered within this certification including composition shingle, clay and cement tile, metal, and membrane roofs.

**What if I have a Class C roof, but the jurisdiction now requires Class A or B?**

Generally, older roofs will typically be "grandfathered in", and will not require re-roofing. However, if 50% or more of the roofing material is replaced for the solar installation the code requirement will be enforced.

**Where is the new fire rating requirement code listed?**

*2012 IBC: 1509.7.2 Fire classification. Rooftop mounted photovoltaic systems shall have the same fire classification as the roof assembly required by Section 1505.*

**Where is a Class A Fire Rating required?**

The general requirement for roofing systems in the IBC refers to a Class C fire rating. Class A or B is required for areas such as Wildland Urban Interface areas (WUI) and for very high fire severity areas. Many of these areas are found throughout the western United States. California has the most Class A and B roof fire rating requirements, due to wild fire concerns.

**Are standard mid clamps covered?**

Mid clamps and end clamps are considered part of the PV "system", and are covered in the certification.

**What attachments and flashings are deemed compatible with Class A?**

Attachments and their respective flashings are not constituents of the rating at this time. All code-compliant flashing methods are acceptable from a fire rating standpoint.

**What mounting height is acceptable?**

UL fire testing was performed with a gap of 5", which is considered worst case in the standard. Therefore, the rating is applicable to any module to roof gap.

**Am I required to install skirting to meet the fire code?**

No, IronRidge achieved a Class A fire rating without any additional racking components.

**What determines Fire Classification?**

Fire Classification refers to a fire-resistance rating system for roof covering materials based on their ability to withstand fire exposure.

*Class A - effective against severe fire exposure*
*Class B - effective against moderate fire exposure*
*Class C - effective against light fire exposure*

**What if the roof covering is not Class A rated?**

The IronRidge Class A rating will not diminish the fire rating of the roof, whether Class A, B, or C.

**What tilts is the tilt mount system fire rated for?**

The tilt mount system is rated for 1 degrees and up and any roof to module gap, or mounting height.

### More Resources

**Installation Manuals**
Visit our website for manuals that include UL 2703 Listing and Fire Rating Classification.
Go to IronRidge.com

**Engineering Certification Letters**
We offer complete engineering resources and pre-stamped certification letters.
Go to IronRidge.com

© 2016 IronRidge, Inc. All rights reserved. Visit www.ironridge.com or call 1-800-227-9523 for more information. Version 1.20

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO

302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-14

IRONRIDGE

28357 Industrial Blvd.
Hayward, CA 94545
1-800-227-9523
IronRidge.com

**Attn:** Corey Geiger, COO, IronRidge Inc.
**Date:** December 31st, 2019

**Re:** Structural Certification and Span Tables for the IronRidge Flush Mount System

This letter addresses the structural performance and code compliance of IronRidge's Flush Mount System. The contents of the letter shall be read in its entirety before applying to any project design. The Flush Mount System is a proprietary rooftop mounting system used to support photovoltaic (PV) modules installed in portrait or landscape orientation and set parallel to the underlying roof surface. PV modules are supported by extruded aluminum XR Rails and secured to the rails with IronRidge mounting clamps. The XR Rails are side mounted to a selected roof attachment with 3/8" stainless steel bonding hardware and then attached directly to the roof structure or to a stanchion that is fastened to the underlying roof structure. Assembly details of a typical Flush Mount installation and its core components are shown in Exhibit EX-0015.

The IronRidge Flush Mount System is designed and certified to the structural requirements of the reference standards listed below, for the load conditions and configurations tabulated in the attached span tables.

- ASCE/SEI 7-16 Minimum Design Loads for Buildings and Other Structures (ASCE 7-16)
- 2018 International Building Code (IBC-2018)
- 2019 California Building Code (CBC-2019)
- 2015 Aluminum Design Manual (ADM-2015)

The tables included in this letter provide the maximum allowable spans of XR Rails in the Flush Mount System for the respective loads and configurations listed, covering wind exposure categories B, C, & D, roof zones provided in ASCE 7-16 for gable & hip roof profiles, and roof slopes of 8° to 45°. The tabulated spans are applicable when the following conditions are met:

1. *Span* is the distance between two adjacent roof attachment points (measured at the center of the attachment fastener).
2. The underlying roof pitch, measured between the roof surface and horizontal plane, is 45° or less.
3. The *mean roof height*, defined as the average of the roof eave height and the roof ridge height measured from grade, does not exceed 30 feet.
4. A clearance from the underside of the array to the roof surface of 2" minimum shall be provided and the height of the array, the distance from the module top surface to the roof surface (defined as $h_2$), shall not exceed 10".
5. Module length and area shall not exceed the maximum values listed on the respective span tables.
6. All Flush Mount components shall be installed in a professional workmanlike manner per IronRidge's *Flush Mount Installation Manual* and other applicable standards for the general roof construction practice.

© 2019 IronRidge, Inc.


IRONRIDGE

28357 Industrial Blvd.
Hayward, CA 94545
1-800-227-9523
IronRidge.com

The span tables provided in this letter are certified based on the structural performance of IronRidge XR Rails only with no consideration of the structural adequacy of the chosen roof attachments, PV modules, or the underlying roof supporting members. It is the responsibility of the installer or system designer to verify the structural capacity and adequacy of the aforementioned system components in regards to the applied or resultant loads of any chosen array configuration.

Sincerely,

REGISTERED PROFESSIONAL ENGINEER
GANG XUAN
NO. 6504
STRUCTURAL
STATE OF CALIFORNIA

**Date Sealed:**
2019.12.31
15:21:27
-08'00'

Gang Xuan, SE

Senior Structural Engineer

.\References\IronRidge_XR100Flush_Certification_UFO_CA.pdf

© 2019 IronRidge, Inc.


BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-15

**Rail: XR100**

Hip Roof Flush Mount System Span Table (inches) - Portrait or Landscape Installation
Max Module Length: 67.5" (60 cell typ.), Max Module SF: 21 SF
Exposure B

| Wind Speed (mph) | Roof Slope (deg.) | Ground Snow: 0 psf | | | 10 psf | | | 20 psf | | | 30 psf | | | 40 psf | | | 50 psf | | | 60 psf | | | 70 psf | | | 80 psf | | | 90 psf | | | 100 psf | | | 110 psf | | | 120 psf | | | Exposed Mod. | | | Edge Mod. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 |
| 90 mph | 8-20 | 130 | 130 | 130 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 130 | 130 | 128 | 116 | 103 | 99 |
| | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 131 | 131 | 131 | 112 | 112 |
| | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 128 | 123 | 124 | 104 |
| 95 mph | 8-20 | 130 | 130 | 130 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 130 | 126 | 122 | 108 | 97 | 93 |
| | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 131 | 131 | 129 | 106 | 106 |
| | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 128 | 117 | 117 | 99 |
| 100 mph | 8-20 | 130 | 130 | 130 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 130 | 121 | 116 | 102 | 92 | 88 |
| | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 131 | 131 | 123 | 100 | 100 |
| | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 121 | 112 | 111 | 96 |
| 105 mph | 8-20 | 130 | 130 | 130 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 128 | 114 | 108 | 96 | 87 | 83 |
| | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 126 | 126 | 117 | 96 | 96 |
| | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 114 | 107 | 105 | 89 |
| 110 mph | 8-20 | 130 | 130 | 128 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 122 | 107 | 101 | 91 | 83 | 79 |
| | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 118 | 118 | 111 | 91 | 91 |
| | 28-45 | 128 | 128 | 128 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 128 | 128 | 109 | 101 | 100 | 84 |
| 115 mph | 8-20 | 130 | 128 | 123 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 116 | 101 | 96 | 87 | 79 | 75 |
| | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 112 | 112 | 106 | 87 | 87 |
| | 28-45 | 128 | 128 | 127 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 125 | 125 | 103 | 97 | 96 | 80 |
| 120 mph | 8-20 | 130 | 123 | 116 | 110 | 110 | 110 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 109 | 96 | 91 | 83 | 75 | 72 |
| | 21-27 | 131 | 131 | 131 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 131 | 107 | 107 | 101 | 83 | 83 |
| | 28-45 | 128 | 128 | 122 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 120 | 118 | 97 | 93 | 91 | 77 |
| 130 mph | 8-20 | 126 | 111 | 105 | 110 | 110 | 105 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 97 | 87 | 82 | 77 | 69 | 66 |
| | 21-27 | 131 | 121 | 121 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 122 | 96 | 96 | 93 | 76 | 76 |
| | 28-45 | 128 | 128 | 111 | 103 | 103 | 103 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 109 | 108 | 88 | 86 | 83 | 72 |
| 140 mph | 8-20 | 114 | 101 | 96 | 110 | 101 | 96 | 92 | 92 | 92 | 91 | 91 | 91 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 88 | 79 | 75 | 72 | 64 | 61 |
| | 21-27 | 131 | 111 | 111 | 105 | 105 | 105 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 112 | 88 | 88 | 86 | 72 | 72 |
| | 28-45 | 124 | 124 | 102 | 103 | 103 | 102 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 100 | 99 | 80 | 79 | 75 | 64 |
| 150 mph | 8-20 | 104 | 92 | 88 | 104 | 92 | 88 | 92 | 91 | 88 | 91 | 91 | 88 | 82 | 82 | 82 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 81 | 73 | 69 | 66 | 59 | 53 |
| | 21-27 | 128 | 102 | 102 | 105 | 102 | 102 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 101 | 80 | 80 | 79 | 65 | 65 |
| | 28-45 | 115 | 114 | 93 | 103 | 103 | 93 | 88 | 88 | 88 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 92 | 90 | 74 | 74 | 72 | 59 |
| 160 mph | 8-20 | 96 | 85 | 80 | 96 | 85 | 80 | 92 | 85 | 80 | 91 | 85 | 80 | 82 | 82 | 80 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 75 | 66 | 64 | 64 | 50 | 45 |
| | 21-27 | 119 | 96 | 96 | 105 | 96 | 96 | 89 | 89 | 89 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 96 | 74 | 74 | 74 | 61 | 61 |
| | 28-45 | 107 | 105 | 87 | 103 | 103 | 87 | 88 | 88 | 87 | 87 | 87 | 87 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 86 | 82 | 67 | 69 | 65 | 49 |
| 170 mph | 8-20 | 88 | 79 | 75 | 88 | 79 | 75 | 88 | 79 | 75 | 88 | 79 | 75 | 82 | 79 | 75 | 74 | 74 | 74 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 72 | 64 | 58 | 59 | 44 | 40 |
| | 21-27 | 111 | 88 | 88 | 105 | 88 | 88 | 89 | 88 | 88 | 87 | 87 | 87 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 87 | 69 | 69 | 69 | 54 | 54 |
| | 28-45 | 100 | 97 | 81 | 100 | 97 | 81 | 88 | 88 | 81 | 87 | 87 | 81 | 80 | 80 | 80 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 80 | 75 | 64 | 65 | 60 | 40 |
| 175 mph | 8-20 | 85 | 76 | 72 | 85 | 76 | 72 | 85 | 76 | 72 | 85 | 76 | 72 | 82 | 76 | 72 | 74 | 74 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 68 | 60 | 53 | 55 | 41 | 38 |
| | 21-27 | 107 | 84 | 84 | 105 | 84 | 84 | 89 | 84 | 84 | 87 | 84 | 84 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 84 | 66 | 66 | 67 | 50 | 50 |
| | 28-45 | 97 | 93 | 78 | 97 | 93 | 78 | 88 | 88 | 78 | 87 | 87 | 78 | 80 | 80 | 78 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 77 | 73 | 60 | 64 | 58 | 36 |
| 180 mph | 8-20 | 83 | 74 | 72 | 83 | 74 | 72 | 83 | 74 | 72 | 83 | 74 | 72 | 81 | 74 | 72 | 74 | 73 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 60 | 60 | 60 | 57 | 57 | 57 | 54 | 54 | 54 | 51 | 51 | 51 | 49 | 49 | 49 | 66 | 56 | 48 | 52 | 39 | 36 |
| | 21-27 | 103 | 82 | 82 | 103 | 82 | 82 | 89 | 82 | 82 | 87 | 82 | 82 | 81 | 81 | 81 | 76 | 76 | 76 | 72 | 72 | 72 | 65 | 65 | 65 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 52 | 52 | 52 | 50 | 50 | 50 | 80 | 64 | 64 | 65 | 48 | 48 |
| | 28-45 | 93 | 91 | 75 | 93 | 91 | 75 | 88 | 88 | 75 | 87 | 87 | 75 | 80 | 80 | 75 | 75 | 75 | 75 | 72 | 72 | 72 | 68 | 68 | 68 | 64 | 64 | 64 | 61 | 61 | 61 | 58 | 58 | 58 | 55 | 55 | 55 | 53 | 53 | 53 | 75 | 72 | 57 | 61 | 56 | 33 |

= min 72" span  = min 64" span  = min 48" span

= Shaded cells indicate conditions in which UFO Mid Clamp connection capacity is exceeded. See Note 9 on page 2 for details.

REV 12/12/2019

## Grouping of ASCE 7-16 Roof Zones (Hip)

| Roof Slope | 8° - 20° | | | 21° - 27° | | | 28° - 45° | | |
|---|---|---|---|---|---|---|---|---|---|
| Group | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 | Group 1 | Group 2 | Group 3 |
| ASCE 7-16 Roof Zones | 1 | 2r | 2e<br>3 | 1 | 2e<br>2r | 3 | 1 | 2e | 2r<br>3 |




Figure 3: ASCE Roof Zone Locations for Hip Roofs

**Notation** (Per ASCE 7-16)

**a** = 10% of least horizontal dimension or 0.4h, whichever is smaller, but not less than either 4% of least horizontal dimension or 3 ft (0.9 m). If an overhang exists, the edge distance shall be measured from the outside edge of the overhang. The horizontal dimensions used to compute the edge distance shall not include any overhang distances.

***B*** = Horizontal dimension of building measured normal to wind direction, in ft (m).

**h** = Mean roof height, in ft (m).

**θ** = Angle of plane of roof from horizontal, in degrees.

BREITER PLANET PROPERTIES

| REVISIONS | | |
|---|---|---|
| DESCRIPTION | DATE | REV |
| PERMIT PLAN | 12/04/20 | A |

Signature with Seal

PROJECT NAME & ADDRESS

MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
EQUIPMENT SPECIFICATION

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-16

# PROJECT DESCRIPTION:

25X400 HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
ROOF MOUNTED SOLAR PHOTOVOLTAIC SYSTEM
SYSTEM SIZE: 10.000 KW DC STC

EQUIPMENT SUMMARY
25 HANWHA Q-CELLS-Q.PEAK DUO LG5.2 400 (400W) MODULES
01 SOLAREDGE TECHNOLOGIES SE7600H-US INVERTER
25 P400 SOLAREDGE POWER OPTIMIZERS

AHJ NAME: CITY OF MELROSE
APN#: MELRM:A12P:0000098

GOVERNING CODES
THIS PROJECT SHALL COMPLY WITH THE FOLLOWING CODE
2020 NATIONAL ELECTRICAL CODE
2015 INTERNATIONAL RESIDENTIAL CODE
2015 INTERNATIONAL BUILDING CODE
2015 INTERNATIONAL ENERGY CONSERVATION CODE
2015 INTERNATIONAL PLUMBING CODE
2015 INTERNATIONAL MECHANICAL CODE
ALL OTHER ORDINANCES ADOPTED BY THE LOCAL GOVERNING AGENCIES.

NOTE
1.NUMBER OF STORIES : 2
2.CONSTRUCTION TYPE : V-B
3.OCCUPANCY : R

**LEGEND**
A-STRING-1(13 MODULES)
B-STRING-2(12 MODULES)

SHEET INDEX

| | |
|---|---|
| PV-1 | PLOT PLAN & VICINITY MAP |
| PV-2 | ROOF PLAN & MODULES |
| PV-2A | STRING LAYOUT |
| PV-3 | ATTACHMENT DETAIL |
| PV-4 | ELECTRICAL LINE DIAGRAM |
| PV-5 | WIRING CALCULATIONS |
| PV-6 | PLACARDS |
| PV-7+ | EQUIPMENT SPECIFICATIONS |




1 PLOT PLAN WITH ROOF PLAN
PV-1
0 4 16 32 Ft.

PROJECT SITE




2 HOUSE PHOTO
PV-1
SCALE: NTS

PROJECT SITE




3 VICINITY MAP
PV-1
SCALE: NTS

N W E S

BREITER PLANET PROPERTIES

REVISIONS

| DESCRIPTION | DATE | REV |
|---|---|---|
| PERMIT PLAN | 12/04/20 | A |
| | | |
| | | |

Signature with Seal

PROJECT NAME & ADDRESS
MARK DANKO & SANDY ASTGIK DANKO
302 MELROSE ST.
MELROSE, MA 02176
APN NO. # MELRM:A12P:0000098

SHEET NAME
PLOT PLAN & VICINITY MAP

SHEET SIZE
ANSI B
11" X 17"

SHEET NUMBER
PV-1

**HELLOSIGN** Audit Trail

| | |
|---|---|
| **TITLE** | Please sign your final solar design--Mark & Astgik Sandy... |
| **FILE NAME** | PV-16.pdf |
| **DOCUMENT ID** | 38c8a2d896ac664725c7777ab79e18a546b09d5c |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

| | | |
|---|---|---|
| SENT | **12** / **21** / **2020** 16:12:50 UTC | Sent for signature to Mark Danko (mwdanko@gmail.com) from projects@breiterplanet.com IP: 66.30.32.27 |
| VIEWED | **12** / **24** / **2020** 16:52:35 UTC | Viewed by Mark Danko (mwdanko@gmail.com) IP: 73.69.102.196 |
| SIGNED | **12** / **28** / **2020** 02:25:50 UTC | Signed by Mark Danko (mwdanko@gmail.com) IP: 73.69.102.196 |
| COMPLETED | **12** / **28** / **2020** 02:25:50 UTC | The document has been completed. |

BREITER PLANET PROPERTIES

Andrew Breiter-Wu <andrew@breiterplanet.com>

# CITY OF MELROSE - Your Building Permit Application Requires Additional Information

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org> Thu, Jan 5, 2023 at 4:17 PM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT requires additional information for your Building Permit Application:

Address: **302 MELROSE ST**
Project Category: **Solar**
Application Number: **BPA-22-1166**
**Additional Info Required: 10-27-22 SD**
**We need a letter from the structural engineer showing that the roof framing is sufficient for the solar installation**
**for this property**

If you are a registered SimpliCITY Permits user you can **Click Here To Provide Requested Additional Information**.

If you are NOT a registered SimpliCITY Permits user, please call or email the CITY OF MELROSE BUILDING DEPARTMENT with the requested additional information. Be sure to reference the application number above with all correspondence.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135

PLEASE DO NOT REPLY TO THIS EMAIL

BREITER PLANET PROPERTIES

Andrew Breiter-Wu <andrew@breiterplanet.com>

# CITY OF MELROSE Building Permit Application

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org> Fri, Oct 14, 2022 at 12:37 AM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT has received a Building Permit Application for your property:

Application Number: **BPA-22-1166**
Application Date: **10/14/2022**
Address: **302 MELROSE ST**
Project Category: **Solar**

Contractor Name: ANDREW BREITER-WU
Company Name: BREITER PLANET CONSTRUCTION
Contractor Phone: 617-334-5785
Contractor Email: Permitting@breiterplanet.com

Please contact the CITY OF MELROSE BUILDING DEPARTMENT with any questions.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135

PLEASE DO NOT REPLY TO THIS EMAIL

BREITER PLANET PROPERTIES

Andrew Breiter-Wu <andrew@breiterplanet.com>

# CITY OF MELROSE Electrical Permit Application

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org> Fri, Oct 14, 2022 at 12:48 AM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT has received a Electrical Permit Application for your property:

Application Number: **EPA-22-718**
Application Date: **10/14/2022**
Address: **302 MELROSE ST**
Project Category: **Solar**

Contractor Name: ANDREW BREITER-WU
Company Name: BREITER PLANET CONSTRUCTION
Contractor Phone: 617-334-5785
Contractor Email: Permitting@breiterplanet.com

Please contact the CITY OF MELROSE BUILDING DEPARTMENT with any questions.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135

PLEASE DO NOT REPLY TO THIS EMAIL

BREITER PLANET PROPERTIES

Andrew Breiter-Wu <andrew@breiterplanet.com>

## CITY OF MELROSE - Your Building Permit Application Has Been Submitted

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org> Fri, Oct 14, 2022 at 12:37 AM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT has received your Building Permit Application:

Address: **302 MELROSE ST**
Project Category: **Solar**
Application Number: **BPA-22-1166**

You will be notified via email when payment is required. Your permit card will not be issued until payment has been made.

Please Click Here to view your applications.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135

PLEASE DO NOT REPLY TO THIS EMAIL

BREITER PLANET PROPERTIES

Andrew Breiter-Wu <andrew@breiterplanet.com>

# CITY OF MELROSE - Your Electrical Permit Application Has Been Submitted

1 message

**sdoucet@cityofmelrose.org** <sdoucet@cityofmelrose.org> Fri, Oct 14, 2022 at 12:48 AM
To: Permitting@breiterplanet.com

The CITY OF MELROSE BUILDING DEPARTMENT has received your Electrical Permit Application:

Address: **302 MELROSE ST**
Project Category: **Solar**
Application Number: **EPA-22-718**

You will be notified via email when payment is required. Your permit card will not be issued until payment has been made.

Please Click Here to view your applications.

Thank you

CITY OF MELROSE
BUILDING DEPARTMENT
562 MAIN STREET
MELROSE, MA 02176
781-979-4135

PLEASE DO NOT REPLY TO THIS EMAIL

# **END OF EXHIBITS**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>Andrew Breiter-Wu<br><br>Debtor(s). | Chapter7<br>Case No. 25-11742-EDK |
| Mark Danko<br>Plaintiff(s),<br><br>v.<br><br>Andrew Breiter-Wu<br>Defendant(s). | Adversary Proceeding<br>No. 25-01162-EDK |

**Proceeding Memorandum and Order**

**MATTER:**
#33 Motion filed by Defendant Andrew Breiter-Wu to Dismiss [32] First Amended Complaint

**Decision set forth more fully as follows:**

IN THE INTEREST OF JUDICIAL ECONOMY, THE HEARING ON THIS MATTER SET FOR MAY 7, 2026, AT 11:00 AM HAS BEEN RESCHEDULED. THIS MATTER WILL NOW BE HEARD ON **MAY 21, 2026, AT 10:00 A.M.** THE RESCHEDULED HEARING WILL BE CONDUCTED IN-PERSON AT 595 MAIN STREET, COURTROOM 3, WORCESTER, MASSACHUSETTS.

Dated: 04/06/2026

By the Court,

Elizabeth D. Katz
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>Andrew Breiter-Wu<br>Debtor(s). | Chapter7<br>Case No. 25-11742-EDK |
| Mark Danko<br>Plaintiff(s),<br>v.<br>Andrew Breiter-Wu<br>Defendant(s). | Adversary Proceeding<br>No. 25-01162-EDK |

**Proceeding Memorandum and Order**

**MATTER:**
#33 Motion filed by Defendant Andrew Breiter-Wu to Dismiss [32] First Amended Complaint

**Decision set forth more fully as follows:**

DUE TO A CONFLICT IN THE COURT'S CALENDAR, THE HEARING ON THIS MATTER SET FOR MAY 21, 2026, HAS BEEN RESCHEDULED.THIS MATTER WILL NOW BE HEARD ON JUNE 4, 2026, AT 10:30 AM IN THE FEDERAL COURTHOUSE, BERKSHIRE COURTROOM, 300 STATE STREET, SPRINGFIELD, MA AND BY ZOOM.GOV VIDEO CONFERENCE. PARTIES IN INTEREST WHO WISH TO PARTICIPATE THROUGH ZOOM, BY 12:00 P.M. ONE COURT BUSINESS DAY BEFORE THE HEARING, SHOULD EMAIL THE COURTROOM DEPUTY AT sophia_howard@mab.uscourts.gov REQUESTING REMOTE PARTICIPATION, PROVIDING THEIR NAME, THE PARTY THEY REPRESENT, AND WHETHER OR NOT THEY WILL BE AN ACTIVE PARTICIPANT IN THE HEARING OR ONLY OBSERVING. PARTICIPATION BY VIDEO IS ONLY PERMITTED BY PARTIES IN INTEREST. ALL OTHER PARTIES WHO WISH TO ATTEND THE HEARING MUST ATTEND IN PERSON.

By the Court,

Dated: 04/17/2026

Elizabeth D. Katz
United States Bankruptcy Judge

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

---

In re:
**ANDREW BREITER-WU**
Debtor.

---

**Mark Danko,**
Plaintiff,
v.
**Andrew Breiter-Wu,**
Defendant.

---

**CHAPTER 7 CASE NO. 25-11742**
**ADVERSARY PROCEEDING NO. 25-01162**

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

## I. INTRODUCTION

Plaintiff Mark Danko opposes Defendant Andrew Breiter-Wu's Motion to Dismiss the First Amended Complaint. The Motion should be denied. Plaintiff has stated plausible claims for

Case 25-01162 Doc 40 Filed 01/27/26 Entered 01/27/26 15:19:54 Desc
Document Page 2 of 16

nondischargeability under 11 U.S.C. § 523(a)(2)(A) with the particularity required by Rule 9(b). Defendant's submission does not test the legal sufficiency of the pleadings. Instead, it repeatedly relies on materials outside the Complaint, disputes Plaintiff's factual allegations, and urges the Court to resolve factual issues that are reserved for summary judgment or trial. That approach is improper under Rule 12(b)(6) and controlling authority.

---

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the statement need not include "detailed factual allegations," it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, review is generally limited to the complaint and any exhibits attached thereto or incorporated by reference. Fed. R. Civ. P. 10(c). A motion to dismiss addresses legal sufficiency, not factual disputes or the merits of the case.

Because Plaintiff alleges fraud, the Complaint must also satisfy Fed. R. Civ. P. 9(b), made applicable by Fed. R. Bankr. P. 7009. Rule 9(b) requires that "the circumstances constituting fraud or mistake" be stated "with particularity"—the who, what, when, where, and how of the alleged fraud. Rule 9(b) expressly provides that "malice, intent, knowledge, and other conditions

of a person's mind may be alleged generally." Fraudulent intent may be inferred from circumstantial evidence, including a pattern of misrepresentations and post-contract conduct. *See, e.g., Palmacci v. Umpierrez*, 121 F.3d 781, 789 (1st Cir. 1997). Where factual information regarding the fraud is peculiarly within the defendant's knowledge or control, the particularity requirement may be relaxed; a plaintiff cannot be expected to plead with full detail facts that only discovery from the defendant will reveal. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed."); *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (same principle). Here, key facts—including Defendant's internal intent, use of customer funds, corporate records, and financial practices—are within Defendant's exclusive control and will be developed through discovery.

---

## III. DEFENDANT'S MOTION IMPROPERLY RELIES ON EXTRINSIC MATERIALS AND DISPUTED FACTS

Defendant's motion repeatedly relies on extrinsic materials and disputed factual assertions to challenge the Complaint. Such arguments are improper at the pleading stage, where the Court's review is confined to the allegations set forth within the four corners of the Complaint and any documents properly incorporated therein. By advancing a competing version of events and relying on materials outside the pleadings, Defendant effectively seeks a premature merits determination. The Federal Rules do not permit such an approach. Accordingly, the Court should disregard these extrinsic materials and evaluate the sufficiency of the Complaint under the

governing Rule 12(b)(6) standard, accepting all well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor.

---

## IV. THE COMPLAINT PLAUSIBLY ALLEGES FRAUD UNDER § 523(a)(2)(A)

### A. This Is Not Merely a Breach of Contract—It Is Formation and Continuing Fraud

Defendant's central theme—that this case is "at most" a contract dispute—ignores the core allegations of the First Amended Complaint. Plaintiff has alleged:

- **Formation fraud:** At the time Defendant entered into the contract, he did not intend to perform the promised work, deliver equipment, or complete the project. First Am. Compl. ¶¶ 7–8, 20.
- **Repeated false status updates:** In September 2021, Defendant represented that he had the solar panels and that installation would commence in October 2021; those representations were false. *Id.* ¶¶ 21–24. In December 2021, Defendant represented that installation would occur in January 2022 and that he was physically viewing the panels; those representations were also false. *Id.* ¶¶ 25–27.
- **Specific lie about present fact:** Defendant affirmatively stated he was physically viewing the solar panels for Plaintiff's project while on the phone with Plaintiff. When Plaintiff asked Defendant to read serial numbers from those panels, Defendant refused—because he did not have the panels. *Id.* ¶¶ 26–28.
- **Evasive conduct when confronted:** After Plaintiff's request for serial numbers exposed the lie, Defendant ceased or substantially reduced communication. *Id.* ¶¶ 29–31.

A knowingly false statement regarding a present fact—such as possession of equipment—made to induce payment is classic fraud under § 523(a)(2)(A), not mere breach of contract. *See Palmacci*, 121 F.3d at 786–87. Plaintiff has alleged exactly that.

**B. Rule 9(b) Is Satisfied—Counts I, II, and III Each Plead Who, What, When, Where, and How, and Counts IV and V Concern Facts in Defendant's Control**

Counts I, II, and III each plead the circumstances of fraud with particularity. The Complaint identifies who made the statements, what was said, when it was said, where and how it was communicated, and why each statement was false when made.

**Count I – Fraud Based on Lack of Intent to Fulfill Contract (Formation Fraud)**

| Requirement | Allegation | Paragraph(s) |
|---|---|---|
| **Who** | Defendant Andrew Breiter-Wu | ¶¶ 5, 48, 49 |
| **What** | That he would sell and install photovoltaic equipment at Plaintiff's property, with work to begin June 30, 2021, in accordance with project documents | ¶¶ 6, 49 |
| **When** | October 2020 (contract formation); work represented to begin June 30, 2021 | ¶¶ 6, 49 |

| | | |
|---|---|---|
| **Where / How** | Representations inducing Plaintiff to enter the contract; Plaintiff paid substantial sums in reliance | ¶¶ 9, 51 |
| **Why false** | Defendant had no intent to perform or acted with reckless disregard for the truth that the equipment would not be installed | ¶¶ 7, 8, 20, 50 |

**Count II – Fraud Based on False September 2021 Representations**

| **Requirement** | **Allegation** | **Paragraph(s)** |
|---|---|---|
| **Who** | Defendant Andrew Breiter-Wu | ¶¶ 5, 55 |
| **What** | That he had secured the solar panels and that installation would begin in October 2021 | ¶¶ 21, 55 |
| **When** | September 2021 | ¶¶ 21, 55 |

| | | |
|---|---|---|
| **Where / How** | Direct communications with Plaintiff; Plaintiff reasonably relied and continued making payments instead of seeking alternatives | ¶¶ 33, 56 |
| **Why false** | Defendant did not possess the panels and did not intend for installation to occur | ¶¶ 22, 23, 24, 55 |

**Count III – Fraud Based on False December 2021 Representations**

| **Requirement** | **Allegation** | **Paragraph(s)** |
|---|---|---|
| **Who** | Defendant Andrew Breiter-Wu | ¶¶ 5, 60 |
| **What** | That installation would occur by the end of the month or in January 2022, and that he was physically viewing the solar panels intended for Plaintiff's project | ¶¶ 25, 60 |
| **When** | December 2021 | ¶¶ 25, 60 |

| | | |
|---|---|---|
| **Where / How** | Phone call with Plaintiff; Defendant claimed to be viewing panels; Plaintiff requested serial numbers; Defendant refused; Defendant then ceased communication; Plaintiff continued making payments in reliance | ¶¶ 25, 26, 27, 29, 33, 61 |
| **Why false** | Defendant did not possess the panels and could not complete the project within the promised timeframe; his refusal to provide serial numbers and cessation of communication confirm the falsity | ¶¶ 28, 29, 30, 60 |

Counts IV and V are also plausibly pleaded because they concern Defendant's financing practices, use of customer payments, corporate records, account activity, and internal business practices. Those facts are largely within Defendant's control and will be developed through discovery.

Defendant's assertion that allegations of intent are "conclusory" is incorrect. Rule 9(b) permits intent to be alleged generally, and fraudulent intent may be inferred from the alleged pattern of misrepresentations and evasive conduct. Defendant is demanding evidentiary proof at the pleading stage; that is not the law.

---

## V. DEFENDANT'S ARGUMENTS A–E EACH FAIL AS A MATTER OF LAW

### A. Argument A ("No Personal Debt") Improperly Seeks Resolution of Disputed Facts

Defendant's threshold argument—that Plaintiff has failed to allege a debt owed by Defendant personally—is not a proper basis for dismissal under Rule 12(b)(6). It does not identify a pleading defect. It asks the Court to resolve factual issues: the nature of the parties' relationship, the flow of funds, and the effect of state-court proceedings. That is improper at this stage.

The Court must accept Plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to survive a motion to dismiss, a complaint must contain sufficient factual matter, *accepted as true*, to state a claim that is plausible on its face); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That includes allegations that Defendant personally made fraudulent representations and that Plaintiff suffered damages as a result. Whether liability ultimately runs to Defendant individually may depend on alter-ego, veil-piercing, or the state-court default—all of which are fact-intensive and cannot be resolved on a motion to dismiss.

Defendant's argument is further undermined by the procedural history. As alleged in the Complaint, a default was entered against Defendant Andrew Breiter-Wu individually in the state-court action prior to the bankruptcy stay. First Am. Compl.  12; *see* Mass. R. Civ. P. 55(a) & 77(b). Defendant's suggestion that no personal liability exists ignores that record. In addition, the Settlement Agreement and Mutual Release expressly preserved Plaintiff's rights under the Judgment should Defendant default on payment obligations. First Am. Compl. ¶¶ 15–17. Defendant did not pay in a timely manner. *Id.*  17. Those allegations support a plausible claim that Plaintiff may pursue Defendant personally.

Moreover, a corporate officer is personally liable for his own fraudulent conduct, regardless of the corporate form. *See, e.g., Palmacci v. Umpierrez*, 121 F.3d at 786. The Complaint alleges that Defendant personally made the false representations. That is an independent and sufficient basis for personal liability. Argument A does not address a failure to state a claim; it asks the Court to weigh facts. It must be rejected.

**B. Argument B (Rule 9(b)) Fails Because the Complaint Meets the Standard and Defendant Misstates It**

As set forth in Section IV.B above, the Complaint pleads the who, what, when, where, and how of the alleged fraud in Counts I, II, and III. Counts IV and V concern Defendant's internal financing practices and use of customer funds—facts largely within Defendant's control. Rule 9(b) still governs those counts, but **where factual information about the alleged fraud is peculiarly within the defendant's knowledge or control, the rigid particularity requirement may be relaxed**, and a plaintiff need not plead details that only the defendant or discovery could supply. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *cf.* Fed. R. Civ. P. 9(b) (malice, intent, knowledge, and conditions of mind "may be alleged generally"). Defendant's contention that Plaintiff has not pleaded fraud with particularity is wrong.

Defendant also asserts, without citation, that "conclusory assertions that a defendant never intended to perform... are insufficient." That formulation is not an accurate statement of the pleading standard. Rule 9(b) allows intent to be alleged generally, and courts may infer fraudulent intent from circumstantial evidence. Plaintiff has alleged specific false statements, dates, and context. Argument B fails.

**C. Argument C ("At Most a Contract Dispute") Is Irrelevant and Relies on Improper Evidence**

Defendant's assertion that Plaintiff's allegations describe "at most" a contract dispute is both irrelevant at the pleading stage and unsupported. Plaintiff has alleged specific, knowingly false statements of present fact—including that Defendant possessed and was physically viewing the solar panels—made to induce continued payment. That is fraud under § 523(a)(2)(A), not mere nonperformance.

Defendant's reliance on a "documentary record" (Exhibits D and E) is improper. Those materials are not incorporated by reference in the First Amended Complaint and are offered to contradict Plaintiff's allegations. They may not be considered on a Rule 12(b)(6) motion. Even if they were considered, the existence of some project development activity does not negate Plaintiff's fraud theories as a matter of law; that is a factual dispute for another day.

Defendant cites no authority for the proposition that fraud claims must be dismissed whenever a contractual relationship exists. Fraud and breach of contract are not mutually exclusive; the same facts may support both. *See, e.g., Microfin., Inc. v. Premier Holidays Int'l*, 385 F.3d 72, 77 (1st Cir. 2004) (affirming judgment imposing liability for fraud, breach of contract, and breach of the covenant of good faith and fair dealing); *Combined Servs., Inc. v. Lynn Elecs. Corp.*, 888 F.2d 106, 110–12 (11th Cir. 1989) (breach of contract and fraud claims may proceed together where fraud is adequately pleaded). Argument C fails.

**D. The Alter-Ego and Veil-Piercing Allegations Are Plausible; Argument D Applies the Wrong Standard**

Case 25-01162 Doc 58-2 Filed 07/20/25 Entered 07/20/25 15:01:48 Desc Main
Document Page 126 of 155

Defendant challenges Plaintiff's alter-ego and veil-piercing allegations as "conclusory." At the pleading stage, Plaintiff need only allege facts that make it plausible that the corporate form should be disregarded—not that it is already proven. The Complaint alleges, among other things:

- Defendant's failure to observe corporate formalities, maintain adequate records, or keep LLC affairs separate from his personal affairs. First Am. Compl. 37.
- Defendant's complete domination and control over all LLCs in which he had ownership or management authority. *Id.* 38.
- Undercapitalization and lack of sufficient assets to meet foreseeable obligations. *Id.* 39.
- Commingling of LLC funds with personal funds and use of company accounts for personal expenses. *Id.* ¶¶ 40–42.
- Use of entities to perpetrate fraud or avoid obligations to Plaintiff. *Id.* ¶¶ 41, 44.

These allegations track the factors recognized under Massachusetts law for disregarding the corporate form. *See My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748 (Mass. 1968); *Attorney Gen. v. M.C.K., Inc.*, 432 Mass. 546 (2000); *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 14–16 (1st Cir. 1985). They are sufficient to state a plausible claim at this stage.

Defendant's argument effectively requires Plaintiff to plead detailed financial and corporate records that are in Defendant's control and will be developed in discovery. That is not the law. Where key facts are within the defendant's control, courts permit claims to proceed.

In any event, veil piercing is not Plaintiff's only theory. As alleged, Defendant is personally liable for his own fraudulent conduct. The state-court default against Defendant

Case 25-01162 Doc 40 Filed 01/27/26 Entered 01/27/26 15:13:54 Desc Main Document Page 66 of 75

individually also supports personal liability. Thus, even if the Court were skeptical of the veil-piercing allegations, dismissal would still be improper. Argument D fails.

**E. Counts IV and V State Plausible Claims or, at Minimum, Warrant Discovery**

Defendant attacks Counts IV (unsustainable financing scheme) and Count V (violation of banking/financial laws) on the ground that they do not state cognizable claims under § 523(a)(2)(A). That argument is wrong or premature.

Section 523(a)(2)(A) excepts debts obtained by "false pretenses, a false representation, or actual fraud." A scheme in which customer payments are used to satisfy prior obligations rather than to perform current contracts can support an inference of fraudulent intent. *See Palmacci*, 121 F.3d at 789; *In re Agriprocessors, Inc.*, 859 F.3d 599, 604 (8th Cir. 2017). Plaintiff has alleged that Defendant operated such a scheme and that Defendant lacked capital, inventory, or legitimate financing to perform. First Am. Compl. ¶¶ 34–36, 65–66, 69–70. Those allegations support a plausible claim under § 523(a)(2)(A).

Plaintiff addresses Rule 9(b) and specificity as to Counts IV and V again here only because Defendant independently urges dismissal of those counts on that basis in this portion of his Motion; Plaintiff incorporates by reference the fuller discussion in Sections IV.B and V.B and does not repeat it for needless emphasis. For the substantive reasons stated above, and the pleading rules stated in those sections, Argument E fails.

---

## VI. DEFENDANT'S MOTION IS AN IMPROPER ATTEMPT TO OBTAIN SUMMARY JUDGMENT AT THE PLEADING STAGE

Taken together, Defendant's arguments show that the Motion is not a proper Rule 12(b)(6) motion. Defendant introduces extrinsic materials, disputes Plaintiff's factual allegations, and urges the Court to draw inferences in Defendant's favor. That is precisely what *Twombly* and *Iqbal* prohibit at the pleading stage. The Court should confine its analysis to the Complaint, accept all well-pleaded allegations as true, draw all reasonable inferences in Plaintiff's favor, and deny the Motion.

---

## VII. CONCLUSION

Defendant's motion does raise some vague claims that plaintiff did not use the required level of detail without explaining what detail is missing.  Plaintiff has shown that plaintiff clearly has used the required level of detail including who/what/when/where when the facts are not exclusive in the defendant's control. Much of Defendant's Motion improperly seeks to resolve factual disputes, rely on extrinsic evidence, and raise the pleading standard beyond what the law requires. Plaintiff has alleged detailed, plausible claims for nondischargeability under 11 U.S.C. § 523(a)(2)(A), including knowingly false statements of present fact, intent to deceive, justifiable reliance, and resulting damages. The Complaint satisfies Rule 8 and Rule 9(b) with the required detail.. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

---

**Dated:** 4/29/2026

Respectfully submitted,

**MARK DANKO**

**/s/ Mark Danko**

Plaintiff, Pro Se

302 Melrose St

Melrose, MA 02176

(978) 328-6038

mwdanko@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this __29_ day of _April , 2026, I caused a true and correct copy of the foregoing **Plaintiff's Opposition to Defendant's Motion to Dismiss First Amended Complaint** to be served via electronic mail upon the following:

Andrew Breiter-Wu
Email: Legal@breiterplanet.com

Service was made by transmitting the document in PDF format to the email address listed above.

/s/ Mark Danko
Mark Danko
Plaintiff, Pro Se

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

In re:

ANDREW BREITER-WU

Debtor,

**Mark Danko, Plaintiff**

v.

**Andrew Breiter-Wu, Defendant**

CHAPTER 7

CASE NO. 25-11742

ADVERSARY PROCEEDING #25-01162

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Andrew Breiter-Wu, proceeding pro se, respectfully submits this Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (the "Opposition").

## I. INTRODUCTION

1. Plaintiff's Opposition does not cure the fundamental legal deficiencies in the First Amended Complaint. Instead, it confirms them. Plaintiff continues to attempt to convert a failed solar project, a subsequent settlement, and a corporate judgment entered against Breiter Planet Properties, LLC into a personal nondischargeability claim against Defendant.

2. Even accepting Plaintiff's allegations as true, the First Amended Complaint fails as a matter of law. It does not plausibly allege (i) a debt owed by Defendant personally, (ii) that any such debt was obtained by fraud as required under 11 U.S.C. § 523(a)(2)(A), or (iii) fraud pleaded with particularity under Rule 9(b).
3. The Motion to Dismiss should be granted.

## II. PLAINTIFF'S OPPOSITION MISSTATES THE LAW REGARDING MATERIALS CONSIDERED ON A MOTION TO DISMISS

4. In his Opposition, Plaintiff argues that Defendant improperly relies on extrinsic materials. That argument is incorrect.
5. Courts may consider documents incorporated by reference, central to the plaintiff's claims, or subject to judicial notice when deciding a motion under Rule 12(b)(6). See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
6. Here, Plaintiff's own Complaint expressly relies on the Settlement Agreement, the Agreement for Judgment, and the state-court proceedings.
7. Those documents are therefore properly before the Court. Defendant does not rely on them to dispute facts, but to demonstrate that—even accepting Plaintiff's allegations—the legal elements of § 523(a)(2)(A) are not satisfied.
8. Plaintiff's argument attempts to reframe a legal sufficiency challenge as a factual dispute. That is improper.

## III. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A DEBT OF THE DEBTOR

9. Section 523(a)(2)(A) applies only to debts "of the debtor." Plaintiff's Opposition does not cure the failure to plausibly allege such a debt.

10. The operative record reflects that payments were made to Breiter Planet Properties, LLC, not Defendant personally; the Settlement Agreement required payment by the company; the Agreement for Judgment ran against the company; and the resulting state-court judgment was entered against the company.

11. Plaintiff does not reconcile these facts. Instead, he asserts that personal liability "may" exist based on alter-ego theories or procedural posture. That is insufficient. A plaintiff must plausibly allege a personal debt at the pleading stage. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

12. This is not a factual dispute. It is a threshold legal requirement that has not been met.

## IV. PLAINTIFF FAILS TO SATISFY THE "OBTAINED BY" REQUIREMENT

13. Section 523(a)(2)(A) requires that money, property, services, or credit be "obtained by" fraud.

14. Plaintiff seeks to except from discharge a claimed $24,500 debt. However, the Complaint alleges a payment structure involving monthly payments and continued reliance, while the record reflects total payments of approximately $1,620.75.

15. Plaintiff does not plausibly allege that $24,500 was obtained by any specific fraudulent act. Nor does he connect the alleged September 2021 or December 2021 statements to the obtaining of that amount.
16. This failure of causation is fatal. See Field v. Mans, 516 U.S. 59, 68 (1995).

## V. THE COMPLAINT STILL FAILS UNDER RULE 9(b)

17. Plaintiff's Opposition asserts that he has pleaded fraud with particularity. He has not.
18. While Plaintiff identifies alleged statements, he fails to plausibly allege that those statements were false when made. Allegations that a project was delayed, not completed, or later disputed do not establish fraud. See Palmacci v. Umpierrez, 121 F.3d 781, 787–89 (1st Cir. 1997).
19. Palmacci makes clear that fraudulent intent cannot be inferred solely from nonperformance or financial difficulty. Plaintiff's Opposition relies precisely on such hindsight inference.
20. The assertion that Defendant did not possess equipment at a particular moment does not, without more, constitute a knowingly false representation sufficient to support a fraud claim. In addition, Breiter Planet Properties' procurement processes and timelines are up to them on how and when they procure materials, especially since this project still did not receive approved structural plans or have municipal permits issued due to that issue.
21. Rule 9(b) requires more than post hoc conclusions. Plaintiff has not met that standard.

Case 25-01162 Doc 48 Filed 04/20/26 Entered 04/20/26 16:09:54 Desc Main
Document Page 5 of 7

## VI. PLAINTIFF'S CLAIMS DESCRIBE A CONTRACT DISPUTE, NOT FRAUD

22. Plaintiff's Opposition attempts to recharacterize a project dispute as fraud.
23. The Complaint itself reflects a defined solar project agreement, an ongoing development process, communications regarding project status, and a subsequent settlement agreement.
24. These are hallmarks of a contractual relationship—not a fraudulent scheme.
25. Notably, Plaintiff seeks to exempt from discharge $24,500 while actually paying approximately $1,620.75 in loan payments. This disparity underscores the disconnect between the alleged fraud and the claimed debt.

## VII. ALTER-EGO ALLEGATIONS REMAIN CONCLUSORY

26. Plaintiff's Opposition redundantly repeats generalized allegations of domination, commingling, and undercapitalization. These are legal conclusions, not facts.
27. Plaintiff identifies no specific transactions, no misuse of corporate formalities tied to this project, and no factual basis linking such allegations to the claimed debt.
28. Under Twombly and Iqbal, such conclusory allegations are insufficient.

## VIII. COUNTS IV AND V FAIL AS A MATTER OF LAW

29. As reflected in the Opposition, Counts IV and V rely on generalized allegations of an "unsustainable financing scheme" and unspecified violations of financial laws.

Case 25-01016 Doc 41 Filed 05/07/26 Entered 05/07/26 16:29:54 Desc Main
Document Page 6 of 7

30. Plaintiff does not identify any specific statute violated, any actionable misrepresentation made to Plaintiff, or any connection to the elements of § 523(a)(2)(A).
31. Instead, Plaintiff argues that discovery may supply these facts. That reverses the pleading burden. A plausible claim must be stated before discovery proceeds.
32. These counts fail as a matter of law.

## IX. CONCLUSION (REPLY TO OPPOSITION)

33. Plaintiff's Opposition does not cure the deficiencies in the First Amended Complaint. It confirms them.
34. For the foregoing reasons, Defendant respectfully requests that the Court dismiss the First Amended Complaint in its entirety, with prejudice, and grant such further relief as the Court deems just and proper.

Respectfully submitted,
/s/ Andrew Breiter-Wu
Andrew Breiter-Wu, Pro Se
Debtor
86 Willard Ave
Seekonk, MA 02771
617-334-5785
Legal@breiterplanet.com

Dated: May 4, 2026

---